UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____ )
                                        )
UNITED STATES POSTAL SERVICE            )
                                        )
        Plaintiff and                   )
        Counterclaim Defendant,         )
                                        )
        V.                              )        Civil Action No. 06-793 RJL
                                        )
AMERICAN POSTAL WORKERS UNION           )
     AFL-CIO                            )
                                        )
        Defendant and                   )
        Counterclaim Plaintiff          )
_____ )
```

**MOTION FOR SUMMARY JUDGMENT
OF THE AMERICAN POSTAL WORKERS UNION, AFL-CIO**

Defendant/Counter-Plaintiff American Postal Workers Union, AFL-CIO ("APWU") respectfully moves the Court, pursuant to Rule 56(a), Fed.R.Civ.P. to enter an order granting summary judgment in favor of the APWU enforcing the January 28, 2006 arbitration award issued by Arbitrator Lawrence R. Loeb, and directing Plaintiff/Counter-Defendant United States Postal Service to comply with that Award. There are no genuine issues of material fact, and the APWU is entitled to judgment as a matter of law.

In support of this motion for summary judgment, the APWU has included a Memorandum of Points and Authorities, a separate Statement of Material Facts Not in Dispute in accordance with L. Cv. R. 7.1(h), and a proposed order.

Dated: May 10, 2007                  Respectfully submitted,

                                     O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                     By:___/s/:  Darryl  J.  Anderson_____
                                          Darryl J. Anderson (D.C. Bar No. 154567)

1300 L Street, Suite No. 1200, NW
Washington DC 20005
(202) 898-1707/ (202)
(202) 682-9276 (FAX)
**Danderson@odsalaw.com**

Attorneys for American Postal Workers Union AFL-CIO

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE )<br><br>  )<br>Plaintiff and )<br>Counterclaim Defendant, )<br><br>  )<br>V. )<br><br>  )<br>AMERICAN POSTAL WORKERS UNION )<br>  AFL-CIO )<br><br>  )<br>Defendant and )<br>Counterclaim Plaintiff ) | Civil Action No. 06-793 RJL |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF APWU's MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

This is a suit by an Employer to vacate a labor arbitration award and a countersuit by the Union to enforce that award.  The American Postal Workers Union, AFL-CIO (the "APWU" or the "Union") has a nationwide collective bargaining agreement (the "National Agreement") with the United States Postal Service (the "Employer").  Declaration of Greg Bell (hereinafter Bell Dec. ¶¶ 1, 2; and Exh. 1.  The National Agreement includes a broad arbitration provision calling for arbitration of any "dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment." Id.

Under the National Agreement, postal employees who are discharged are entitled to substantive and procedural due process.  They may only be discharged for "just cause,"

and the Union is entitled to test the just cause of a discharge before a neutral arbitrator selected jointly, and paid jointly, by the Union and the Employer. Id. ¶¶ 4, 5. However, there is an exception to this protection in the case of probationary employees. The Employer is permitted to separate probationary employees from their employment during the 90-day probationary period, and the separated employees do not have access to the grievance-arbitration procedure in relation to their separation. Id. ¶ 4.

The arbitration award at issue in this case (the "Loeb Award") concerns the applicability of the probationary employee exception to the just cause protections of the National Agreement in the case of the discharge of Lorraine Daliessio. Arbitrator Loeb found that Daliessio had not been separated until after her probationary period had ended and ordered her reinstated with backpay.[1] The Employer contends that Daliessio was a probationary employee at the time of her discharge and that Arbitrator Loeb therefore had no authority to reinstate her, because probationary employees have no access to the grievance-arbitration procedure in relation to their discharges. Id. Exh. 2

The APWU contends that the Loeb Award must be reviewed by the Court under the very narrow standard of review applicable to labor arbitration awards, and that it must be confirmed under that standard. The Employer contends that the Court may consider the merits of the Arbitrator's Award and may make a decision based on the Court's judgment whether or not Daliessio was discharged during her probationary period. This contention is incorrect for several independently sufficient reasons. First, the Employer is bound by

---

[1] Because the Employer contended that it had discharged Daliessio during her probationary period, it made no attempt to justify her discharge on the basis of just cause.

2

a National-level arbitration award (the Das Award) holding that the question whether an employee has been discharged during her probationary period is a question to be resolved in arbitration.  The Employer's contentions about the timing of the discharge are the sort of "gatekeeping" issue about access to arbitration that should be resolved by an arbitrator, not the Court.  Furthermore, the National Agreement expressly provides that questions of arbitrability are for the arbitrator, thus placing arbitrability decisions of arbitrators under the protective standard of review applicable to merits awards.[2]

## II.     STATEMENT OF FACTS

### A.     The National Agreement Provides Substantive and Procedural Due Process Protections For Postal Employees Who Complete Their Probationary Period.

#### 1.   "Just Cause" Protection After Probationary Period

Under Article 16, Section 1, of the National Agreement, employees who have completed their probationary period may not be disciplined or discharged except for "just cause."  Bell Dec. ¶ 3; Exh. 1; National Agreement, Article 16.1    If a dispute arises between the APWU and the employer as to whether particular discipline is for just cause, the Union has a right to appeal the question to arbitration before a neutral third party.  Id.; National Agreement Article 15. The just cause protection against arbitrary discipline by supervisors is a contractual "due process" benefit negotiated on behalf of bargaining unit employees, by the Union through collective bargaining. Id. Article 16, Section 1, provides, in part: "a basic principle shall be that discipline shall be corrective in nature, rather than

---

[2] We place this reason third because the Employer will contend that this point has been conclusively rejected by the U.S. Court of Appeals for the Fourth Circuit.  As we explain below, however, that Court's decision has been supervened by the Das Award and by the fact that the Employer submitted the issue to Arbitrator Loeb in this case.

punitive.  **No employee may be disciplined or discharged except for just cause... .**"
Id. [Emphasis added here.]

An exception to the "just cause" provisions of the National Agreement is provide in the case on newly-hired employees.  Under Article 12, Section 1.A of the National Agreement, newly hired employees are required to complete a 90-day probationary period before they have the protections of the just cause provision of Article 16.1.  Bell Dec. ¶ 4 If an employee believes that he or she was separated after completion of their probationary period, the employee or the Union is entitled to file a grievance protesting the separation as a discharge without due process. When the Union challenges the discharge of an employee, the employer has a right to assert as an affirmative defense to that grievance that the employee was removed during their probationary period. Id.  Article 12, Section 1 provides: "[t]he employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these **probationary employees shall not be permitted access to the grievance procedure in relation thereto**." [Emphasis added here.]  Id.

### 2. Procedural Due Process

The grievance and arbitration provisions of the National Agreement are in Article 15. Id. ¶ 5  Article 15, Section 1 of the National Agreement defines a grievance broadly, as "a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment."  Bell Dec, Exh. 1.[3]  Under Article 15, there is a three

---

[3] Article 15, Section 1 continues "[a] grievance shall include, but is not limited to, the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement... ."  Id.

or four-step grievance procedure leading to arbitration of disputes the parties are not able to settle. Arbitration ordinarily occurs at a lower level, variously referred to as area, district or regional arbitration, not at the National level. Id.

The National Agreement provides that "**all decisions of an arbitrator shall be final and binding**" on the parties. Id.; Article 15, Section 5.A.6. [Emphasis added here.] The decisions of arbitrators in cases heard below the National level, however, are final and binding only as to the individual dispute decided by the arbitrator in that case. Lower-level arbitration decisions do not bind the parties in any other case and do not bind arbitrators in other cases. Bell Dec. ¶ 5.

In contrast, cases heard in National-level arbitration are only those cases that raise interpretive issues of general application. Bell Dec. ¶ 9; National Agreement Article 15.5.D.1. Under this provision, National-level awards are final and binding on the parties on a nationwide basis. Under the National Agreement, the parties have agreed to be bound, and are bound, to apply National-level awards in the administration of the National Agreement on a nationwide basis. In disputes arbitrated at district, area or regional levels, National-level awards are applied as precedents guiding the decisions of the lower-level arbitrators. When a National-level arbitrator interprets the National Agreement, that interpretation establishes the meaning of the contract provision in question for purposes of administration and application of the National Agreement by both parties. National-level awards also serve as precedent for arbitrators deciding later cases. Id.

**B.     Arbitrator Loeb's Ruling That Lorraine Daliessio Was Not Separated During Her Probationary Period Follows the Das National-level Award And Applies Article 12 Of The National Agreement**.

**1.     Arbitrator Loeb's Findings**

When the APWU took the discharge of Ms. Daliessio to arbitration, the case turned on one factual question: was Ms. Daliessio separated from the service during her probationary period or not?  If she had been separated during her probationary period, neither she nor the Union had a right to demand that the Employer justify her separation; the "just cause" and procedural due process protections of the National Agreement would have been unavailable to her. Bell Dec. ¶ 4.   Likewise, if the Employer had not separated her during her probationary period, then the arbitrator had no alternative but to reinstate her, because the Employer made no argument that it had just cause for discharging her.[4] See Loeb Award, Bell Dec. Exh. 2, at 17.

The Facts considered by Arbitrator Loeb in making this determination may be outlined at follows (Loeb Award; Bell Dec. Exh. 2, at 2-3):

- Lorraine Daliessio was hired on November 22, 1997.

- During Daliessio's probationary period, her supervisor gave her an unsatisfactory rating, and checked a box on an evaluation form stating that he would not recommend her for retention or rehire.

- During Daliessio's probationary period, her supervisor told her to clean out her locker, turn in her ID and go home.

- On February 4, 1998, Daliessio's supervisor sent a letter to the Manager of

---

[4]  Although Ms. Daliessio's supervisor had noted that her keying work was not satisfactory, in a just cause arbitration the Union could have asked the arbitrator to consider mitigating circumstances if any existed.  For example Daliessio might have been ill during the time in question, or the Employer may have failed to provide necessary training.

6

Labor Relations asking that the manager initiate action to remove Daliessio from the employment roles effective January 30, 1998.

• Daliessio's 90-day probationary period ended February 19, 1998.

• The Manager of Labor Relations  failed to act on the supervisor's request until February 20, 1998, when he wrote a letter to Daliessio.

• Daliessio did not receive the Manager's letter until March 21, 1998.

On these facts, Arbitrator Loeb found that the Employer had not separated Daliessio during her probationary period and ordered her reinstated and made whole.  Id. at 17,

### 2.    The Loeb Award Follows The Das National-Level Award.

In its Complaint, the Employer alleges that Arbitrator Loeb's Award reinstating Daliessio is inconsistent with the National-level Award of Arbitrator Das in Case No. Q98C-4Q-C 99251456, issued on September 10, 2001.  Bell Dec. ¶ 6, Exh. 3. (hereinafter referred to as the "Das Award").  The Das Award was the result of a dispute initiated by the Union's Director of Industrial Relations at the National level to resolve the parties' disputes over the meaning of Article 12.1.A.  As a National-level Award, the Das Award is an interpretation of the National Agreement that is binding on the parties. Bell Dec. ¶¶ 7, 9.

In his Award, Arbitrator Das observed (Id., at 16-17): " [T]he Postal Service explains that the reason it does not dispute that notice of separation must be provided to a probationary employee within a 90-day period is that Article 12.1.A defines the probationary period as 90 days.  That is an enforceable contract provision... ."

Arbitrator Das then found (Id. at 18):

The Unions, of course, are correct in asserting that there must have been a separation before the end of the employee's probationary period in order for Article 12.1.A to apply.  Absent such a separation, the probationary employee becomes a permanent employee and can only be discharged or removed for just cause in accordance with Article 16.  The discharge of a permanent employee, in contrast

7

to the separation of a probationary employee, is subject to the grievance-arbitration procedure.

And Arbitrator Das concluded (Id. at 21-22):

> The one issue that legitimately can be raised in a case where the Postal Service claims that a grievance is barred by Article 12.1.A is that the separation action did not occur during the probationary period. The Postal Service acknowledged this, as it must, because Article 12.1.A has no application if the separation action does not occur during the probationary period. [Footnote omitted.][5]

In reaching these conclusions about the meaning and application of Article 12.1.A, Arbitrator Das considered a number of lower-level arbitration awards, and considered a decision of the U.S. Court of Appeals for the Fourth Circuit affirming a District Court decision vacating an award by Arbitrator Miles. [6] Of these cases, Arbitrator Das observed (Id. at 21):

> My review of the cases indicates that, like the recently vacated Miles award, many of the regional decisions that ruled in the Unions' favor on arbitrability did so on the basis that, as Arbitrator Miles put it, the ELM provisions are "every bit a part of the Agreement, pursuant to Article 19, as is Article 12, Section 1."

Of this line of cases, Das said, "[w]hat is missing...is a convincing analysis that gets around the prohibition on access to the grievance procedure set forth in Article 12.1.A." Id. at 21. What is left, then, is the point that the separation must occur during the probationary period to be within Article 12.1.A. That is a point the Postal Service "does not dispute" because Article 12.1.A defines the probationary period as 90 days, and that is "an

---

[5] Arbitrator Das also held (Id.): "This is a fundamentally different issue, however, from whether or not the separation action complied with all the particular requirements set forth in Section 365.32 of the ELM. A challenge to the validity of the procedures followed in effecting a separation is barred by the broad prohibitory language of Article 12.1.A."

[6] United States Postal Service v. American Postal Workers Union, AFL-CIO, 204 F.3d 523 (4th Cir. 2000).

enforceable contract provision." Id.  Thus, Arbitrator Das held that, in disputes concerning whether or not a probationary employee has been properly removed by the Employer, the only question the Union is entitled to take to arbitration is the question whether the separation action occurred during the probationary period.

### 3.   Arbitrator Loeb Applied Article 12.1.A To The Facts In The Lorraine Daliessio Case.

It is not necessary at this juncture to discuss in detail the findings and conclusions of Arbitrator Loeb leading to his Award that is disputed in this case.  As we explain below, a court reviewing an arbitration award is applying a very narrow standard of review – one that does not require or permit the court to review the merits of the arbitrator's decision. What matters is that he was addressing a question that was within his authority to decide, and that he decided it by applying the parties' Agreement.   These conditions are unquestionably met my Loeb's decision.

Arbitrator Loeb began his decision by reviewing the chronology of Lorraine Daliessio's employment that is summarized above.  Then he reviewed the history of some previous lower-level arbitration decisions concerning Article 12.1.A, and the decision of the Fourth Circuit in a case vacating an arbitrator's award reinstating a probationary employee.[7]  Loeb then concluded his discussion of the background of the Article 12.1.A cases by quoting the Das Award at length emphasizing, in particular, Das's holdings that "[t]he one issue that legitimately can be raised in a case where the Postal Service claims that a grievance is barred by Article 12.1.A is that the separation action did not occur

---

[7]  This was the same case alluded to by Arbitrator Das, United States Postal Service v. American Postal Workers Union, AFL-CIO, 204 F.3d 523 (4th Cir. 2000).

during the probationary period. The Postal Service acknowledged this, as it must, because Article 12.1.A has no application if the separation action does not occur during the probationary period." Bell Dec. Exh. 2; Loeb Award at 14-15.

Arbitrator Loeb also quoted and emphasized Arbitrator Das's holding that "[a] dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A." Id. at 15.

Immediately after his quotation of the Das Award, Arbitrator Loeb stated (Bell Dec. Exh. 2; Loeb Award, at 15):

> In view of those authorities, the undersigned must conclude that the Union has a right to challenge the Grievant's termination through the grievance procedure... . [T]he issue before the Arbitrator is not the process the Service employed when it terminated the Grievant, but whether she was discharged during her probationary period. The answer is that she was not."

> ...Neither the recommendation nor the order not to return to work terminated the Grievant. The supervisor, her manager and the Manager of Labor Relations all recognized that was the case by their actions.

Having found that the Employer had not separated Daliessio during her probationary period, Arbitrator Loeb then concluded: "The plain fact of the matter is that the Employer failed to terminate the Grievant, **as that term is understood in Article 12** within her probationary period. By the time the Service finally acted the grievant's probationary period had long since passed. She, therefore, became a full-time employee who could only be removed for just cause." Id. at 17 [emphasis added here]. Accordingly, Arbitrator Loeb ordered that Daliessio be reinstated to her employment and made whole for her lost compensation.

10

**ARGUMENT**

We observe at the beginning of our argument that Arbitrator Loeb's findings of fact, reasoning, and conclusions are sound.[8]  We do this because we now proceed to point out that his Award would have to be confirmed even if it were silly and wrong rather than well-reasoned and sound.  We do not want to be misunderstood as damning the Award with faint praise.  The Award is correct.

We also pause to observe the standard the Court will use in its consideration of the parties' cross-motions for summary judgment under Rule 56, Fed.R.Civ.P.  A party is entitled to summary judgment if the pleadings and evidence show that there is no genuine issue of material fact and that the party is entitled to a judgment as a matter of law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-52 (1986) .  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  A court should grant summary judgment if the factual record in the case shows that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  See Fed.R.Civ.P. 56(c); Celotex Corp. V. Catrett, 477 U.S. at 323; Tao v. Freeh, 27 F.3d 635, 638 (D.C. cir. 1994).

In this case, both parties are urging the Court to grant summary judgment.  It is unlikely that there will be any disputed issue of material fact.  For the reasons stated below, the APWU is entitled to summary judgement confirming the Loeb Arbitration Award.

---

[8]  It is undisputed that the Manager of Labor Relations did not write the letter separating Daliessio from her postal employment until after her probationary period had ended and that Daliessio did not receive that letter until more than a month after the end of her probationary period.

I.   **THE STANDARD USED TO REVIEW LABOR ARBITRATION AWARDS IS "AMONG THE NARROWEST KNOWN TO THE LAW."**

The Supreme Court has repeatedly emphasized that the standard for judicial review of labor arbitration awards is extremely narrow, in fact, it is "among the narrowest known to the law." Union Pac. R.R. v. Sheehan, 439 U.S. 89, 91, 99 S.Ct. 399 (1978).  In United Paperworkers International Union, AFL-CIO v. Misco, Inc., 484 U.S. 29; 108 S.Ct. 364 (1987), the Supreme Court observed that it had

> made clear almost 30 years ago that the courts play only a limited role when asked to review the decision of an Arbitrator.  The courts are not authorized to reconsider The merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." [484 U.S. at 36]...  "Because the parties have contracted to have disputes settled by an Arbitrator chosen by them rather than by a judge, it is the Arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. ... To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. ...." [ 484 U.S. at 37-38]

In reversing the decision of a Court of Appeals which had vacated an arbitration award, the Misco Court observed: "no dishonesty is alleged; only improvident, even silly, fact-finding is claimed.  This is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts."

In Major League Baseball Players Association v. Garvey, 532 U.S. 504, 509-510, 121 S.Ct. 1724 (2001)(per curiam) the Supreme Court focused particularly on the role of courts in reviewing factual findings by Arbitrators.  The Court reversed a Court of Appeals decision in which the Court of Appeals had substituted its own findings of fact for those of the arbitrator.  The Supreme Court, citing Misco, supra, held:

> Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement... When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the Arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award.  [Citations omitted.]

Accord,  McKesson Drug Co. v. International Brotherhood of Teamsters, Local Union No. 730,  957 F. Supp. 1 at 4 (D. D.C. 1997)("Judicial review of arbitration awards that interpret collective bargaining agreements is 'extremely narrow.'") (quoting American Postal Workers Union v. United States Postal Service, 52 F.3d 359, 361 (D.C. Cir. 1995).

Likewise, "[a] federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be a better one."  McKesson Drug Co., supra (quoting W.R.Grace & Co. V. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of America, 461 U.S. 757, 764, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983)).   "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different."   Cole v. Burns Int'l Security Services, 105 F.3d, 1465, 1474 (D.C. Cir. 1997)(quoting United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960).  "As long as the arbitrator is "even arguably construing or applying the contract, and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  Misco, supra, at 38.  Garvey, supra, at 509. Accord, Michigan Family Resources, Inc. v. Service Employees International Union Local 517M, 475 F.3d 746, 751-753 (en banc) (January 26, 2007)(overruling Cement Divs., Nat'l

Gypsum Co. v. United Steelworkers of American, AFL-CIO, Local 135, 793 F.2d 759 (6th

Cir. 1986).

> As a noted authority on labor law has explained:
>
> [T]he arbitrator is the parties' officially designated "reader" of the contract. He (or she) is their joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary to handle the anticipated  unanticipated omissions of the initial agreement... .  In the absence of fraud or an overreaching of authority on the part of the arbitrator, he is speaking for the parties, and his award is their contract... .

Theodore J. St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at*

*Enterprise Wheel and its Progeny*, 75 Mich. L.Rev. 1137, 1140 (1977)(footnote omitted).

Quoted with approval in Cole v. Burns Int'l Security Services, supra, at 1474-75.  Accord,

American Postal Workers Union, AFL-CIO v. U.S. Postal Service, 789 F.2d 1, 6-7 (D.C. Cir.

1986)(reversing a District Court decision that had vacated an arbitration award applying the

Supreme Court's Miranda decision in the context of a labor arbitration).

By these standards, there can be no serious question that Arbitrator Loeb's Award

must be confirmed.  He gave careful attention to the facts of the case; he considered the

arguments of the parties, including previously decided cases; and he applied Article 12.1.A

to the resolution of the parties' dispute.  He concluded: "The plain fact of the matter is that

the Employer failed to terminate the Grievant, as that term is understood in Article 12 within

her probationary period."  Loeb Award at 17; Bell Dec. Exh. 2, at 17.

## II.    THE EMPLOYER IS PRECLUDED BY THE DAS AWARD, AND BY THE NATIONAL AGREEMENT, FROM DISPUTING ARBITRATOR LOEB'S JURISDICTION TO DETERMINE WHETHER OR NOT DALIESSIO WAS SEPARATED DURING HER PROBATIONARY PERIOD.

As explained by the Union's Director of Industrial Relations in his Declaration, the

grievance that led to the Das Award (Bell Dec. Exh. 3) was filed by the Union at the National

14

level for the purpose of resolving the parties's disputes about Article 12.1.A on a nationwide basis.  Bell Dec.  ¶ 7.  The Das Award is final and binding on the parties, as are all arbitrators' decisions under the National Agreement. Id. ¶ 5.  In the case of the Das Award, it is binding on a nationwide basis and must be applied to the parties in all similar cases. The Das Award expressly makes provision for the type of ruling made by Arbitrator Loeb. Arbitrator Das's Award is stated concisely (Id. at 2, 23):

> 1.  Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM.
>
> 2.  A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.

There can be no doubt that Arbitrator Loeb was exercising authority squarely within the explicit charter issued by Arbitrator Das – to determine whether the Postal Service's action separating Lorraine Daliessio "occurred during...her probationary period."  As Arbitrator Loeb stated:   "[T[he issue before the Arbitrator is not the process the Service employed when it terminated the Grievant, but whether she was discharged during her probationary period."   Bell Dec. Exh. 2; Loeb Award at 15.

Because Arbitrator Das's Award is binding on both parties, there can be no question, therefore, that the issue addressed by Arbitrator Loeb was arbitrable.  To the extent that there might have been any question about that, it was conclusively settled by the Das Award.  Because Arbitrator Loeb was deciding a question within his jurisdiction to decide, the extremely narrow, highly deferential standard of review of labor arbitration awards must be applied.

The applicability of the narrow standard of review for arbitration awards is not only

15

dictated by the fact that Arbitrator Das has resolved the issue of arbitrability, it is also required by the fact that the National Agreement gives arbitrators the right to decide issues of arbitrability.   Under Article 15, Section 5.A.9, "[a]ny dispute as to arbitrability may be submitted to the arbitrator and be determined by such arbitrator.   The arbitrator's determination shall be final and binding."  Bell Dec. Exh. 1.  This would be true even if the parties had not so provided in Article 15.5.A.9, because the parties submitted the question of arbitrability to arbitration in any event, first to Arbitrator Das as a matter of general principle, and then to Arbitrator Loeb in the case of Lorraine Daliessio.   Under these circumstances, the Court's role in reviewing the challenged Award is very limited.   As the Supreme Court held in  First Options of Chicago, Inc. v Kaplan, 514 U.S. 938 at 943 (1995) (internal citations omitted):

> Did the parties agree to submit the arbitrability question itself to arbitration?  If so then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that the parties have agreed to arbitrate.   That is to say, the court should give considerable leeway to the arbitrator, setting aside his or her determination only in certain narrow circumstances.

See also, Madison Hotel v. Hotel and Restaurant Employees, Local 25, AFL-CIO, 144 F.3d 855, at 857 (DC Cir. 1998)  ("The 'scope of the arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator.'  An arbitrator's view of the issues submitted to him for arbitration therefore receives the same judicial deference as an arbitrator's interpretation of a collective bargaining agreement.") (quoting  W.R.Grace & Co., 461 U.S. at 765).

Even before the Supreme Court's decision in <u>First Options</u>, the D.C. Circuit had subscribed to the view that parties may contractually bind themselves to the submission of arbitrability disputes to the arbitrator. "As Professor Cox explained many years ago, '[a] specific stipulation giving the arbitrator power to decide all questions of arbitrability is in substance a promise to submit to arbitration all questions concerning the meaning of the arbitration clause. There is no doubt about the effectiveness of such a stipulation.'" <u>Washington-Baltimore Newspaper Guild v. Washington Post</u>, 959 F.2d 288, at 291 (DC Cir. 1992) (quoting Cox, <u>Reflections Upon Labor Arbitration</u>, 72 Harv. L. Rev. 1482, 1508 (1959). <u>See</u>, <u>e.g.</u>, <u>United Food & Commercial Workers Union v. Lucky Stores, Inc.</u>, 806 F.2d 1385-87 (9th Cir. 1986)). <u>See</u>, <u>also</u>, <u>AT&T Technologies, Inc. v. Communications Workers of America</u>, 475 U.S. 643, 649 (1986) (where the parties explicitly provide for issues of arbitrability to be submitted to the arbitrator, courts should decline to address the question), <u>Suzal v. United States Information Agency</u>, 32 F.3d 574, 584 (DC Cir. 1994) (where the collective bargaining agreement "clearly and unmistakably" provides that disputes over arbitrability be submitted to an arbitrator, courts should not entertain the matter).

## III.    ARBITRATOR LOEB'S FINDING THAT DALIESSIO's SEPARATION OCCURRED AFTER HER PROBATIONARY PERIOD ENDED MUST BE SUSTAINED.

Given that the Employer contractually agreed to be bound by Arbitrator Loeb's decision on the very issue he decided, there would seem to be little else to be said about the conclusiveness of the Loeb Award. The Complaint in this case provides little more than a suggestion that "Arbitrator Loeb evaluated the process the Postal Service used in order to make his determination as to whether the Grievant was discharged during her

probationary period." Complaint ¶ 15. Insofar as we can understand this cryptic statement we have three responses. First, it would be impossible for any arbitrator to address the question whether an employee had been separated from employment without examining the process by which employees are separated from employment. To place the issue whether separation occurred before the arbitrator is to require the arbitrator to examine the process of separation.

Second, absent fraud or some other aberration that might deprive the arbitrator's inquiry into the issue of separation or not of its legitimacy, the fact that the arbitrator's analytical process may not be the one the Employer would prefer is no more relevant than the fact that the arbitrator's conclusion is not the one the Employer would have preferred.

Third, if the Employer means to signal that it will contend that Arbitrator Loeb engaged in the sort of exegesis of the Employer's handbooks and manuals that was done by Arbitrator Miles in his award that was vacated by the Fourth Circuit, that contention is unfounded.[9] In that case, the arbitrator considered whether, when the Postal Service separated a probationary employee from the service during his probationary period, it had done so in accordance with the procedures and requirements set out in the Employer's manuals. As the Fourth Circuit stated (204 F.3d at 526):

> the APWU "claimed that the Postal Service failed to comply with certain provisions of the Postal Service's Employee and Labor Relations Manual (ELM) in attempting to separate Hoang... .The APWU asserted that the proper official did not initiate the separation (ELM 365.325) and that the separation notice failed to include the requisite'conclusions as to the inadequacies of performance or conduct.' (ELM 365.326).

---

[9] <u>United States Postal Service v. American Postal Workers Union, AFL-CIO</u>, 204 F.3d 523 (4th Cir. 2000).

* * * *

> Arbitrator Christopher Miles found that the grievance was arbitrable... . He asserted that... the Postal Service must effectuate any such termination in accordance with the ELM.... . He concluded that a violation of the ELM procedures was a violation of the National Agreement and therefore subject to arbitration under Article 15... .

Arbitrator Miles (in contrast to Arbitrator Loeb) "claimed that Article 19 incorporates Postal Service handbooks and manuals into the National Agreement, and that ELM violations are grievable by probationary employees because ELM violations are also violations of the National Agreement." The Loeb Award does nothing of the sort. In fact both Arbitrator Das and Arbitrator Loeb discussed and distinguished the Miles arbitration award in making their decisions (Das Award at 16; Loeb Award at 12-13).

Finally, we observe that, if the majority opinion in the Fourth Circuit's decision could be read to preclude arbitration of the question whether or not an employee was separated during the probationary period (the question validated by Das and decided by Loeb), that decision has been superseded by the National-level decision of Arbitrator Das. As the U.S. Court of Appeals for the D.C. Circuit has recognized, an arbitrator's decision is not only binding on the parties, it establishes the meaning of the parties' agreement. "[T]he arbitrator is the parties' officially designated 'reader' of the contract. He (or she) is their joint *alter ego* for the purpose of striking whatever supplementary bargain is necessary to handle the anticipated unanticipated omissions of the initial agreement... . In the absence of fraud or an overreaching of authority on the part of the arbitrator, he is speaking for the parties, and his award is their contract... ." Theodore J. St. Antoine, *Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and its Progeny*, 75 Mich. L.Rev. 1137, 1140 (1977)(footnote omitted). Quoted with approval in Cole v. Burns Int'l

Security Services, supra, at 1474-75.  Accord, American Postal Workers Union, AFL-CIO v. U.S. Postal Service, 789 F.2d 1, 6-7 (D.C. Cir. 1986).

There is, of course, no question of the validity of the Das Award.  He is the long-time National-level arbitrator for the parties (having served since 1997 under four successive National Agreements); his Award was not challenged by the Employer; and it has become a part of the parties' Agreement.

## IV.  CONCLUSION

For the reasons stated above, the Union's motion for summary judgment must be granted, and the Union is entitled to an order enforcing the Loeb Award.


Dated: May 10, 2007                     Respectfully submitted,

                                        O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                        By:_____/s/:  Darryl  J.  Anderson_____
                                             Darryl J. Anderson (D.C. Bar No. 154567)
                                             1300 L Street, Suite No. 1200, NW
                                             Washington DC 20005
                                             (202) 898-1707/ (202)
                                             (202) 682-9276 (FAX)
                                             **Danderson@odsalaw.com**

                                        Attorneys for American Postal Workers Union AFL-CIO

20

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
UNITED STATES POSTAL SERVICE            )
                                        )
        Plaintiff and                   )
        Counterclaim Defendant,         )
                                        )
        V.                              )          Civil Action No. 06-793 RJL
                                        )
AMERICAN POSTAL WORKERS UNION           )
        AFL-CIO                         )
                                        )
        Defendant and                   )
        Counterclaim Plaintiff          )
_____ )

**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE
OF THE AMERICAN POSTAL WORKERS UNION, AFL-CIO**

In support of Its motion for summary judgment, the American Postal Workers
Union, AFL-CIO ("APWU) states the following material facts as to which there is no
genuine issue, in accordance with L. Cv. R. 7.1(h).

        1.      The APWU and the United States Postal Service ("Postal Service" or "the
USPS") are parties to a series of nationwide collective bargaining agreements covering
terms and conditions of employment for all postal employees in the bargaining units
represented by the APWU ("the National Agreement").  Declaration of Greg Bell
(hereinafter" Bell Dec.") ¶ 1.

        2.      The relevant collective bargaining agreement in this case is the National
Agreement covering the time period between November 21, 1994 and November 20,
1998 ("the 1994 National Agreement").  Id. ¶ 2, and Exhibit 1 attached thereto.

3.      The National Agreement sets forth a comprehensive grievance and arbitration procedure to address disputes concerning terms and condition of employment. Disputes over discharges are subject to the parties' comprehensive grievance-arbitration procedure, set out in Article 15.  A true and accurate copy of Article 15 of the 1994 National Agreement is attached to the Bell Dec. as Exhibit 1.  Article 15, Section 1 of the 1994 National Agreement states that "[a] grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours and conditions of employment."  Article 15, Section 5.A.6 of the 1994 National Agreement states, in relevant part:

> All decisions of an arbitrator will be final and binding.  All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator.

4.  Under Article 16, Section 1, of the National Agreement, employees who have completed their probationary period may not be disciplined or discharged except for "just cause."  If a dispute arises between the APWU and the employer as to whether particular discipline is for just cause, the Union has a right to appeal the question to arbitration before a neutral third party.  The just cause protection against arbitrary discipline by supervisors is a much-prized and very valuable benefit obtained by the Union through collective bargaining.  Article 16, Section 1, provides, in part: "a basic principle shall be that discipline shall be corrective in nature, rather than punitive.  No employee may be disciplined or discharged except for just cause... ."  Bell Dec. ¶3 and Exh. 1.

5.      Under Article 12, Section 1.A of the National Agreement, newly hired employees are required to complete a 90-day probationary period before they have the protections of the just cause provision of Article 16.1.  When a dispute arises over whether an employee actually was separated during the probationary period the Union challenges the discharge, and the employer has a right to assert as an affirmative defense to that grievance that the employee was removed during their probationary period.  Article 12, Section 1 provides:

> The probationary period for a new employee shall be ninety (90) calendar days.  The employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.  If the Employer intends to separate an employee during the probationary period for scheme failure, the employee shall be given at least seven (7) days advance notice of such intent to separate the employee.  If the employee qualifies on the scheme within the notice period, the employee will not be separated for prior scheme failure.

Bell Dec. ¶ 4 and Exhibit 1.

6.      Lorraine Daliessio was hired by the Postal Service on November 22, 1997.  Her 90-day probationary period ended on February 19, 1998.  During her probationary period, her supervisor gave Daliessio an unsatisfactory rating on her work and told her to clean out her locker, turn in her ID and go home.  Bell Dec. Exh. 2; Loeb Award at 2.

7.`On February 4, 1998, Daliessio's supervisor sent a letter to the Manager of Labor Relations for the Philadelphia District requesting that an action be initiated to remove Daliessio from the roles effective January 30, 1998.  "For reasons that were never explained, the Employer failed to act on the supervisor's request until February 20, 1998 at which time it finally sent a certified letter to the Grievant advising her that: 'This

3

will confirm your separation from the Postal Service as a result of a lack of proficiency on the Keying equipment.'" Id.

8.    Daliessio did not sign for or receive the certified letter from the postal manager.  The letter notifying Daliessio was not delivered to her until March 21, 1998. Id., at 3.

9.    Under Article 15, Section 4.D of the National Agreement, "in the event of a dispute between the Union and the Employer as to the interpretation of [the National] agreement, such dispute may be initiated at the Step 4 [National] level by either party." The Industrial Relations Director of the APWU, Greg Bell, initiated a dispute at the National level in order to resolve the parties' disagreements over the meaning of Article 12, Section 1.A, of the National Agreement.  That dispute was decided by Arbitrator Das in Case No. Q98C-4Q-C 99251456, issued on September 10, 2001 (hereinafter referred to as the "Das Award").  Bell Dec. ¶ 6, and Exh. 3 to Bell Dec.

10.    Under Article 15, Section 4.D, "[a]ny local grievances filed on the specific interpretive issue [on which there is a dispute filed at the National level] shall be held in abeyance at the appropriate level pending resolution of the national interpretive dispute." Consequently, the grievance that is the subject of the arbitration award in dispute in this case was held in abeyance pending the decision by Arbitrator Das.  Bell Dec. ¶ 7.

11.    Under Article 15, Section 5.D.1 "[o]nly cases involving interpretive issues under this Agreement or supplements thereto of general application will be arbitrated at the National level."  Under this provision, National-level awards are final and binding on the parties on a nationwide basis.  Under the National Agreement, the parties have agreed to be bound, and are bound, to apply National-level awards in the administration

4

of the National Agreement on a nationwide basis. In disputes arbitrated at district, area or regional levels, National-level awards must be applied as binding precedents guiding the decisions of the lower-level arbitrators. The Award of Arbitrator Das attached to the Bell Declaration as Exhibit 3 is final and binding on the parties and was binding on Arbitrator Loeb in Arbitrator Loeb's decision that is Exhibit 2 to the Bell Declaration. National-level awards are analogous to decisions by the United States Supreme Court interpreting federal statues. Once a National-level award has issued, that decision establishes the meaning of the contract provision in dispute in that case. Bell Dec. ¶ 8.

12.    In the Das Award, Arbitrator Das Award, the Arbitrator held:

1.    Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM.

2.    A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.

Bell Dec. ¶ 10 and Exh. 3, at 2.

13.    Arbitrator Das has been a National-level arbitrator for the APWU and the Postal Service continuously since 1997, and he is still serving in that capacity. He has been a National-level arbitrator during four different National Agreements. Bell Declaration ¶ 6.

14.    The Postal Service has not challenged the validity of the Das Award. It continues to bind the parties and lower-level arbitrators in the application of the National Agreement. Bell Dec. ¶9.

15.    On January 28, 2006, Arbitrator Lawrence R. Loeb issued an arbitration Award resolving a dispute between the APWU and the United States Postal Service, in

5

Case No. C94C-4C-D 98076813 (hereinafter the "Loeb Award").  A true and correct copy

of the Loeb Award is attached to the Bell Dec. as Exhibit 2.  In that case, the APWU

challenged the termination of employee Lorraine Daliessio.  The only question before

Arbitrator Loeb was whether or not Daliessio had been terminated during her

probationary period, because the employer had made no effort to justify her discharge

on the ground of just cause and her discharge could, therefore, not be sustained unless

the employer had terminated her during her probationary period.  Id.

      16.    Arbitrator Loeb's Award states, at 15:

> In technical terms, the grievance is arbitrable, but only to a limited extent.
> Regardless of how the Union chooses to characterize the nature of the
> grievance or how badly it feels that the Service transgressed the
> requirements in Section 365.327 of the ELM, the issue before the
> Arbitrator is not the process the Service employed when it terminated the
> Grievant, but whether she was discharged during her probationary period.
> The Answer is that she was not.

Id.

      17.    The Loeb Award was issued in an Area Level arbitration under Article 15,

Section 5.B of the National Agreement.  It was decided on the facts and circumstances

of that individual case.  Area-level arbitrations, sometimes also called a district or

regional arbitrations, are not binding on the parties or on other arbitrators in other cases.

Bell Dec. ¶ 3.  Accordingly, while the Loeb Award resolves the parties' dispute over the

discharge of Lorraine Daliessio, it has no binding effect on the parties or on any other

arbitrator in any other case.  Id.

Dated May 10, 2007                    Respectfully submitted,

                                     O'DONNELL, SCHWARTZ & ANDERSON, P.C.

                                     By:  /s/: Darryl J. Anderson
                                          Darryl J. Anderson (D.C. Bar No. 154567)
                                          1300 L Street, Suite No. 1200, NW
                                          Washington DC 20005
                                          (202) 898-1707/ (202)
                                          (202) 682-9276 (FAX)
                                          **Danderson@odsalaw.com**

                                     Attorneys for American Postal Workers Union AFL-CIO