UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION )<br>)<br>    Plaintiff and )<br>    Counterclaim Defendant, )<br>)<br>v. )<br>)<br>UNITED STATES POSTAL SERVICE )<br>)<br>    Defendant and )<br>    Counterclaim Plaintiff )<br>) | Civil Action No. 06-793 RJL |

### DECLARATION OF GREG BELL

I, Greg Bell, in lieu of an affidavit as permitted by 28 U.S.C. Section 1746, declare as follows:

1.  I am the Director of Industrial Relations for the American Postal Workers Union, AFL-CIO ("APWU" or "Union"). I have held this position since November, 1995. The duties of the Director of Industrial Relations are defined by Article 8, Section 1 of the Constitution and Bylaws of the American Postal Workers Union, AFL-CIO ("APWU Constitution"), which provides that "The Industrial Relations Director shall be charged with the responsibility for labor-management, national negotiations, mechanization, health and safety for all Divisions of the Union and the administration of the Contract." The Contract referred to in Article 8, Section 1 of the APWU Constitution includes the series of nationwide collective bargaining agreements between the APWU and the United States Postal Service covering postal clerks, maintenance employees and motor

1



EXHIBIT A

vehicle employees. These collective bargaining agreements are known as the National Agreement.

2.  The collective bargaining agreement applied by Arbitrator Loeb in the Award in dispute in this in this case was the National Agreement covering the time period between November 21, 1994 and November 20, 1998 ("the 1994 National Agreement"). A true and accurate copy of the cover page and of Articles 12, 15 and 16 of the 1994 National Agreement is attached hereto as Exhibit 1. Since 1998, the parties have reached successive National Agreements that have included the same basic provisions in Articles 12, 15, and 16 as were in effect in effect when the grievance was filed in this case. A true and correct copy of Arbitrator Loeb's Award in Case No. C94C-4C-D 98076813, issued on January 28, 2006, is attached to this Declaration as Exhibit 2.

3.  Under Article 16, Section 1, of the National Agreement, employees who have completed their probationary period may not be disciplined or discharged except for "just cause." If a dispute arises between the APWU and the employer as to whether particular discipline is for just cause, the Union has a right to appeal the question to arbitration before a neutral third party. The just cause protection against arbitrary discipline by supervisors is a contractual "due process" benefit negotiated on behalf of bargaining unit employees, by the Union through collective bargaining. Article 16, Section 1, provides, in part: "a basic principle shall be that discipline shall be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause... ."

4.  Under Article 12, Section 1.A of the National Agreement, newly hired employees are required to complete a 90-day probationary period before they have the protections of the just cause provision of Article 16.1. If an employee believes that he or she was separated after completion of their probationary period, the employee or the Union is entitled to file a grievance, protesting the separation as a discharge without due process. When the Union challenges the discharge of an employee, the employer has a right to assert as an affirmative defense to that grievance that the employee was removed during their probationary period. Article 12, Section 1 provides:

> The probationary period for a new employee shall be ninety (90) calendar days. The employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto. If the Employer intends to separate an employee during the probationary period for scheme failure, the employee shall be given at least seven (7) days advance notice of such intent to separate the employee. If the employee qualifies on the scheme within the notice period, the employee will not be separated for prior scheme failure.

A true and accurate copy of Article 12 of the 1994 National Agreement is attached to this Declaration as Exhibit 1.

5.  The National Agreement makes provision for arbitration at either the National level or the regional level. Regional-level arbitration is sometimes referred to as district-level arbitration or area-level arbitration, and some regional-level cases are resolved through expedited arbitration. In Article 15, Section 5.A.6, the parties have agreed that "[a]ll decisions of an arbitrator will be final and binding" and that [a]ll decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended,

or modified by an arbitrator...." Arbitrator Loeb's Award, Exhibit 2, is an Area-level level award. Such awards are also sometimes called District-level awards or Regional-level awards. Cases that arise at the area, district or regional level that raise interpretive issues of general application under the National Agreement may be referred to the National level for settlement or arbitration. However, if cases are arbitrated below the National level, as in the case of the Loeb Award, the decisions in those cases are not binding on the parties or arbitrators in other cases.

6. Arbitrator Das has been a National-level arbitrator for the APWU and the Postal Service continuously since 1997, and he is still serving in that capacity. He has been a National-level arbitrator during four different National Agreements.

7. Under Article 15, Section 4.D of the National Agreement, "in the event of a dispute between the Union and the Employer as to the interpretation of [the National] agreement, such dispute may be initiated at the Step 4 [National] level by either party." As Industrial Relations Director of the APWU, I initiated a dispute at the National level in order to resolve the parties' disagreements over the meaning of Article 12, Section 1.A, of the National Agreement. That dispute was decided by Arbitrator Das in Case No. Q98C-4Q-C 99251456, issued on September 10, 2001 (hereinafter referred to as the "Das Award").

8. Under Article 15, Section 4.D, "[a]ny local grievances filed on the specific interpretive issue [on which there is a dispute filed at the National level] shall be held in abeyance at the appropriate level pending resolution of the national interpretive dispute." Consequently, the grievance that is the subject of the arbitration award in

4

dispute in this case was held in abeyance pending the decision by Arbitrator Das.

9. Under Article 15, Section 5.D.1 "[o]nly cases involving interpretive issues under this Agreement or supplements thereto of general application will be arbitrated at the National level." Under this provision, National-level awards are final and binding on the parties on a nationwide basis. Under the National Agreement, the parties have agreed to be bound, and are bound, to apply National-level awards in the administration of the National Agreement on a nationwide basis. In disputes arbitrated at district, area or regional levels, National-level awards must be applied as binding precedents guiding the decisions of the lower-level arbitrators. The Award of Arbitrator Das attached to this Declaration as Exhibit 3 is final and binding on the parties and was binding on Arbitrator Loeb in Arbitrator Loeb's decision that is Exhibit 2 to this Declaration. National-level awards are analogous to decisions by the United States Supreme Court interpreting federal statues. Once a National-level award has issued, that decision establishes the meaning of the contract provision in dispute in that case.

10. The Postal Service has not challenged the validity of the Das Award. It continues to bind the parties and lower-level arbitrators in the application of the National Agreement.

11. In the Das Award, Arbitrator Das Award, the Arbitrator held:

1. Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM.

2. A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 10, 2007.

_____
Greg Bell