## REGULAR ARBITRATION PANEL

```
-------------------------------------------------
```
In the Matter of Arbitration      )        CASE NO:  C94C-4C-D 98076813
                                  )
            between               )        LOCAL UNION NO:  981234
                                  )
                                  )        GRIEVANT:  Lorraine Daliessio
THE UNITED STATES POSTAL SERVICE  )
                                  )        POST OFFICE:  Philadelphia, PA
            and                   )
                                  )
THE AMERICAN POSTAL WORKERS UNION, )
AFL-CIO                           )
                                  )
                                  )
```
-------------------------------------------------
```

RECEIVED
FEB 2006
IND. REL
DEPT.

**BEFORE:** Lawrence R. Loeb, Arbitrator

**ON BEHALF OF THE POSTAL SERVICE**        Anthony Waters
                                           Acting Manager, Labor Relations

**ON BEHALF OF THE UNION**                 Frederick Selznick
                                               Arbitration Advocate

**PLACE OF HEARING:**                      Philadelphia, PA

**DATE OF HEARING:**                       November 2, 2005

**DATE OF DECISION:**                      January 28, 2006

**CONTRACT PROVISIONS:**                   Article 12

**DECISION:**                              The grievance is sustained.

### SYNOPSIS

A probationary employee may challenge his termination through the grievance procedure where the protest is based on the allegation that Management failed to effectuate the employee's separation during his probationary period.

EXHIBIT
2
Blumberg No. 5119

## I. STATEMENT OF FACTS

The Grievant's Form 50 indicates that she was hired by the Postal Service on November 22, 1997 at which time she entered upon her ninety day probationary period. If all went well it would end on February 19, 1998 at which time she would become a part-time flexible clerk entitled to all of the benefits and protections afforded by the Contract to regular employees. Unfortunately for all concerned, things did not go well. On December 30, 1997 the supervisor evaluated the Grievant using PS Form 1750, Employee Evaluation and/or Probationary Report. She rated the Grievant satisfactory with regard to her dependability, work relations, work methods and personal conduct. However, in regard to two key areas, work quantity and work quality, the supervisor rated the Grievant unsatisfactory. The Grievant received the exact same ratings on January 30, 1998. At that time, under the heading of "Have Expectations Been Jointly Discussed" the supervisor checked the box marked "Yes". Of greater significance, the supervisor answered "No" to the question "Would You Recommend This Person for Retention or Rehire?" The Grievant refused to initial the form under the rating section and also refused to sign the document. She advised the Union and later the Arbitrator during the course of the hearing that when she saw the form the supervisor had not yet marked the box indicating that she would not recommend the Grievant be retained by the Postal Service. However, on February 8, 1998 the Grievant prepared and submitted a four and a quarter page statement to the EEO in which she wrote in part:

> "I am very upset that Kerry checked the block on the evaluation
> sheet part, "no recommended for re-hire".

Whatever the Grievant saw, there is no dispute that after the supervisor completed the evaluation form she advised the Grievant to clean out her locker, turn in her ID and go home.

On February 4, 1998, four days before the Grievant launched her EEO complaint, her supervisor sent a letter to the Manager of Labor Relations for the Philadelphia District in which she wrote:

> I am requesting an action be initiated to remove PTF Mark-Up
> Clerk Lorraine G. Daliessio, ... from the rolls of the United States
> Postal Service effective January 30, 1998.

The letter went on to explain to the Manager the reasons behind the request and further advised him of the Grievant's address of record. Along with the supervisor's signature the letter also bore the signature of the Manager of Computer Forwarding who concurred in the request to separate the Grievant. For reasons for that were never fully explained the Employer failed to act on the supervisor's request until February 20, 1998 at which time it finally sent a certified letter to the Grievant advising her that:

> This will confirm your separation from the Postal Service as a
> result of a lack of proficiency on the Keying equipment.

The record reveals that the carrier attempted to deliver the letter to the Grievant on February 25th and again on March 2nd, 1998. Neither attempt was successful because the Grievant failed to claim the letter. Around the same time that the Employer was trying to deliver the certified letter to the Grievant, a labor relations specialist directed the carrier who serviced the Grievant's route to deliver an identical first class letter to the Grievant's address of record. The carrier subsequently signed a statement that he slotted the letter to the Grievant's address of record on March 21, 1998.

Six days later the Union sent a request for information to the Employer seeking copies of all of the Grievant's evaluations as well as a copy of the separation notice that had been issued to her. Three days later after sending the request a steward met with the supervisor to protest her termination. From the Union's perspective, the meeting was a failure, the supervisor refusing to sustain the grievance and rescind the termination. The following day, March 31, 1998, the Union appealed the matter to Step 2 at which time it alleged that Management had violated eleven articles of the National Agreement and five sections of the Local Memorandum of Understanding when it discharged the Grievant. Under the heading of "Detailed Statement of Facts/Contentions of the Grievant" the individual who completed the form wrote:

> On 1-31-98, Part-Time Flexible Computer Forwarding Clerk, Ms.
> Lorraine G. Daliessio, was verbally informed by Supervisor V.
> Barnett that she was to cleanout (sic) her locker and that she was
> being terminated.
>
> The Union contends that, after conducting a thorough
> investigation, Management violated several provisions of the
> Postal Regulation (Employee Labor Relations Manual) pertaining
> to Probationary Employee Procedures including but not limited to

evaluation, training and termination; also they are in violation of several provisions of the Local and National Contracts.

The parties met to discuss the matter on April 16, 1998 at which time the Union expanded the basis for challenging the Grievant's termination, alleging the supervisor failed to complete the eighty day evaluation, that the Grievant did not receive an official letter from Personnel notifying her of the termination and that the Service's actions violated Articles 365 and 378 of the Employee and Labor Manual, the pertinent portions of which provide:

### 365.323    Probationary Period

*Separation-disqualification* must be effected during the probationary period except as provided in 365.321. Action is initiated at any time in the probationary period when it becomes apparent that the employee is lacking in fitness and capacity for efficient service. Any separation based on disqualification not effected during the probationary period, as provided in 365.321, even though the action is based on unsatisfactory performance during the probationary period, must be effected as a removal.

### 365.326    Procedure in Separating

If an appointing official decides to terminate an employee who is serving a probationary period due to conditions arising prior to appointment, or because work performance or conduct during this period fails to demonstrate fitness or qualification for continues postal employment, the employee's services are terminated by notifying the employee in writing why she or he is being terminated and the effective date of the action. The information in the notice regarding the termination must, at a minimum, consist of the appointing official's conclusions as to the inadequacies of performance or conduct.

### 378.12    At Eighty Days

At the end of the first 80 days of the probationary period, a final evaluation is prepared and submitted by the supervisor on Form 1750. This evaluation contains a definite recommendation regarding whether the employee should be retained or be separated.

4

Neither those arguments nor any of the others which the Union marshaled during the course of the Step 2 meeting were sufficient to convince Management to alter its position, the Service denying the grievance the day after the meeting on the basis that:

> This grievance is not timely in nature. Also, I.A.W., the National Agreement Article 12 Section 1a the employer has the right to separate from its employee any probationary employee at any time during the probationary period and these employees shall not be permitted access to the grievance procedures. Based on the above, I do not believe the Postal Service has breached the National or Local Agreement; therefore this grievance is denied.

Unwilling to let the matter rest the Union appealed the grievance to Step 3 at which time it reiterated all of the arguments that it raised at the prior steps of the grievance procedure and again asked that the Grievant immediately be returned to duty and that she be made whole for any losses that she may have suffered as a result of what the Union alleged was her wrongful termination.

## II. POSITON OF THE UNION

The rules which govern the resolution of this grievance are simple, straightforward and have been in place for years. They provide that if the Postal Service decides to terminate an employee during his probationary period, that individual does not have access to the grievance-arbitration machinery outlined in the National Agreement. The Union has not, does not and cannot dispute that point because it is unequivocally spelled out in Article 12 of the Contract. The key point for the Arbitrator to bear in mind is that once the employee passes his ninetieth day he becomes a part-time flexible clerk who may only be terminated if the Employer has just cause to take that step as that term is understood under Article 16 of the Contract. Moreover, once an individual exceeds ninety days of employment with the Postal Service he has the right to protest any disciplinary action, including any attempted removal, and to ultimately have that grievance decided by an arbitrator.

If the Contract is clear with regard to the rights of full-time employees vis a vis probationary employees, it is equally clear with regard to the procedure the Employer must follow if it intends to terminate a probationary employee and the time sequence within which it must act. Those requirements are not found between the covers of the National Agreement. They are, however, as much a part of the Contract as if they had been written there because they are found in Articles 356 and 378 of the Employee and Labor Relations Manual which, by way

5

of Article 19, are as much a part of the Contract as any of the provisions printed on the pages of the document.

Those two Articles demand that if the Employer intends to terminate a probationary employee the action must take place during the employee's probationary period, the notice must be in writing, must be signed by the appropriate official and must provide the employee with the reason he or she is being terminated. These are not suggestions which the Employer is free to consider or ignore at its whim. These are requirements that Management must meet if it intends to terminate a probationary employee. Where it fails to satisfy those standards the attempted termination fails and the employee becomes a full-time clerk who can only be discharged if there is just cause to remove him, a decision the employee has a right to protest through the grievance-arbitration machinery in the Contract.

In the matter under consideration, the Service did not come anywhere close to meeting the standards set forth in the ELM. That much is clear from the fact that if the Employer intended to terminate the Grievant during her probationary period it had to provide her with the requisite written notice prior to February 20, 1998. She did not receive the termination letter, though, until March 21st, more than thirty days after she ceased to be a probationary employee. On that basis alone the attempted termination is void and the Grievant must be reinstated. Aware of the problem, the Postal Service attempted to argue that the Grievant did receive notification of her termination, claiming that she was told on January 30th at the time of her review that she would not be retained which the Grievant was supposed to understand meant she would be terminated. It is clear from the overwhelming weight of arbitral authority that a verbal notice does not satisfy the requirements of the ELM. Neither does the Form-1750, the Employee's Evaluation Form. The document is exactly what it says it is, an evaluation form; nothing more. While the supervisor who completes it may recommend that a probationary employee not be retained that is simply his opinion. The final determination must be made by the appropriate official and must be transmitted to the employee, in writing within his probationary period.

The record indicates that Management was well aware of those rules because on February 4, 1998 her supervisor and her manager requested that Labor Relations send a letter to the Grievant advising her of her termination. For whatever reason, the Service did not act then or the next day or the day after or the day after that. It was not until February 20, 1998 that Management finally sent a certified letter to the Grievant that she never received. Finally, it sent

her a regular mail letter that was delivered to her on March 21, 1998. It was from that point and that point alone that the time within which the Grievant had to initiate a grievance began to run.

Of greater significance, March 21st marked the twenty-eight day after the end of the Grievant's probationary period. At that point the Employer lost the right to summarily discharge the Grievant as a probationary employee. Instead, it could only remove her if it had just cause to do so which it obviously did not. Since the Service failed to follow the strict requirements it wrote into the ELM, it follows that the Grievant should never have been terminated. Therefore, she is entitled to both protest her attempted removal through the grievance-arbitration procedure and, just as importantly, to be reinstated with full back pay and no loss of seniority.

## III. POSITION OF THE EMPLOYER

The Grievant is seeking something to which she has absolutely no right; an opportunity to contest her termination through the grievance procedure. The reason she has no right to do so is that Article 12 is absolutely clear that a probationary employee who is terminated during the period of his probation cannot protest his discharge. Nothing could be clearer. And if there is no doubt about the contract language which controls the outcome of this dispute, there is also no doubt that the Grievant was told by her supervisor on the seventieth day of her employment that she was being terminated and that she should clean out her locker and go home. The reason for the decision was simple. The Grievant had demonstrated so little progress that the supervisor felt that she should not be retained by the Postal Service. It was a decision which Management had an absolute right to make after reviewing the Grievant's record.

The Union tried to argue that the Employer acted precipitously because the Grievant was entitled to an eighty-day review. There are two problems with that argument. The first is that there is nothing in the Agreement which says that the Service has to wait until eighty days for a final review before it decides if it wants to retain or terminate a probationary employee. Since the Contract is entirely silent on the issue, Management has the discretion to decide when and why it will terminate a probationary employee. The second problem with the Union's argument is that it is trying to use it as a back door to bring this matter within the confines of the grievance procedure. Again, Article 12 is clear and controlling. In no uncertain terms it states that an employee who is terminated during his probationary period has no right to protest the decision. It does not matter how the Union or the employee chooses to characterize the grievance. The fact that it is an attempt to challenge the basis for the decision to remove the Grievant during her

7

probationary period puts it outside the scope of the Contract and, therefore, denies the Arbitrator authority to consider, let alone pass judgment, on the argument.

Rather than concede the point, the Union claimed that it was not challenging the grounds for the Grievant's removal, but rather the procedure by which she was terminated which gives it access to the grievance procedure. Three federal appeals courts have soundly rejected that argument. As the majority in each of those cases pointed out, the argument is based on the faulty premise that the provisions of the ELM somehow apply to probationary employees, demanding that the Service take certain steps in a certain order for the termination to be valid. There is absolutely no support in the Contract for any such interpretation. There are, admittedly, a small number of regional arbitration awards which support the Union's position. Those awards misinterpret the Contract and the ELM, holding that the provisions of the Employee and Labor Relations Manual determine the manner and procedures which Management must follow in order to terminate a probationary employee. It was those arguments that the federal courts overwhelmingly rejected, correctly determining that the National Agreement explicitly denies a probationary employee access to the grievance-arbitration procedure outlined in Articles 15 and 16 if that individual is terminated during his probationary period, which the Grievant was. And there is no question that she was.

The Union, in fact, does not contest that the Grievant was told on the seventieth day of her employment to clean out her locker and that she was being discharged. Since she failed to complete her probationary period, she has no contractual right to protest her termination and no forum within which to do it. It would require an entirely perverted view of both the facts and the Contract, one which somehow elevates a few sections of the ELM over the clear, unequivocal language in Article 12 to achieve that result. Since that is the only way the Union can prevail in this matter it follows that the grievance is not arbitral and must be dismissed as such.

## IV. DISCUSSION

Between 1971 when Article 12.1.A. became part of the National Agreement and February 25, 2000 the rules governing the tenure of probationary employees seemed to be beyond dispute. The reason for the clarity is that the language of that section appears to be clear, unequivocal and uncompromising, declaring that:

8

> The probationary period for a new employee shall be ninety
> (90) calendar days. The Employer shall have the right to
> separate from its employ any probationary employee at any
> time during the probationary period and these probationary
> employees shall not be permitted access to the grievance
> procedure in relation thereto.

Taking the language at face value, it creates a special class of employees; those who had no way to protest their termination through the grievance procedure. To the extent that it eliminated the just cause standard set forth in Article 16, Article 12.1.A. can be viewed as a throwback to the common law rule that an employer can terminate an employee for any reason or for no reason and that the employee has neither the right nor any forum in which to challenge that decision. Such seems to be the rule announced by the United States Fifth District Court of Appeals [922 F.2d 256 (1991)] and United States District Court of Columbia [291 U.S. App D.C. 273 (1991)]. In each of those cases the appellate union raised the same claims: that its members were terminated during their probationary period in violation of that portion of the Contract prohibiting the Employer from discriminating against members of the bargaining unit and also that they were discharged in retaliation for filing compensation claims after being injured on duty. If the claims were similar, so too were the Courts' responses; both unanimously holding that regardless of the reasons underlying the employee's termination, if he was terminated during his probationary period Article 12.1.A. denied him access to the grievance-arbitration machinery set out in Article 15 of the Contract.

In many respects the appellate court decisions were simply a reiteration of the principles laid down by Arbitrator Nicholas H. Zumas in Case No. H1C-4C-C 27352, Arbitrator Zumas holding that it does not matter why the employee was terminated or whether in doing so the Postal Service discriminated against that individual. The only issue is whether the employee was terminated within his probationary period. If he was, he is prohibited from challenging his discharge through the grievance procedure.

From the prior arbitration awards submitted by the Union, it appears that beginning in the early 90's and continuing through February 2000 some panel arbitrators began to carve out an exception to the principle that Article 12 prohibits a probationary employee from challenging his termination through the grievance procedure. The exception was built on the provisions of Article 365.32 of the Employee and Labor Relations Manual, the key portions of which provide:

9

### 365.324  Probationary Period

*Separation-disqualification* must be effected during the probationary period except as provided in 365.321. Action is initiated at any time in the probationary period when it becomes apparent that the employee is lacking in fitness and capacity for efficient service. Any separation based on disqualification not effected during the probationary period, as provided in 365.321, even though the action is based on unsatisfactory performance during the probationary period, must be effected as a removal.

### 365.327  Procedure in Separating

If an appointing official decides to terminate an employee who is serving a probationary period due to conditions arising prior to appointment, or because work performance or conduct during this period fails to demonstrate fitness or qualification for continues postal employment, the employee's services are terminated by notifying the employee in writing why she or he is being terminated and the effective date of the action. The information in the notice regarding the termination must, at a minimum, consist of the appointing official's conclusions as to the inadequacies of performance or conduct.

Based upon those rules, seven of the arbitrators whose decisions the Union submitted for review collectively held:

1.  P.S. Form 1750 does not constitute the written notice of separation required by the ELM.  At best, it is simply what it says; an evaluation with a recommendation from a supervisor that the employee not be retained.  Because it is only an evaluation, because it is only a recommendation and because it is not issued by the appointing authority it does not constitute the written notice required by the Employee and Labor Relations Manual;

2.  Telling an employee that he has been terminated during the course of his probation or advising him that he should clean out his locker, turn in his keys and not come back to work or any such declaration does not fulfill the ELM's requirement that the separation notice be in writing.

10

3.  The notice must be signed by the appointing official, state the effective date of the action and provide the employee with the official's conclusions regarding the employee's inadequacies of performance or conduct; and

4.  The notice must be received by the employee prior to the end of his probationary period.

Where the employer failed to meet one or more of those criteria, the arbitrators whose decisions were submitted by the Union concluded that the individual had not been terminated within his probationary period and, therefore, became a full-time employee who could not be discharged except for just cause. The corollary of that rule is that those employees had a right to challenge their discharge through the grievance procedure. The principles announced by those arbitrators were clear, consistent and flowed from the language of Sections 365.323 and .326 of the ELM which have been made a part of the Contract by virtue of Article 19. In view of how clear those arbitrators were with regard to the Service's obligations, it is surprising the number of cases that came to arbitration alleging that Management failed to adhere to its own rules and by failing to adhere to them had effectively lost the right to summarily terminate a probationary employee.

Years ago, in his own inimitable style, Arbitrator Ernst Marlatt advised the Postal Service that it shot itself in the foot when it adopted so many handbooks and manuals which, from his perspective, severely hindered the Employer's right to manage the work force and operate the Postal Service. Neither party submitted any decisions by Arbitrator Marlatt on this issue, but it seems clear from his prior pronouncements that he would have found nothing in the current debate to alter his opinion that Management does itself more harm than good whenever it adopts another handbook or manual that falls within the confines of Article 19. In practical terms, he almost certainly would have viewed Sections 365.323 and .326 as unnecessary and unwarranted limitations on Management's right to terminate a probationary employee. In practical terms, the impact of those rules, as interpreted by the regional arbitrators whose decisions the Union cited in this matter, offer probationary employees an opportunity to protest their terminations through the grievance-arbitration process even though Article 12, Section 1.A. appears to explicitly foreclose that avenue to them.

In 1998 the Service suffered yet another defeat when Arbitrator Christopher E. Miles (Case No. K94C-4K-D 97080929) sustained a grievance protesting the termination of a probationary employee on the grounds that Management had failed to comply with the

11

provisions of Section 365.32 of the ELM. The Service appealed the decision to the U.S. District Court for the Eastern District of Virginia which overturned Arbitrator Miles' award on the grounds that Article 12.1.A. forecloses access to the grievance procedure by a probationary employees regardless of whether the individual is claiming that the action violated some substantive right or that the Service failed to follow the procedures outlined in the ELM when it terminated him. The Union subsequently appealed the decision to the Fourth District Court of Appeals (204 F.3d 523) which, in February 2000, upheld the District Court in a split decision. Writing for the majority, Chief Judge Wilkinson indicated that the question before Arbitrator Miles dealt not with whether the grievant had received written notification during her probationary period, but rather the contents of the notice. It was those kinds of mistakes that had routinely led other panel arbitrators as well as Arbitrator Miles to allow probationary employees to challenge their termination through the grievance procedure on the grounds that the notice procedurally defective because it did not comply with the requirements specified in Section 365.327 of the ELM. Referencing only the Miles award and looking to the decisions by the D.C. Court of Appeals and the Fifth District Court of Appeals, Chief Judge Wilkinson concluded that the language in Article 12 prohibiting a probationary employee from challenging his termination through the grievance procedure was absolute. There were no exceptions, procedural or substantive. In that regard he wrote:

> Indeed, for purposes of the National Agreement, the APWU's attempt [**17] to distinguish procedural from substantive challenges is nothing more than a false dichotomy. Both substantive and procedural challenges would require the Postal Service to mount the same extensive defense of its actions toward probationary employees as it must when it acts to terminate [*530] permanent employees. To allow any kind of separation-related grievance by a probationary employee would thus move in the direction of forcing the Postal Service to treat probationary employees the same as permanent employees. But it is the very purpose of Article 12.1.A to establish a clear distinction between probationary and permanent employees and afford them different protections. Any blurring of this distinction thus thwarts the purpose of the National Agreement.

> . . .

> Once the probationary period has expired without any action to separate the employee, Article 12 no longer denies the employee

12

access to the grievance procedure. In this case, however, it is undisputed that Hoang's Postal Service supervisor acted to separate her within the 90-day probationary period. Whether the Postal Service followed all ELM procedures in taking this action is irrelevant to the grievability of this matter. All that counts is that the matter involved (1) a probationary employee and (2) a separation. In fact, the APWU [**19] itself admitted in its arbitration brief that these elements are present: "The case before the Arbitrator involves the termination of a probationary employee at the Arlington, Va. Post Office" (emphasis added).

The APWU essentially seeks to grieve through the back door the separation of a probationary employee. The parties, however, closed this door when they consented to the clear and unequivocal language of Article 12.1.A in negotiating the National Agreement. Attempts to pry this door open are absolutely barred by Article 12.1.A itself, Article 15.5.a(6)'s prohibition of arbitral modification of the agreement, and Article 19's declaration of the supremacy of the National Agreement over any handbook or manual.

Judge King dissented from those conclusions, writing that:

> Thus, this holding merely stands for the proposition that if the separation of a probationary employee is effectuated during the probationary period, Article 12 denies access to the grievance procedure to challenge the basis of the separation, even if that basis allegedly contravenes another provision of the National Agreement. In other words, the APWU cannot challenge the Postal Service's reasons for separating a probationary employee. However, this holding is no way suggests that the APWU cannot access the grievance procedure to challenge whether a separation actually occurred. (emphasis added)

His words broke no new ground. Instead, they were more or less a reiteration of what many panel arbitrators had held up to that point which is that:

> The Postal Service itself drafted the regulations describing in detail the requirements to effectuate the separation of a probationary employee; the Postal Service and the APWU then agreed to incorporate these requirements into the National Agreement. Thus, if those conditions are not satisfied within the probationary period, there is no separation within the meaning of the National Agreement, and the Article 12 bar does not apply to prohibit access to the grievance procedure.

13

More to the point, Judge King reasoned that:

> If such notice of separation is not given until after an employee has
> completed the probationary period, no one could reasonably assert
> that a grievance brought to challenge such a defective separation
> was not grieveable.

From that premise he concluded that other defects likewise should be grieveable.

Approximately a year and a half after the Fourth Circuit Court of Appeals handed down its decision, Arbitrator Shyam Das was faced with the same question in a national level decision involving both the APWU and the NACL (Case No. Q98C-4Q-C 99251456). Although Arbitrator Das reviewed the Fourth Circuit decision, he made no explicit reference to it in his findings. He did note, however, that:

> Finally, the Postal Service explains that the reason it does not
> dispute that notice of separation must be provided to a
> probationary employee within a 90-day period is that Article
> 12.1.A defines the probationary period as 90 days. That is an
> enforceable Contract provision, unlike the remaining elements in
> Section 365.32 of the ELM cited by the Unions that are superceded
> by Article 12.1.A.

After a preliminary review of the ELM, Arbitrator Das concluded that:

> The issue, in my view, is not whether the ELM provisions the
> Unions rely on "conflict" with Article 12.1.A. They do not. The
> issue, however, is whether Article 12.1.A nonetheless precludes a
> probationary employee and the Union from grieving that the
> employee's separation did not comply in one or more respects with
> those ELM provisions. Or put a different way, whether Article
> 12.1.A permits a probationary employee and the Union to grieve
> that a separation action taken by the Postal Service was not a
> "separation", for purposes of Article 12.1.A, because the Postal
> Service did not comply in one or more respects with the ELM
> provisions.

Having thus defined the problem Arbitrator Das resolved that issue two pages later, writing:

> In all these cases, the individual on whose behalf the Union has
> filed a grievance has been removed from the rolls, that is,
> separated by an action taken by the Postal Service. Otherwise,
> there would have been no reason to file a grievance. The one issue
> that legitimately can be raised in a case where the Postal Service
> claims that a grievance is barred by Article 12.1.A, is that the

separation action did not occur during the probationary period. The
Postal Service acknowledges this, as it must, because Article
12.1.A has no application if the separation action does not occur
during the probationary period. That is a fundamentally different
issue, however, from whether or not the separation action complied
with all the particular requirements set forth in Section 365.32 of
the ELM. Agreement challenge to the validity of the procedures
followed in effecting a separation is barred by the broad
prohibitory language of Article 12.1.A. (emphasis added)

For the reasons set forth in this decision, I conclude that
Article 12.1.A denies a probationary employee access to the
grievance procedure to challenge his or her separation on the
grounds of alleged noncompliance with the procedures in Section
365.32 of the ELM. A dispute as to whether or not the Postal
Service's action separating the employee occurred during his or
her probationary period is arbitrable because that is a precondition
to the applicability of Article 12.1.A. (emphasis added)

In view of those authorities, the undersigned must conclude that the Union has a right to
challenge the Grievant's termination through the grievance procedure. In technical terms, the
grievance is arbitrable, but only to a limited extent. Regardless of how the Union chooses to
characterize the nature of the grievance or how badly it feels that the Service transgressed the
requirements in Section 365.327 of the ELM, the issue before the Arbitrator is not the process
the Service employed when it terminated the Grievant, but whether she was discharged during
her probationary period. The answer is that she was not.

The record is clear that the Grievant was advised on January 30, 1998 that her work was
unsatisfactory and that her supervisor would not recommend her retention. She memorialized
those comments on the Form 1750 by checking the box indicating that she would not
recommend the Grievant be retained by the Service. The Grievant claimed that she never saw
that section of the evaluation form, but in view of her subsequent EEO statement her claim is not
credible. The Grievant's credibility, however, is not an issue in this case. What matters is what
the Postal Service did which is sent her home and told her not to come back to work. Neither the
recommendation nor the order not to return to work terminated the Grievant. The supervisor, her
manager and the Manager of Labor Relations all recognized that was the case by their actions.
The supervisor and the manager by requesting that Labor Relations separate the Grievant and
Labor Relations by sending a letter to that effect to the Grievant. The letter, which was dated

15

February 20, 1998, was sent by certified mail to the Grievant's address of record. She effectively evaded receipt of the letter by refusing to claim it. Thanks to her tactics it was not until late March that the Postal Service finally constructively delivered the letter to the Grievant's address of record. By then it was too late.

Had the Service not drafted Sections 365.323 and .326 of the ELM, it would not have mattered when the Employer sent the letter out or when the Grievant received it as Article 12, Section 1.A. only states that if the Service intends to terminate a probationary employee it must do so during his probationary period. The ELM radically altered that scheme by requiring that if Management intends to terminate a probationary employee the separation must be "...effected during the probationary period...". The ELM further provides the manner in which separation must occur. The Grievant, under the reasoning of both Arbitrator Das and the Fourth Circuit Court of Appeals had the right access the grievance procedure to challenge whether she was terminated during her ninety day probationary period. Having declared that separation must take place during the employee's probationary period and having set the conditions by which it must terminate the employee, the Employer cannot prohibit the Grievant from accessing the grievance procedure on the basis of Article 12 to allege that she was not terminated during her probation.

The Service would argue that such a result is contrary to the Fourth Circuit's decision, supra, because it allows a probationary employee access to the grievance procedure. As Judge King pointed out in his dissent, if the parties enacted Article 12 they also made Article 19 a part of the National Agreement and through it the various handbooks and manuals written by the Service and adopted in conformity with that provision. From that it is possible to argue that since Article 12 is silent with regard to the method by which a probationary employee is to be terminated Sections 365.324 and .327 merely fill the void by describing the process that Management must follow when it terminates a probationary employee. That argument notwithstanding, the Fourth Circuit's decision is distinguishable from the present case as a review of the Miles award (Case No. K94C-4K-D 97080929) which eventually lead to the Circuit Court's decision reveals that it did not involve the issue of when the employee was terminated, but rather whether he was the victim of disparate treatment and whether he had been properly trained. To that extent, the Fourth Circuit's decision broke no new ground. Instead, it was simply a reiteration of the principle that a probationary employee may be discharged for any

16

reason, rational or not, and that regardless of the reason he has no right to challenge his termination through the grievance procedure.

Whatever else may have been at issue in that case, there was no question that the Service had issued a timely notice to the employee advising him that he was being terminated before the end of his probationary period. That is the primary issue in this case, though, and because it is the Grievant has a right to argue that she was not terminated during her probation. To hold otherwise would result in the ridiculous situation of an employee who is on the rolls beyond ninety days being unable to challenge his summary termination because Management chose to identify him as a probationary employee. As Arbitrator Das pointed out, such claims must be and are arbitrable. The Grievant's is one of those.

The plain fact of the matter is that the Employer failed to terminate the Grievant, as that term is understood in Article 12 within her probationary period. By the time the Service finally acted the Grievant's probationary period had long since passed. She, therefore, became a full-time employee who could only be removed for just cause. Since the Service violated the Contract the Grievant is entitled to be made whole which means to be reinstated with no loss of seniority and back pay, less any sums she may have received from any other source.

## V. DECISION

For the foregoing reasons, the grievance is sustained. The Service is directed to reinstate the Grievant with no loss of seniority and with back pay for all regular hours she would have worked had she not been improperly terminated, less any sums which she received from any other source.

Date: _____ / 2 v / 0 6 _____

_____
**LAWRENCE R. LOEB, Arbitrator**