## National Arbitration Panel

| | |
|---|---|
| In the Matter of Arbitration | ) |
| between | ) |
| United States Postal Service | ) |
| and | ) Case No. |
| | ) Q98C-4Q-C 99251456 |
| American Postal Workers Union | ) |
| and | ) |
| National Association of Letter Carriers - Intervenor | ) |

Before:  Shyam Das

Appearances:

    For the Postal Service:    Larissa Omelchenko Taran, Esquire

    For the APWU:    Susan L. Catler, Esquire

    For the NALC:    Keith E. Secular, Esquire

Place of Hearing:    Washington, D.C.

Dates of Hearing:    February 28, 2001
    April 4, 2001

Date of Award:    September 10, 2001

Relevant Contract Provision:    Article 12.1.A

Contract Year:    1998-2000

Type of Grievance:    Contract Interpretation

EXHIBIT
3

2          Q98C-4Q-C 99251456

### Award Summary

1. Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM.

2. A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.

Shyam Das, Arbitrator

## BACKGROUND        Q98C-4Q-C 99251456

This case arises under the 1998-2000 National Agreement between the American Postal Workers Union (APWU) and the Postal Service.  The National Association of Letter Carriers (NALC) has intervened in support of the position taken by the APWU.  The dispute involves the interpretation of Article 12.1.A of the National Agreement, which provides as follows:

> The probationary period for a new employee shall be ninety (90) calendar days.  The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.  If the Employer intends to separate an employee during the probationary period for scheme failure, the employee shall be given at least seven (7) days advance notice of such intent to separate the employee.  If the employee qualifies on the scheme within the notice period, the employee will not be separated for prior scheme failure.

The Unions assert that a grievance over whether the Postal Service has actually effectuated a separation of an employee during his or her probationary period is subject to the grievance-arbitration procedure.  More particularly, the Unions maintain that Section 365.32 of the Employee and Labor Relations Manual (ELM) sets forth four procedural requirements for effectuating the separation of a probationary employee, and that the Union may file a grievance that challenges whether those separation procedures were followed.

2                    Q98C-4Q-C 99251456

The Postal Service maintains that Article 12.1 clearly denies a probationary employee access to the grievance procedure to challenge his or her separation on any grounds, including alleged noncompliance with Section 365.32 of the ELM.

The principle provisions of Section 365.32 of the ELM cited by the Unions provide as follows:

365.3   Separations - Involuntary

\*         \*         \*

365.32   Separation-Disqualification
         (S-Disqual)

365.321   Applicability

This type of separation applies only to employees who have not completed their probationary period, except where the separation is caused by a finding that employees who have completed the probationary period have failed to meet certain conditions attached to their appointment.

\*         \*         \*

365.323   Probationary Period

*Separation-disqualification* must be effected during the probationary period except as provided in 365.321.  Action is initiated at any time in the probationary period when it becomes apparent that the employee is lacking in fitness and capacity for efficient service.  Any separation based on disqualification not effected during the probationary period, as provided in 365.321,

3          Q98C-4Q-C 99251456

even though the action is based on
unsatisfactory performance during the
probationary period, must be effected as a
removal.

\*          \*          \*

365.325  Who Initiates Action

Supervisors may recommend separation-
disqualification, but such recommendations
must be referred for decision to the
official having authority to take the
action.

365.326  Procedure in Separating

If an appointing official decides to
terminate an employee who is serving a
probationary period due to conditions
arising prior to appointment, or because
work performance or conduct during this
period fails to demonstrate fitness or
qualification for continued postal
employment, the employee's services are
terminated by notifying the employee in
writing why she or he is being terminated
and the effective date of the action.  The
information in the notice regarding the
termination must, at a minimum, consist of
the appointing official's conclusions as to
the inadequacies of performance or conduct.

365.327  Effective Date

The effective date of separation by
disqualification must be before the end of
the probationary period but may not be
retroactively effective.  The notice of
separation must be given to the employee
before the end of the probationary or trial
period.

4                    Q98C-4Q-C 99251456

Article 19 of the National Agreement provides that:

Those parts of all handbooks, manuals and
published regulations of the Postal Service,
that directly relate to wages, hours, or
working conditions, as they apply to
employees covered by this Agreement, shall
contain nothing that conflicts with this
Agreement, and shall be continued in effect
except that the Employer shall have the
right to make changes that are not
inconsistent with this Agreement and that
are fair, reasonable, and equitable.  This
includes, but is not limited to, the Postal
Service Manual and the F-21, Timekeeper's
Instructions.

Notice of such proposed changes that
directly relate to wages, hours, or working
conditions will be furnished to the Union at
the national level at least sixty (60) days
prior to issuance....  At the request of the
Union, the parties shall meet concerning
such changes.  If the Union, after the
meeting, believes the proposed changes
violate the National Agreement (including
this Article), it may then submit the issue
to arbitration....

The issue in this case has not been addressed in a
National Arbitration decision.  Evidently, the only National
Arbitration decision dealing with Article 12.1.A is the 1985
decision of Arbitrator Zumas in Case No. H1C-4C-C 27351/2.  In
that case, the APWU challenged the separation of two
probationary employees.  The Union alleged that the grievants
had been retaliated against for filing workers compensation
claims, in violation of Article 21, and had been the victims of
handicap discrimination in violation of Article 2.  Arbitrator

5                    Q98C-4Q-C 99251456

Zumas rejected the Union's contentions that the grievants were entitled to enforce their rights under Articles 2 and 21 through the grievance-arbitration procedure, and that the language of Article 12.1.A applies only as an exception to the "just cause" provision of Article 16.  In his decision, Arbitrator Zumas stated:

> Article 12.1A, in clear, unqualified, unrestricted, and all encompassing language, denies probationary employees access to the grievance-arbitration process if they are terminated <u>for any reason</u> during the probationary period.  There is simply no contractual basis that would warrant a conclusion that the Article 12.1A exception has application only to "just cause" terminations.

There have been a considerable number of regional arbitration cases in which the Unions challenged the purported separation of a probationary employee on various grounds, including that the separation was not properly effectuated in accordance with one or more of the requirements of Section 365.32 of the ELM.  Prior to 1999, a large majority of the regional arbitrators who were presented with a claim that a purported separation did not comply with the cited ELM provisions applied those provisions, even in cases where the Postal Service insisted the grievance was not arbitrable under Article 12.1.A.  Prior to 1998, the Postal Service never challenged any of the decisions which ruled in the Unions' favor on that issue in a court of law.

6                    Q98C-4Q-C 99251456

Regional Arbitrator Miles issued a decision in Case
No. K94C-4K-D 97080929 on June 16, 1998.  The APWU had filed a
grievance challenging the separation of the grievant on the
grounds that the Postal Service violated the procedures in
Section 365.32 of the ELM.  More particularly, as articulated by
Arbitrator Miles, the Union claimed that the Postal Service
failed to provide a specific statement that the grievant was
being terminated for a particular reason and that the notice of
separation was not issued by the appointing official.  The
Postal Service asserted that the grievance was not arbitrable
under Article 12.1.A.  The case was bifurcated, and Arbitrator
Miles issued a decision holding that the question of whether the
Postal Service adhered to the proper ELM procedures was an
arbitrable matter.  Arbitrator Miles stated:

> There is no question that Article 12,
> Section 1 of the Agreement entitles the
> Postal Service to terminate probationary
> employees prior to the expiration of their
> probationary period.  However, Article 12
> does not stand alone, rather it must be
> considered in conjunction with all other
> provisions of the Agreement.  Thus, when
> taking action to separate a probationary
> employee, the Postal Service must do so in
> accordance with the provisions of the
> Agreement and the applicable provisions
> which are contained in Section 365.32 of the
> ELM.  This provision is every bit a part of
> the Agreement, pursuant to Article 19, as is
> Article 12, Section 1.

The Postal Service brought an action to vacate the
Miles award in the United States District Court for the Eastern

7                Q98C-4Q-C 99251456

District of Virginia.  The APWU counterclaimed for enforcement
of the award.  The district court vacated the Miles award,
ruling that the arbitrator had exceeded his authority by issuing
an award that was directly contrary to the language of Article
12.1 of the parties' collective bargaining agreement.
Thereafter, the APWU appealed that decision to the United States
Court of Appeals for the Fourth Circuit.  It also initiated this
Step 4 interpretive dispute.

    The Fourth Circuit Court of Appeals issued its ruling
on February 25, 2000 (USPS v. APWU, 204 F.3d 523.)  By a 2 to 1
majority, the court affirmed the district court's judgment
vacating the Miles award.  The court rejected the APWU's
argument that the Miles award does not violate Article 12.1.A
because nothing in that provision precludes an arbitrator from
determining whether a probationary employee was actually
separated in the first place.  The Court stated:

> ...The arbitrator's decision that procedural
> attacks on the separation of a probationary
> employee are arbitrable contravenes the
> unambiguous language of Article 12.1.A.  The
> terms of this provision are worth repeating:
> "The Employer shall have the right to
> separate from its employ any probationary
> employee at any time during the probationary
> period and these probationary employees
> *shall not be permitted access* to the
> grievance procedure *in relation thereto*"
> (emphasis added).  This language is
> unqualified and admits of no exception.  The
> provision makes no distinction whatsoever
> between procedural attacks on separations
> and substantive challenges.  The sweeping

8                          Q98C-4Q-C 99251456

phrase "in relation thereto" brings any
separation-related grievance by a
probationary employee within the ambit of
the prohibition.  In other words, so long as
the matter involves probationary employees
and the question of separation, no grievance
may be brought.  In fact, it is difficult to
see how the parties could have been any
clearer in prohibiting every kind of
separation-related grievance by a
probationary employee.

The arbitrator ruled that notwithstanding
the clear language of Article 12, Article 19
somehow renders this matter grievable.  He
claimed that Article 19 incorporates Postal
Service handbooks and manuals into the
National Agreement, and that ELM violations
are grievable by probationary employees
because ELM violations are also violations
of the National Agreement.

This argument, however, has no basis
whatsoever in the National Agreement.  Even
assuming, arguendo, that Article 19
incorporates the ELM into the National
Agreement, there is no language either in
the ELM or in Article 19 that even suggests
ELM violations are grievable by probationary
employees.  Further, even if there were any
hint in the ELM that probationary employees
could grieve ELM violations, this hint would
run smack into Article 12.  And Article 19
unequivocally states that Postal Service
handbooks and manuals "shall contain nothing
that conflicts with this Agreement."

In addition to the action it filed to vacate the Miles
award, the Postal Service has since filed similar actions to
vacate other regional arbitration awards holding that a
grievance that protests that a purported separation violates

Section 365.32 of the ELM is arbitrable.  The Union has
counterclaimed to enforce those awards.  These actions in
various United States District Courts have been stayed (or a
motion to stay has been filed), pending issuance of this
National Arbitration decision.


## UNION POSITION

Initially, the Unions point out that Article 15.5.A.9
of the National Agreement provides that:  "Any dispute as to
arbitrability may be submitted to the arbitrator and be
determined by such arbitrator".

The Unions contend that Article 12.1.A must be
interpreted in the context of the separation procedures set
forth in Postal Service Manuals and Regulations.  Since at least
the 1950's the Postal Service had regulations set forth in its
Post Office Manuals governing the separation of probationary
employees.  Although the language changed slightly over the
years, the core requirements for the Postal Service to
effectuate a probationary separation always have been:  (1)
written notice; (2) by the appointing official; (3) stating, at
a minimum, the reasons for the termination; (4) provided to the
employee prior to the end of the probationary period.  These
regulations also provide that if an employee is not separated
during the probationary period, that employee can only be
removed by following the procedures for permanent employees,

even if the action is based on unsatisfactory performance during the probationary period.

The Unions stress that prior to adoption of Article 12 in 1971, the Postal Service had to satisfy all the requirements for separating a probationary employee in order to effectuate such a separation. The Unions argue that it was in this context that they entered into negotiations with the Postal Service for the first National Agreement in 1971, and that the language in the Post Office Manual provided the basis for the parties agreeing to Article 12. The language in Article 12 was intended to operate in tandem with the separation procedures in the Post Office Manual, which remained in effect. Thus, there was no reason to include any language defining probationary separations in the National Agreement. The Postal Service would effectuate a probationary separation by following the procedures in the Post Office Manual. Once there was a separation, the language of Article 12 would bar challenges to that separation, which was the Postal Service's central concern. For decades after the first National Agreement, the Unions assert, the Postal Service continued to apply the probationary separation procedures and arbitrators continued to review whether the Postal Service had complied with those procedures.

The Unions point out that the Postal Service could hardly have negotiated Article 12 with the belief that Article 19 would eliminate the separation procedures as contradictory language, because Article 19 did not come into existence until the second National Agreement was negotiated in 1973. Moreover,

11                    Q98C-4Q-C 99251456

the Postal Service's claim that the ELM provisions are in
conflict with Article 12 is controverted by its promulgation of
the ELM in 1978, which reincorporated the separation procedures
previously set forth in the Postal Manual.  The Unions also
emphasize that the provisions of the ELM are part of the
official regulations governing the Postal Service, as provided
in 39 C.F.R. §211.2(a)(1).

          The Unions contend that the contract language supports
its interpretation.  The language of Article 12 is far from
clear.  It speaks of the right to the Postal Service to separate
employees and the prohibition on the right to file grievances in
relation to that separation, but there is no guidance as to when
a separation has occurred.  Absent language elsewhere
incorporated into the National Agreement or past practice, it
reasonably could be argued that common sense or industrial
common law could be used to determine the threshold issue of
whether an employee was separated during the probationary
period.  Here, however, the language of the ELM and the past
practice of the parties spells out exactly what it means to
"separate" a probationary employee.

          The Unions assert that ELM provisions in Section
365.32 clearly and specifically define when a separation of a
probationary employee occurs.  These provisions have been
specifically incorporated into the National Agreement by Article
19 and have been in effect for at least a half century.  There
is no conflict between these provisions and Article 12, and they
should be followed in applying that provision.

The Unions adamantly reject the Postal Service's claim that the Unions' position will deprive the Postal Service of the benefit of its bargain. Nothing in the Unions' argument diminishes the Postal Service's right to separate probationary employees during the probationary period without adhering to the just cause standard. All the Unions are seeking here is a decision requiring the Postal Service to adhere to its own almost 50-year-old regulation when effecting the separation. The benefit of the bargain argument also cuts both ways. The Unions have negotiated just cause protection for all employees who have not been properly separated before the end of their 90th day of employment. A ruling which undermines the standards for effectuating separations diminishes this protection.

The Unions maintain that the 2000 Fourth Circuit Court of Appeals decision upholding the vacating of the Miles award misinterpreted the National Agreement. Moreover, that court did not have the benefit of the parties' negotiating history and the foundation of the Post Office Manual serving as a governing document when the parties first negotiated Article 12. The Unions also assert that the Zumas National Arbitration Award and two earlier Federal Court of Appeal decisions cited by the Postal Service are not on point. Those cases merely held that once a separation is effected during the probationary period, the basis for the separation cannot be challenged through the grievance procedure even if the Union alleges that the basis for the separation violated another provision of the National Agreement.

The Unions also insist that the post-1971 bargaining history cited by the Postal Service does not support the Postal Service's claim that the Unions are trying to achieve by arbitration what they failed to gain in negotiations.  The Unions never sought to include into the National Agreement the right to challenge whether a separation occurred during the probationary period, always believing it had that right by way of the ELM.  The bargaining proposals the Unions submitted sought to shorten the probationary period and to include just cause dismissal rights enforceable in the grievance procedure, for probationary employees.  The just cause proposals went to the reasons for separation, not whether a separation occurred.


## POSTAL SERVICE POSITION

The Postal Service contends that the language of Article 12.1.A is as clear and unequivocal as contract language can be.  The probationary period is intended to be a trial period designed to determine if the initial decision to employ a person was appropriate.  The purpose of Article 12.1.A is to allow the Postal Service to make such evaluations and, if necessary, to separate a probationary employee without becoming entangled in the complicated and time-consuming procedures afforded to permanent employees by Article 15 (Grievance-Arbitration Procedure) and Article 16 (Discipline Procedure). The Postal Service asserts that this right is especially important in an organization as large as the Postal Service, and

14                Q98C-4Q-C 99251456

becomes increasingly important as the Postal Service moves away
from the notion of a traditional personnel office, and toward a
system where the supervisor has increased autonomy and uses
shared web-based applications to process personnel actions
directly.

The Postal Service maintains that in the negotiation
of the first National Agreement in 1971, its negotiators
insisted that management have the unequivocal right to dismiss
an employee during the probationary period without having the
decision challenged through the grievance-arbitration procedure.
This was the *quid pro quo* for its agreement to shorten the
probationary period, which had been one year under the Postal
Manual, to 90 days.  The parties unambiguously agreed that a
certain class of disputes is not subject to the grievance-
arbitration procedure.  Only the parties, by mutual agreement,
may change that.

Over the years, the Postal Service asserts, the Unions
have unsuccessfully sought to amend Article 12.1.A to secure
probationary employees access to the grievance procedure.  They
cannot gain through arbitration what they could not gain through
negotiation.

The Postal Service states that the provisions of the
Postal Manual relating to probationary separations were in large
part continued in Section 365.32 of the ELM in 1978, despite the
negotiated language of Article 12, because they continue to
apply to non-bargaining unit employees.

The Postal Service insists that Article 12.1.A does not differentiate between substantive and procedural challenges to a probationary employee's separation -- both are precluded by the blanket prohibition contained in that provision. It asserts that the Fourth Circuit Court of Appeals recognized the Unions' argument for what it is -- a "back door" attempt to obtain access for probationary employees to the grievance-arbitration procedure. To allow probationary employees access to the grievance procedure to challenge alleged "procedural" violations of Section 365.32 of the ELM would open the flood gates to grievances alleging violation of that and other ELM provisions. Apart from eviscerating the Postal Service's bargain, permitting probationary employees to challenge the manner in which their separations were effectuated would render the language of Article 12.1.A meaningless. As the Fourth Circuit noted, the Unions' distinction between procedural and substantive challenges is a "false dichotomy", and substantive challenges to probationary employee separations can often be formulated as procedural ones.

The Postal Service maintains that the Unions' argument that ELM violations are grievable violations of the National Agreement because Article 19 incorporates the ELM into the Agreement is fundamentally flawed and blatantly ignores the plain meaning of Article 12.1.A. This argument was flatly rejected by the Fourth Circuit's decision. Under Article 19, ELM provisions cannot supersede the clear and unequivocal language of Article 12.1.A.

16                    Q98C-4Q-C 99251456

The Postal Service cites USPS v. APWU, 922 F 2d.256
(5th Cir. 1991), a case in which the Union grieved the separation
of a probationary employee on the ground that the Postal Service
separated the employee due to compensable work-related injury in
violation of the Federal Employees Compensation Act (FECA) and
postal regulations implementing FECA.  A regional arbitrator
found the grievance was arbitrable and that the Postal Service
violated Articles 19 and 21.  The Court of Appeals affirmed the
district court's ruling that the arbitrator exceeded his
authority under Article 15.4.A.6, because Article 12.1.A denies
probationary employees "any right to resort to grievance and
arbitration procedures".[1]

Arbitrator Zumas in his 1985 National Arbitration
decision likewise rejected a similar attempt by the Union to
challenge the separation of a probationary employee on the
grounds that it violated Articles 2 and 21.  As Arbitrator Zumas
declared:  "Article 12.1.A, in clear, unqualified, unrestricted,
and all-encompassing language, denies probationary employees
access to the grievance-arbitration process if they are
terminated for any reason during the probationary period."

Finally, the Postal Service explains that the reason
it does not dispute that notice of separation must be provided
to a probationary employee within a 90-day period is that

---

[1] The Postal Service  also cites APWU v. USPS, 940 F.2d 704 (D.C.
Cir. 1991).  Although the court in that case relied on Article
12.1.A to dismiss the Union's breach of contract claim, access
to the grievance-arbitration procedure was not an issue in that
case.

17                Q98C-4Q-C 99251456

Article 12.1.A defines the probationary period as 90 days.  That
is an enforceable contract provision, unlike the remaining
elements in Section 365.32 of the ELM cited by the Unions that
are superseded by Article 12.1.A.


## FINDINGS

The 2000 decision of the Court of Appeals for the
Fourth Circuit serves at the very least as a sharp reminder that
an arbitrator must focus first and foremost on the language of
the parties' agreement.  As explicitly stated in Article
15.5.A.6 of the National Agreement:

> All decisions of arbitrators shall be
> limited to the terms and provisions of this
> Agreement, and in no event may the terms and
> provisions of this Agreement be altered,
> amended, or modified by an arbitrator.

Article 12.1.A grants the Postal Service the
unqualified right "to separate from its employ any probationary
employee at any time during the probationary period" and
mandates that "these probationary employees shall not be
permitted access to the grievance procedure in relation
thereto".  Looking solely to the language of Article 12.A.1, I
have to agree with the finding of the Fourth Circuit that:

> This language is unqualified and admits of
> no exception.  The provision makes no
> distinction whatsoever between procedural
> attacks on separations and substantive

> challenges. The sweeping phrase "in
> relation thereto" brings any separation-
> related grievance by a probationary employee
> within the ambit of the prohibition.

The Unions, of course, are correct in asserting that there must have been a separation before the end of the employee's probationary period in order for Article 12.1.A to apply. Absent such a separation, the probationary employee becomes a permanent employee and can only be discharged or removed for just cause in accordance with Article 16. The discharge of a permanent employee, in contrast to the separation of a probationary employee, is subject to the grievance-arbitration procedure.

The Unions also are correct in pointing out that Article 12 does not define what constitutes a separation. That definition is provided, however, in Section 365.11 of the ELM which states:

> Separations are personnel actions that
> result in employees' being removed from the
> rolls of the Postal Service.

Section 365.32 then goes on to provide the procedures to be followed in involuntarily separating a probationary employee. I agree with the Unions that these provisions of the ELM, in effect, are incorporated in the National Agreement pursuant to Article 19. There is nothing in the National Agreement or the ELM to suggest that these provisions do not apply to bargaining unit probationary employees. These provisions are not in any

way inconsistent with Article 12.1.A.  By the same token,
however, these ELM provisions do not address or govern access to
the grievance-arbitration procedure.

The issue, in my view, is not whether the ELM
provisions the Unions rely on "conflict" with Article 12.1.A.
They do not.  The issue, however, is whether Article 12.1.A
nonetheless precludes a probationary employee and the Union from
grieving that the employee's separation did not comply in one or
more respects with those ELM provisions.  Or put a different
way, whether Article 12.1.A permits a probationary employee and
the Union to grieve that a separation action taken by the Postal
Service was not a "separation", for purposes of Article 12.1.A,
because the Postal Service did not comply in one or more
respects with the ELM provisions.

The 1985 National Arbitration decision by Arbitrator
Zumas is instructive in answering this question.  It holds, as
did the 1991 Fifth Circuit Court of Appeals decision, that a
probationary employee and the Union cannot resort to the
grievance procedure to challenge a separation on the grounds
that the separation violated some other valid provision of the
National Agreement.  Thus, even if Article 19 incorporates the
provisions of Section 365.32 of the ELM into the National
Agreement, and even if those provisions do not conflict with
Article 12.1.A, that does not provide a contractually valid
basis on which to disregard Article 12.1.A's broad prohibition
on access to the grievance procedure.

20            Q98C-4Q-C 99251456

Similarly, even accepting the Union's contention that
the parties negotiated Article 12.1.A in 1971 with the implicit
understanding that the separation procedures in the Post Office
Manual (later included in the ELM) would continue to apply to
the separation of probationary employees, it does not follow
that they intended to permit probationary employees to grieve
alleged violations of those procedures.  The broad sweep of the
language they agreed to, in my opinion, compels a finding that
the prohibition on access to the grievance procedure applies
equally to such procedural challenges.

Not permitting a probationary employee to grieve a
procedural defect in the processing of his or her separation is
fully consistent with the evident purpose of Article 12.1.A,
which is to permit the Postal Service to elect to separate a
probationary employee before that employee attains permanent
employee status without having to defend its action in the
grievance procedure.  The Unions have not established a
convincing contractual basis on which to conclude that,
notwithstanding the broad language in Article 12.1.A, the
parties agreed to permit procedural attacks on such separations
in the grievance procedure.

I recognize that, starting in the late 1970's, many
regional arbitrators have applied the ELM provisions and, when
they have found violations, have upheld grievances challenging
the separation of probationary employees.  Since Arbitrator
Zumas' 1985 National Arbitration decision, however, there have

been a number of regional decisions that have found such
grievances not to be arbitrable.

My review of the cases indicates that, like the
recently vacated Miles award, many of the regional decisions
that ruled in the Unions' favor on arbitrability did so on the
basis that, as Arbitrator Miles put it, the ELM provisions are
"every bit a part of the Agreement, pursuant to Article 19, as
is Article 12, Section 1". What is missing in these decisions
is a convincing analysis that gets around the prohibition on
access to the grievance procedure set forth in Article 12.1.A.
Even assuming that the National Agreement requires the Postal
Service to comply with the ELM provisions -- just as it requires
the Postal Service not to discriminate on the basis of handicap
(Article 2) and not to retaliate against employees for filing
workers compensation claims (Article 21) -- Article 12.1.A bars
access to the grievance procedure "in relation" to the
separation of a probationary employee.[2]

In all these cases, the individual on whose behalf the
Union has filed a grievance has been removed from the rolls,
that is, separated by an action taken by the Postal Service.
Otherwise, there would have been no reason to file a grievance.
The one issue that legitimately can be raised in a case where
the Postal Service claims that a grievance is barred by Article

---

[2] Arbitrator Zumas' 1985 National Arbitration decision held that
Article 12.1.A denies probationary employees access to the
grievance procedure to protest that their separations violated
Articles 2 and 21.

22                Q98C-4Q-C 99251456

12.1.A, is that the separation action did not occur during the
probationary period.[3]  The Postal Service acknowledges this, as
it must, because Article 12.1.A has no application if the
separation action does not occur during the probationary period.
That is a fundamentally different issue, however, from whether
or not the separation action complied with all the particular
requirements set forth in Section 365.32 of the ELM.  A
challenge to the validity of the procedures followed in
effecting a separation is barred by the broad prohibitory
language of Article 12.1.A.

        For the reasons set forth in this decision, I conclude
that Article 12.1.A denies a probationary employee access to the
grievance procedure to challenge his or her separation on the
grounds of alleged noncompliance with the procedures in Section
365.32 of the ELM.  A dispute as to whether or not the Postal
Service's action separating the employee occurred during his or
her probationary period is arbitrable because that is a
precondition to the applicability of Article 12.1.A.

---

[3] This was an issue in a significant number of the regional
arbitration cases involving Article 12.1.A.

23                    Q98C-4Q-C 99251456

## AWARD

The grievance is resolved on the following basis:

1. Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM.

2. A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.


Shyam Das, Arbitrator