UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE )<br><br>        Plaintiff/ )<br>        Counter-Defendant )<br><br>v. )<br><br>AMERICAN POSTAL WORKERS )<br>UNION, AFL-CIO )<br><br>        Defendant/ )<br>        Counter-Plaintiff )<br> )| Civil Case No. 1:06-CV-00793-RJL |

MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, plaintiff/counterclaim defendant, United States Postal Service ("USPS" or "Postal Service"),by its undersigned attorneys, hereby moves this Court for an order granting summary judgment in its favor. No genuine issue as to any material fact exists as to the claims being made by defendant/counterclaim plaintiff, the American Postal Workers Union ("APWU"),and the United States Postal Service is entitled to judgment as a matter of law.

In support of this motion, the Court is referred to the accompanying memorandum of points and authorities and to the accompanying statement of material facts as to which there is no genuine issue. A draft order reflecting the requested relief is

also attached.

                              Respectfully submitted,

                              JEFFREY A. TAYLOR, D.C. Bar #498610
                              United States Attorney

                              RUDOLPH CONTRERAS, D.C. Bar #434122
                              Assistant United States Attorney
                                         /s/
                              FRED E. HAYNES, D.C. Bar #165654
                              Assistant United States Attorney
                              555 4TH Ave., N.W., Room E-4110
                              Washington, D.C. 20530
                              (202) 514-7201

Of Counsel:

Larissa Omelchenko Taran
United States Postal Service
Washington, D.C.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE | ) |
| | ) |
| Plaintiff/ | ) |
| Counter-Defendant | ) |
| | ) |
| v. | ) Civil Case No. 1:06-CV-00793-RJL |
| | ) |
| AMERICAN POSTAL WORKERS | ) |
| UNION, AFL-CIO | ) |
| | ) |
| Defendant/ | ) |
| Counter-Plaintiff | ) |
| | ) |

MEMORANDUM OF THE UNITED STATES POSTAL SERVICE
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The United States Postal Service ("USPS" or "Postal
Service") has filed suit to vacate an arbitration award in which
(1) the arbitrator permitted a grievance challenging the
separation of a probationary employee and (2)ultimately
sustained the grievance on the basis that the separation was not
accomplished in accordance with certain procedures contained in
a postal handbook. The award contravenes clear and unambiguous
language in the collective bargaining agreement, language that
prohibits probationary employees from utilizing the grievance
and arbitration process to challenge their separations.
Moreover, the award is inconsistent with the binding precedent
of a national level arbitration award addressing the precise
issue that was before the arbitrator in this case.

Federal courts have consistently vacated postal arbitration awards, like the instant one, on the grounds that such awards contravene the language of the labor agreement. Indeed, the parties in this suit have previously litigated in the Fourth Circuit the very issue that is at stake in this case -- the enforceability of an arbitration award permitting probationary employees access to the grievance process to challenge their separations. *See USPS v. APWU,* 204 F.3d 523 (4th Cir. 2000). There, as here, the American Postal Workers Union ("APWU" or "Union") attempted to gain access to the grievance procedure by alleging that the Postal Service failed to follow certain procedures contained in the Postal Service's Employee and Labor Relations Manual ("ELM") in separating a probationary employee. The Fourth Circuit conclusively rejected the Union's argument, a decision that collaterally estops the APWU from seeking enforcement of the arbitration award in this case.

The District of Columbia and Fifth Circuits have also addressed the issue of a probationary employee's right to access the grievance procedures in the collective bargaining agreement. *See APWU v. USPS,* 940 F.2d 704 (D.C. Cir. 1991)(holding Article 12 denies probationary employees the right to challenge their dismissals on any basis, including a claim that the separations

2

violated the parties' contractual nondiscrimination and Federal

Employees' Compensation Act ("FECA") clauses); *see also USPS v.*

*APWU,* 922 F.2d 256 (5th Cir.)*cert.denied,* 502 U.S. 906

(1991)(vacating arbitration award in which arbitrator concluded

that a probationary employee's termination violated the parties'

contractual FECA clause, and holding that a probationary

employee is not permitted access to the grievance procedure in

relation to a termination within the probationary period).

This Court, too, has recently enforced the parties' clear

contractual language prohibiting a probationary employee access

to the grievance procedure by vacating, in part, a postal

arbitrator's decision to the extent it held arbitratable "any

aspect of the USPS's decision to terminate [the probationary

employee] as it relates to that termination. . . ."  *See USPS v.*

*APWU,* Civil Action No. 01-1704 (D.D.C., January 28,

2004),Exhibit F at p.16.

Following years of attempts by the Union to undo the

parties' bargain proscribing probationary employees from

accessing the grievance procedure, the issue was definitively

resolved in a binding national arbitration award.  The

arbitrator's decision in this case ignores the parties' clear

contractual language, the binding arbitration award concerning

3

that language, and it, therefore, does not draw its essence from the collective bargaining agreement.  Rather, the arbitrator applied his own brand of industrial justice and allowed a probationary employee's separation to be challenged in the grievance procedure, permitting precisely that which the parties' collective bargaining agreement unequivocally denies.

I.    STATEMENT OF FACTS

A. The National Agreement

The Postal Service has entered into successive collective bargaining agreements with the APWU, which serves as the exclusive bargaining representative for certain postal employees. Declaration of Anthony T. Waters (hereinafter "Waters Decl.") Exhibit A hereto, at ¶3.  The dispute that is the subject of this action arose under the collective bargaining agreement that was in effect between 1994 and 1998 ("National Agreement").  Exhibit A(Waters Decl.)at ¶4.  The National Agreement contains comprehensive grievance and arbitration procedures for the resolution of any "dispute, difference, disagreement or complaint between the parties related to wages, hours and conditions of employment."  Exhibit A (Waters Decl.) at ¶ 4. The procedures include multi-step grievance processes that culminate in final and binding arbitration.  *Id.*

4

Disputes over the interpretation of the National Agreement that have general nationwide application - national interpretative disputes - are arbitrated, if unresolved through the grievance process, in national arbitrations. *Id.* By contrast, unresolved disputes over the application of the labor agreement to particular individuals or circumstances are resolved in area arbitrations. *Id.* National arbitration awards provide definitive interpretations of the National Agreement and are binding on area arbitrators. *Id.* By contrast, area arbitration awards have no binding precedential value. *Id.* Article 15 of the National Agreement provides that arbitrators' decisions "shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended or modified by an arbitrator." Exhibit A ( Waters Decl.) at ¶ 7.

B.  <u>Contractual Language Proscribing Probationary</u>
    <u>Employees' Access to Grievance Procedure</u>

The contractual language governing probationary employees, Article 12.A.1, is as clear and unequivocal as contract language can be. Pursuant to Article 12, the first ninety days of employment constitute a probationary period during which the Postal Service has

> . . . the right to separate from its employ any
> probationary employee at any time during the

probationary period and these probationary employees
**shall not be permitted access to the grievance
procedure in relation thereto.**

Exhibit A (Waters Decl.)at ¶4 and Ex. 1 thereto(emphasis added.)

Therefore, while Article 15 of the collective bargaining

agreement generally allows the APWU to grieve the termination of

an employee who has successfully completed his or her

probationary period, Article 12.1.A specifically excludes from

the grievance and arbitration process any grievances related to

the separation of a probationary employee.

The probationary period is intended to be a trial period -

an extension of the selection process - designed to permit an

employer to determine if the initial decision to employ a person

was appropriate. *Id.* In addition to allowing the Postal

Service to thoroughly investigate criminal, military, and prior

employment records, it allows the Postal Service to evaluate an

employee's on-the-job performance prior to making a permanent

employment decision.

The purpose of Article 12.1.A is to allow the Postal

Service to make such evaluations, and if necessary, separate an

employee without becoming entangled in the complicated and time-

consuming procedures afforded to tenured employees by Article 15

(Grievance-Arbitration Procedure) and Article 16 (Discipline

Procedure) of the parties' collective bargaining agreement. *See APWU v. USPS*, 940 F.2d 707 (D.C. Cir. 1991)(the purpose of a probationary period, which is to permit an employer to evaluate a new employee on a trial basis and terminate him or her for whatever reason it chooses during the trial period of employment, would be undermined if probationary employees were allowed to enforce the just-cause requirement of Article 16).

Article 12.1.A has existed in its present form in the parties' collective bargaining agreement since the first agreement was negotiated in 1971. When the provision was first negotiated in 1971, the Union proposed a 30-day probationary period, whereas the Postal Service proposed a six-month probationary period. The Postal Service was adamant that its right to separate employees during their probationary periods be an unencumbered one. *Id.* Ultimately, the *quid pro quo* for a substantially shortened probationary period, as the Union wanted, was the employer's unencumbered right to separate such employees during their 90-day probationary periods. *Id.*

C. APWU'S Attempts to Obtain Access For Probationary Employees to the Grievance Procedure

7

By negotiating Article 12.1.A, the Union waived the right
for a probationary employee to grieve any matter related to
his/her separation.  As noted by the Fourth Circuit,if the Union
wished probationary employees to have access to the grievance
procedure to challenge a separation, they could have bargained
for such a right. *USPS v. APWU*, 204 F.3d at 523.  Despite the
clear prohibition, however, the Union has made numerous attempts
over the years to gain access for such employees. These attempts
may be categorized as either "substantive" or "procedural"
challenges to a probationary employee's separation.

The "substantive" category consists of grievances
challenging the separation of a probationary employee based on
an alleged violation of a provision in the collective bargaining
agreement. This avenue of challenge was effectively foreclosed
by several decisions, including the Fifth Circuit's decision in
*USPS v. APWU*, 922 F.2d 256 (5th Cir. 1991), which held that the
language of Article 12.1.A is "clear and unequivocal," and even
if a probationary employee alleges that his termination violates
Articles 19 (Handbooks and Manuals) and 21 (Benefit Plans),
Article 12 expressly denies probationary employees any right to
resort to the grievance and arbitration procedures.  *Id.* at 259;
*see also APWU v. USPS*, 755 F. Supp. 1076, 1077-78 (D.D.C.

8

1989)(although Article 2 expressly allows grievance and arbitration of disputes arising under that provision, probationary employees have no access to the grievance-arbitration procedure because Article 12 denies them such right.)The Union has also waged "procedural" attacks on the Article 12.1.A proscription, challenging probationary employees' separations based on alleged non-compliance with termination procedures contained in Section 365.32 of the ELM (Separation-Disqualification).[1] Among the "requirements" set out in ELM 365.32 is that an employee is to be notified "in writing why he or she is being terminated and the effective date of the termination." and the written notice must contain

---

[1] ELM 365.326 provides as follows:

    365.326  Procedures in Separating

    If an appointing official decides to terminate an employee who is serving a probationary period due to conditions arising prior to appointment, or because work performance or conduct during this period fails to demonstrate fitness or qualification for continued postal employment, the employee's services are terminated by notifying the employee in writing why he or she is being terminated and the effective date of the action. The information in the notice regarding the termination must, at a minimum, consist of the appointing official's conclusions as to the inadequacies of performance or conduct.

9

"the appointing official's conclusions as to the

inadequacies of performance or conduct,"

(365.326). If one or more of the procedural

"requirements" were not met, the Union has argued that

the separation was not effective, and the Postal

Service would instead have to follow the discharge

procedures applicable to permanent employees.

### D.    Miles Award and Fourth Circuit Decision

Applying the ELM provisions, a number of regional

arbitrators upheld grievances challenging the separation of

probationary employees.  One such award was issued by Arbitrator

Christopher E. Miles in Case No. K94C-4K-D 97080929, dated June

16, 1998. (Attached as Exhibit C.) In that case, the Union filed

a grievance on behalf of a probationary employee alleging that

the Postal Service failed to comply with ELM 365.32 in

separating the employee.  Specifically, the proper official did

not initiate the separation (ELM 365.325) and the separation

notice failed to include the requisite "conclusions as to the

inadequacies of performance or conduct" (ELM 365.326). *Id.* As

such, the Union argued that the separation was not effectuated,

and the employee became a permanent employee entitled to the

discharge procedures applicable to permanent employees,
including access to the grievance-arbitration procedure. *Id*. The
Postal Service maintained the matter was not grievable by virtue
of the language of Article 12.1.A, as the dispute related to the
separation of a probationary employee. Arbitrator Miles ruled
that the grievance was arbitratable, and concluded that the
termination of a probationary employee must be effectuated in
accordance with the ELM. *Id*. He reasoned that Article 19
incorporates the provisions of ELM 365.32 into the National
Agreement, and that a violation of ELM procedures was therefore
a violation of the National Agreement and subject to arbitration
under Article 15. *Id*.

　　The Postal Service filed an action seeking to vacate the
award. The District Court for the Eastern District of Virginia
did so, concluding that Arbitrator Miles exceeded his authority
under the parties' collective bargaining agreement. *USPS v.
APWU*, 46 F. Supp. 2d 457 (E.D. Va. 1999). By permitting the
grievance to be arbitrated, Arbitrator Miles altered the terms
of Article 12.1.A,  which specifically excludes such grievances
from the grievance process, and thereby violated the prohibition
contained in Article 15.5.A(6) against an arbitrator altering
the National Agreement. *Id*. The APWU appealed the decision

11

vacating the award.

The Fourth Circuit Court of Appeals affirmed, in a ruling squarely on point with regard to the instant case, holding that the "arbitrator's decision that procedural attacks on the separation of a probationary employee are arbitratable contravenes the unambiguous language of Article 12.1.A." 204 F.3d at 528. The court ruled compliance with ELM 365.32 to be "irrelevant to the grievability of this matter. All that counts is that the matter involves (1) a probationary employee and (2) a separation." Noting that in the underlying case it was undisputed that the supervisor "acted to separate [the probationary employee] within the 90-day period," and that the aforementioned two elements were present, the grievance is foreclosed by Article 12.1.A:

> This language is unqualified and admits of no exception. The provision makes no distinction whatsoever between procedural attacks on separations and substantive challenges. The sweeping phrase "in relation thereto" brings any separation-related grievance by a probationary employee within the ambit of the prohibition. In other words, so long as the matter involves probationary employees and the question of separation, no grievance may be brought. In fact, it is difficult to see how the parties could have been any clearer in prohibiting every kind of separation-related grievance by a probationary employee.

*Id.* at 528.

The Court also rejected the arbitrator's reasoning with regard to Article 19, pointing out that there is no language in the ELM or Article 19 that even suggests that ELM violations are grievable by probationary employees. *Id.* Even if there were, the language of Article 19 states that nothing in postal handbooks or manuals shall conflict with the National Agreement. *Id.* Therefore, the clear language of Article 12 must take precedence. The Fourth Circuit recognized the Union's argument as "a back door" attempt to circumvent Article 12.1.A and obtain access for probationary employees to the grievance arbitration procedure, and the Court concluded that the National Agreement "is not susceptible to such a strategy."

*Id.* at 529.

E.    The Das National Arbitration Award

Despite the Fourth Circuit's unambiguous rejection of its "strategy," the Union continued to pursue the ELM 365.32 procedural argument in an effort to circumvent the Article 12.1.A prohibition, and brought the issue to national level arbitration. On September 10, 2001, National Arbitrator Shyam Das issued a binding arbitration award resolving the interpretive issue of whether Article 12.1.A denies a

probationary employee access to the grievance procedure to
challenge his or her separation on the grounds of alleged
noncompliance with the ELM 365.23 procedures. Exh. A(Waters
Decl.)at ¶10, Ex. 4 thereto(Das Award). In his binding award,
Arbitrator Das concluded that Article 12.1.A. *does* bar such a
grievance. Das Award at 19. In accordance with the reasoning of
the Fourth Circuit, Arbitrator Das found the Article 12.1.A bar
to be absolute, applying to both procedural and substantive
challenges, and therefore, denying probationary employees access
to challenge separations on the grounds of alleged noncompliance
with ELM 363.32 procedures. Even if the ELM provisions apply to
the separation of probationary employees, "[t]he broad sweep of
the language . . . compels a finding that the prohibition on
access to the grievance procedure applies equally to such
procedural challenges." Exhibit A (Waters Decl.) at Exhibit 4 p.
20. Arbitrator Das further noted that prohibiting the Union or
probationary employee from challenging a separation based on
procedural grounds is wholly in accord with the "evident purpose
of Article 12.1.A., which is to permit the Postal Service to
elect to separate a probationary employee before that employee
attains permanent employee status without having to defend its
action in the grievance procedure." *Id.*

14

Rejecting the Union's Article 19 argument, Arbitrator Das concluded that even if the ELM provisions are incorporated into the National Agreement, "that does not provide a contractually valid basis on which to disregard Article 12.1.A's broad prohibition on access to the grievance procedure." *Id.* at p. 19, *citing USPS v. APWU*, 922 F.2d 256 (5th Cir. 1991). Noting that certain regional arbitrators have upheld grievances challenging the separation of probationary employees, Arbitrator Das stated:

> My review of the cases indicates that, like the recently vacated Miles Award, many of the regional decisions that ruled in the Union's favor on arbitrability did so on the basis that, as Arbitrator Miles put it, the ELM provisions are "every bit a part of the Agreement, pursuant to Article 19, as is Article 12, Section 1". What is missing in these decisions is a convincing analysis that gets around the prohibition on access to the grievance procedure set forth in Article 12.1.A. Even assuming that the National Agreement requires the Postal Service to comply with the ELM provisions - just as it requires the Postal Service not to discriminate on the basis of handicap (Article 2) and not to retaliate against employees for filing workers compensation claims (Article 21) -- Article 12.1.A bars access to the grievance procedure "in relation" to the separation of a probationary employee.

*Id.* at p.21.

Finally, Arbitrator Das stated that "the one issue that legitimately can be raised in a case where the Postal Service

15

claims that a grievance is barred by Article 12.1.A is that the separation action did not occur during the probationary period." *Id.* at p. 22. All other issues concerning the separation of a probationary employee are barred by Article 12.1.A.  Whether the separation action occurred within the probationary period

> . . . is a fundamentally different issue, however, from whether or not the separation action complied with all the particular requirements set forth in Section 365.32 of the ELM. A challenge to the validity of the procedures followed in effecting a separation is barred by the broad prohibitory language of Article 12.1.A.

*Id.*

As a national arbitration award, the Das Award provides the definitive interpretation of the language of Article 12.1.A, and is binding on area arbitrators such as the arbitrator in this case, Exhibit A(Waters Decl.)at ¶6; *see also* Exhibit D (attached), at p. 9 (APWU's Amended Opposition to No. 01-1704 (D.D.C., January 28, 2004)("The Das Award is a National-Level Award binding on both parties in other cases.  It has every bit as much preclusive force as any judicial decision involving these parties.").

F.   The Grievance In This Case

Lorraine L. Daliessio ("grievant") was a probationary employee, hired on November 22, 1997, as a part-time flexible

16

mark-up clerk in the Computer Forwarding Unit at the Philadelphia, PA Post Office. Exhibit B, Declaration of Vivian T. Barnett ("Barnett Decl.") at ¶4. As is true of all postal bargaining unit employees, grievant was required to serve a 90-day probationary period, which would have ended on February 19, 1998. *Id.* During grievant's 30-day evaluation, held on December 30, 1997, grievant's supervisor, Vivian T. Barnett, informed grievant that her performance in two key areas, work quantity and work quality, had been rated as "unacceptable." *Id.* at ¶5. As part of the evaluation process, the supervisor completed a PS Form 1750, Employee Evaluation and/or Probationary Report, and grievant initialed the form to indicate an evaluation discussion had taken place. *Id.* at ¶5 and Exhibit A(Waters. Decl.)at Exhibit 5, p. 16.

Approximately two weeks later, on or about January 15, 1998, Supervisor Barnett informed grievant that her work performance had not improved,and that if it did not improve within two weeks, she would likely be terminated. *Id.* at ¶6. Unfortunately, grievant's performance did not improve, and on January 30, 1998, Supervisor Barnett spoke with Herman T. Cockrell, Manager, Computer Forwarding, and they agreed that grievant's work performance was not meeting the level required

17

for retention, and that her employment with the Postal Service would be terminated. *Id.*

Supervisor Barnett called the grievant into her office towards the end of the shift which began at 4:30 pm, January 30, 1998, and ended at 1:00 am, January 31, 1998 (the 70th day of grievant's probationary period). *Id.* at ¶7. She informed grievant that her second evaluation was completed, and that the problematic work deficiencies had not improved and continued to be rated as "unacceptable." *Id.* Supervisor Barnett told grievant that she did not meet the criteria for remaining in her position and that her employment with the Postal Service was being terminated, effective immediately.*Id.* Grievant was offered the option of resigning, rather than being terminated, but she refused to resign. Exhibit A at Exhibit 8. Supervisor Barnett then showed grievant a copy of the completed Form 1750, including that she had marked "No" in response to the question "Would You Recommend This Person For Retention or Rehire?", but grievant refused to initial the form to indicate the discussion had taken place. *Id.*at ¶7; Exhibit A(Waters Decl.)at Exhibit 5, p. 16. At the conclusion of the evaluation, Supervisor Barnett directed grievant to clean out her locker and turn over her locker key, and then walked grievant to the exit door, where

18

grievant surrendered her access badge and left the building. Grievant did not report for work again after being terminated during her shift beginning on January 30, 1998 Exhibit A(Waters Decl.)at Exhibit 8, p. 24.

In accordance with office protocol, Supervisor Barnett sent a letter, dated February 4, 1998, to the appropriate labor relations official "requesting an action be initiated to remove [grievant] *** from the rolls of the United States Postal Service effective January 30, 1998." Exhibit A (Waters Decl.)at Exhibit 5, p. 17. A labor relations representative prepared the letter, which was dated February 20,1998, and the letter was signed by Supervisor Barnett and sent by labor relations to grievant, via certified mail, stating "[t]his will confirm your separation from the Postal Service as a result of lack of proficiency." *Id.* at ¶10; Exhibit A,( Waters Decl.)at Exhibit 5, pp. 9 and 10.  Following two failed delivery attempts (resulting from grievant's failure to claim the letter), an identical first class letter was delivered to grievant's address of record on March 21, 1998.*Id.*

Soon after, the Union initiated a procedural challenge of grievant's separation. *Id.* at ¶11; Exhibit A(Waters Decl.) at Exhibit 5, p.6. On March 30,1998,(at Step 1 of the parties'

19

grievance procedure) grievant and an APWU representative met with Supervisor Barnett. *Id*. The Union alleged grievant's separation was procedurally deficient in that it did not comport with the requirements of ELM procedures related to termination, as well as training and evaluation. *Id*. Unable to convince the supervisor to rescind the termination, on March 31, 1998, the APWU appealed the matter to Step 2. Exhibit A(Waters Decl.) at Exhibit 5, p. 6. Significantly, in the "Detailed Statement of Facts/Contentions of the Grievant," the Union stated: "[o]n 1/31/98, [Grievant] *** was verbally informed by [her supervisor] *** that she was to clean out her locker and that *she was being terminated*." (Emphasis added.).

The parties met again on April 15, 1998, at which time the Union further clarified that the basis for its challenge was procedural. On the Union's Step 2 Grievance Hearing Report, the violation is categorized as "Improper Procedure/Termination," and the Union's position is stated as, *inter alia*,

> 2.    According to the records, the [Grievant] was terminated without any official letter from personnel

> 3.    The Union sited (sic) ELM Section 365.323, concerning Separation-Disqualification

> 4.  ELM Section 365.325 supervisor recommend separation but the decision is made by the official having authority.

*Id.* at p. 7.

By letter dated April 16, 1998, the Postal Service's Step 2 representative, denied the grievance, explaining that pursuant to Article 12.1.A, the Postal Service has the right to separate a probationary employee at any time during the probationary period, and such employee "shall not be permitted access to the grievance procedure in relation thereto." *Id.* at pp. 4-5.

The Union appealed the grievance to Step 3 on April 23, 1998, seeking "that the termination action initiated against [Grievant] be rescinded. . . " *Id.* at p. 2. On page 2 of the appeal form, the Union again lists the bases for its challenge -- citing the ELM 365 termination procedures and that Grievant "was terminated without an official letter from personnel." *Id.* at p. 3. The grievance was denied and appealed to arbitration by the Union on September 14, 1998. *Id.* at p. 1.

G.  The Loeb Award

The grievance in this case was heard by Arbitrator Loeb on November 2, 2005, with a decision issued on January 28, 2006.

21

Exhibit A(Waters Decl.)at Exhibit 7.  The issue before the
arbitrator was whether the Union had the right to challenge a
probationary employee's separation on the grounds that she was
not terminated in accordance with the ELM 365 procedures.  *Id.*
The Union argued that in order for the termination to be
effective, the Postal Service must terminate the employee in
accordance with those procedures, which are incorporated into
the National Agreement by virtue of Article 19.  *Id.* at p. 5.
Among the requirements set out in ELM 365.326 is that the
employee must receive a written termination letter, signed by
the appropriate official and setting out reasons for the
termination, prior to the expiration of the probationary period.
Because grievant did not receive such a letter until after the
expiration of the 90-day probationary period, the Union argued
that the termination was ineffectual and that she had become a
tenured employee. *Id.* at p.6.

The Postal Service's position at the hearing was
straightforward and consistent with the binding Das Award. There
was no dispute at the hearing that the grievant was verbally
terminated within her probationary period, nor was there any
dispute that the Union's challenge was a procedural one, which
turned entirely on compliance with the ELM provisions. *Id.*

Sustaining the grievance, Arbitrator Loeb concluded the Postal Service failed to terminate Grievant "as the term is understood in Article 12 within her probationary period." *Id.* at p. 17. Arbitrator Loeb's analysis began with his seemingly accurate reiteration of the history and decisions concerning the probationary issue. *Id.* at pp 8-12,17. However, when he began to address the issue before him, he relied on the dissent in the Fourth Circuit decision. *Id.* at p.13-17. According to Arbitrator Loeb, in order to terminate the grievant effectively, the Postal Service must have complied with the procedural conditions of ELM 365:

> The ELM radically altered that scheme by requiring
> that if Management intends to terminate a
> probationary employee, the separation must be
> "effected during the probationary period ***." The
> ELM further provides the manner in which the
> separation must occur. The Grievant, under the
> reasoning of both Arbitrator Das and the Fourth
> Circuit Court of Appeals had the right [to] access
> the grievance procedure to challenge whether she
> was terminated during the employee's probationary
> period. Having declared that separation must take
>
> place during the probationary period and having set
> the conditions by which it must terminate the
> employee, the Employer cannot prohibit the Grievant
> from accessing the grievance procedure on the basis
> of Article 12 to allege she was not terminated
> during her probation.

*Id.* at p. 16 (emphasis added.). Relying on Judge King's dissent

23

from the Fourth Circuit decision, Arbitrator Loeb explained his reasoning in allowing the grievance. Specifically, Article 19 incorporates various handbooks and manuals into the parties' collective bargaining agreement, and because Article 12 is silent with regard to the method by which a probationary employee is to be terminated, the ELM provisions "merely fill the void by describing the process that Management must follow when it terminates a probationary employee." *Id*. at p. 16.

The Postal Service filed suit to vacate the Loeb Award on June 5, 2006, and the Union subsequently cross-claimed for enforcement of the Award.

II. ARGUMENT

A. THE LOEB AWARD SHOULD BE VACATED BECAUSE THE ARBITRATOR EXCEEDED THE SCOPE OF HIS AUTHORITY AND VIOLATED THE PARTIES' AGREEMENT.

1. Although Judicial Review of Arbitration Awards is Limited, Courts Vacate Awards Where the Arbitrator Has Exceeded His Authority.

As a matter of public policy, arbitration is the favored means of resolving labor disputes. *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574 (1960). Accordingly, an arbitration award should be sustained if it "draws its essence" from the collective bargaining agreement. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S.

24

593, 597 (1960). In applying this standard, the Supreme Court has cautioned courts to defer to the arbitrator's decision so long as the "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority . . . ." *United States Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

However, despite the judicial preference for deferring to arbitrators, courts will set aside arbitration awards where the arbitrator has rendered his decision based on his own notions of right and wrong, rather than the parties' collective bargaining agreement. In *Enterprise Wheel*, the Supreme Court held that,

> An arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice . . . . His award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

363 U.S. at 597.

The D.C. Circuit has similarly recognized that an arbitrator's award should be vacated where the arbitrator exceeds his authority under the collective bargaining agreement. *See J.P. Greathouse Steel Erectors, Inc. v. Blount Brothers*

*Construction Co.*, 374 F.2d 324 (D.C. Cir. 1967)(vacating arbitration award because arbitrator decided questions of law which he had no authority to decide); *see also Communications Workers of America v. American Telegraph & Telephone Co.*, 903 F. Supp 3 (D.D.C. 1995)(stating that "it is within the Court's power to vacate those portions of an arbitrator's award which exceed his authority").

Significantly, this Court has recently vacated the portion of a postal arbitration award that permitted an APWU grievance to challenge the termination of a probationary employee on the basis that the separation violated the safety and health provision of the parties' collective bargaining agreement. *See USPS v. APWU*, Civil Action No. 01-1704 (D.D.C, January 28, 2004), Exhibit F hereto. In a memorandum opinion, the Court concluded that the arbitrator exceeded his authority in finding the impact of a collective bargaining agreement violation on a terminated probationary employee to be arbitratable. *Id.*

It is clear that Arbitrator Loeb exceeded the scope of his authority in this case.  Article 15.5.A.6. of the National Agreement expressly limits the arbitrator's role by providing that "in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator." Exh. A

(Waters Decl.)at Exhibit 2.  The language of Article 12.1.A. is as clear and unequivocal as contract language can be.  It expressly states that the Postal Service "shall have the right to separate from its employ any probationary employee at any time during the probationary period." *Id.* Exh. A (Waters Decl.) at Exhibit 1.  Moreover, the language of the National Agreement continues that "these probationary employees shall not be permitted access to the grievance procedure in relation thereto." *Id.*

The functional purpose of Article 12.1.A. is also clear. It allows the Postal Service to evaluate an employee's on-the-job performance prior to making a tenured employment decision and, if necessary, to separate a probationary employee without becoming entangled in the complicated and time-consuming procedures afforded to career employees who have been terminated under Articles 15 or 16. However, notwithstanding that Article 12.1.A. expressly prohibits probationary employees from utilizing the grievance and arbitration procedures to challenge their separations, Arbitrator Loeb permitted a probationary employee to do just that.

This ruling, which grants probationary employees a right expressly denied to them by the National Agreement, alters

Article 12, creating an exception for which the parties did not bargain. In ruling as he did, Arbitrator Loeb exercised discretion that he did not have to change Article 12, thereby usurping the parties' right to define the terms of their agreement. The Loeb Award did not comport with the essence of the National Agreement's proscribed limits; indeed, it undermined the clear purpose of Article 12 by compelling the Postal Service to submit to arbitration a matter that the parties had agreed would not be arbitratable. Arbitrator Loeb ignored the unambiguous language of Article 12 and effectively fashioned an award "based on his own brand of industrial justice." *Cf. Enterprise Wheel*, 363 U.S. at 597.

There is no dispute that Ms. Daliessio was verbally terminated within her probationary period, during her shift beginning on January 30, 1998. The Union admitted this fact throughout the grievance papers and they did not challenge this fact at the arbitration hearing. Exhibit A (Waters Decl.)at Exhibit 5, pp. 1-8. In addition, the grievant herself admitted that she was terminated on that day, in her written EEO Complaint and throughout various submissions concerning her EEO complaint, and also by virtue of the fact that she did not come back to work after her January 30, 1998, shift. Exhibit A

28

(Waters Decl.)at Exhibit 8. The Union's grievance was nothing more than a procedural challenge as to how that termination was accomplished, and in addressing that issue, Arbitrator Loeb changed the contract to establish a requirement that the termination must have been received, in writing, in order to be effective.

In his precedential award, Arbitrator Das conclusively ruled that Article 12 does not permit such challenges. Exhibit A (Waters Decl.)at Exhibit 4.  By allowing the grievance to go forward, Arbitrator Loeb has effectively nullified Arbitrator Das' binding ruling concerning the parties' contractual language, and has written into the parties' contract a requirement that does not exist. Arbitrator Loeb quoted heavily from the Das Award; however, he misconstrued and altered the parties' contract, as interpreted by Arbitrator Das' binding award. Arbitrator Das very clearly held that Article 12.1.A <u>does not</u> permit a probationary employee and the Union to grieve that a separation action taken by the Postal Service was not a "separation", for purposes of Article 12.1.A, because the Postal Service did not comply in one or more respects with the ELM provisions.  This is precisely what Arbitrator Loeb allowed in this case.

29

Arbitrator Loeb focused on Arbitrator Das' conclusion that "one issue that legitimately can be raised in a case where the Postal Service claims a grievance is barred by Article 12.1.A is that the separation action did not occur during the probationary period." *Id.* at pp. 21-23.  Based on that, Arbitrator Loeb characterized the grievance before him as involving "not the process the Service employed when it terminated the Grievant, but whether she was discharged during her probationary period." Exhibit A (Waters Decl.) at Exhibit 7, p. 15.  However, Arbitrator Loeb improperly looked to the "process the Postal Service employed" when it terminated Ms. Daliessio in order to determine whether her separation was effectuated during the probationary period. Specifically, Arbitrator Loeb turned back to the procedural ELM requirements in order to make a determination as to whether the grievant had been terminated within the 90-day probationary period.

Such reasoning flies in the face of the parties' contract language, as interpreted by the binding Das award. Arbitrator Das explained that whether the separation occurred during the probationary period "is a fundamentally different issue, however, from whether or not the separation action complied with all the particular requirements set forth in section 365.32 of

the ELM," and "a challenge to the validity of the procedures followed in effecting a separation is barred by the broad prohibitory language of Article 12.1.A." Exhibit A (Waters Decl.)at Exhibit 4, p. 23.

Arbitrator Loeb's decision is predicated on the improper theory that a probationary employee's separation is ineffectual and can be challenged in the grievance and arbitration process when the Postal Service fails to undertake the separation in accordance with the ELM provisions.  Relying on those alleged failures to comply with ELM provisions, Arbitrator Loeb concluded that the Grievant had not been properly separated as a probationary employee and therefore she had all the contractual rights of a non-probationary employee. Significantly, according to Arbitrator Loeb, if the ELM requirements did not apply, there would have been no problem with the manner in which Ms. Daliessio was separated:

> Had the Service not drafted Sections 365.323 and 326 of the ELM, it would not have mattered when the Employer sent the letter out or when the Grievant received it as Article 12, Section 1.A. only states that if the Service intends to terminate a probationary employee it must do so during his probationary period.

Exhibit A (Waters Decl.)at Exhibit 7, at p. 13.  The contractual language of Article 12.1.A does not contain a requirement that a

31

termination be in writing.    The undisputed evidence demonstrates

that the Postal Service separated Ms. Daliessio prior to

February 19, the end of the 90-day probationary period.    There

is no dispute that on or about January 30, Ms. Daliessio

received an unsatisfactory evaluation, that her supervisor told

her at that time that she was being terminated immediately, and

that Ms. Daliessio in fact ceased working for the Postal Service

on that day.    Exhibit A (Waters Decl.)at ¶ 16 (Barnett Decl.)at

¶ 7. However, Arbitrator Loeb found that the separation actions

on January 30 were insufficient only because the ELM provisions

were not satisfied: the grievant did not receive written notice

of her termination within her probationary period.

       In reaching this conclusion, Arbitrator Loeb ran roughshod

over the National Agreement. He ignored the fact that Article

12.1.A. does not contain a written notice requirement and that

it gives the employer the discretion to act within the

probationary period unencumbered by the requirements of

grievance and arbitration procedures. In short, Arbitrator

Loeb's award disregards the contours of the parties' bargain

expressed by Article 12.1.A.

       As the D.C. Circuit has stated, "the purpose of a

probationary period [is] to permit an employer to evaluate a new

employee on a trial basis and terminate him for whatever reason it chooses during the trial period of employment." 940 F.2d at 707. To permit the APWU to arbitrate such procedural issues would limit the usefulness of Article 12. Effectively, the Postal Service would be unable to terminate probationary employees without attending to the cumbersome requirements in place to protect permanent employees. The APWU agreed to Article 12; Arbitrator Loeb should not be able to destroy this contract provision through his own brand of industrial justice.

   2. Courts Have Uniformly Vacated Arbitration Awards Which
      Have Permitted Probationary Employees to Challenge
      Their Separations.

   Courts have consistently recognized that Postal Service probationary employees have no access to the grievance-arbitration process to challenge their separations and have vacated arbitration awards that hold to the contrary. In *USPS v APWU*, 204 F.2nd 523 (4th Cir. 2000) the Fourth Circuit Court affirmed the vacating of an arbitration award involving the same issue as in this case. In that case, the APWU filed a grievance over the separation of a probationary employee claiming, *inter alia*, that the separation during the probationary period was not "effective" because the Postal Service had not complied with procedures set out in the ELM. 204 F.3d at 526. The Postal

33

Service argued the same position it takes in this case -- that
the matter was not grievable by virtue of Article 12.  *Id*.
Adopting the Union's argument, Arbitrator Christopher Miles
found that the Postal Service must comply with the ELM
provisions in order to effectuate a separation, and that the
Postal Service's alleged failure to comply with those procedures
was arbitrable.  *Id*.  The District Court for the Eastern
District of Virginia vacated the Miles award on the grounds that
the award

was directly contrary to the language of the parties' collective
bargaining agreement.  *USPS v. APWU*, 46 F.Supp.2d 457, 461-62
(E.D.Va. 1999).  In affirming the District Court's decision, the
Fourth Circuit found that the Miles award violated the clear and
unequivocal language of Article 12.1.A by permitting the Union
to challenge the separation of a probationary employee on
procedural grounds:

> The language [of Article 12.1.A] is unqualified and
> admits of no exception. The provision makes no
> distinction whatsoever between procedural attacks on
> separations and substantive challenges. The sweeping
> phrase "in relation thereto" brings any separation-
> related grievance by a probationary employee within
> the ambit of the prohibition.  In other words, so
> long as the matter involves probationary employees
> and the question of separation, no grievance may be
> brought.  In fact, it is difficult to see how the
> parties could have been clearer in prohibiting every
> kind of separation-related grievance by a
> probationary employee.

204 F.3d at 527.

In addition, the Fourth Circuit observed that the award undermined the purpose of Article 12 which is to permit the Postal Service to separate probationary employees without having to defend its action in the grievance and arbitration process:

> To allow any kind of separation-related grievance by a probationary employee would thus move in the direction of forcing the Postal Service to treat probationary employees the same as permanent employees. But it is the very purpose of Article 12.1.A to establish a clear distinction between probationary and permanent employees and afford them different protections. Any blurring of this distinction thus thwarts the purpose of the National Agreement.

*Id.* at 530. *See also United States Postal Service v. American Postal Workers Union*, 922 F.2d 256, 259-60 (5th Cir.), *cert. denied*, 502 U.S. 906 (1991) (affirming a district court order vacating an arbitration award directing the reinstatement of a probationary employee on the grounds that the arbitrator exceeded his authority because "Article 12 does not permit the arbitrator ever to reach the question of arbitrability when the dismissal at issue involves probationary employees"); *APWU v. USPS*, 940 F.2d 704 (D.C. Cir.1991) (court finds that in light of the language and purpose of Article 12, Postal Service can dismiss any probationary employee within 90 days without

breaching the collective bargaining agreement); *Van Leeuwen v.
USPS*, 628 F.2d 1093, 1097 (8th Cir. 1980)(finding that
probationary employees have "no contractual right to continued
employment, [and their] discharge cannot be considered a breach
of the collective bargaining agreement").

    This Court recently vacated that part of an arbitration
award that held arbitrable a grievance challenging the
separation of a probationary employee on the basis that the
employee's separation violated the parties' contractual safety
and health provision.  *See USPS v. APWU*, Civil Action No. 01-
1704 (D.D.C., January 28, 2004), attached as Exhibit F.  The
Court found Article 12.1.A to be clear that a "probationary
employee has no access to the grievance procedure during the
probationary period" and "to find that the impact of a CBA
violation on a terminated probationary employee to be
arbitrable is a determination that does not find its essence
in the CBA and consequently is one that exceeds the arbitrator's
authority."  *Id.* memorandum opinion at p. 13.

    Moreover, the binding national arbitration award recently
issued by National Arbitrator Shyam Das (Exhibit 4 to Exhibit A
(Waters Decl.) confirms the Fourth Circuit's decision regarding
the scope of Article 12.1.A. Relying on both the language and

36

the purpose of Article 12.1.A, Arbitrator Das held that Article
12.1.A. prohibits the Union from challenging a probationary
employee's separation based on alleged procedural defects in the
way that a separation was effected:

> The broad sweep of the language they agreed to, in my
> opinion, compels a finding that the prohibition on
> access to the grievance procedure applies equally to
> such procedural challenges.
>
> Not permitting a probationary employee to grieve a
> procedural defect in the processing of his or her
> separation is fully consistent with the evident
> purpose of Article 12.1.A, which is to permit the
> Postal Service to elect to separate a probationary
> employee before that employee attains permanent
> employee status without having to defend its action
> in the grievance procedure.

*Id.* at 20. As a national arbitration award, the Das Award
provides the definitive interpretation of the language of
Article 12.1.A., and is binding on area arbitrators such
as Arbitrator Loeb.

The Union's challenge to Ms. Daliessio's separation is
simply another episode in its long-running effort to find a way
around the bargain it struck when it agreed to Article 12.1.A.
in collective bargaining.  However, the APWU cannot use the
arbitration process to avoid its contractual obligations.  As
the Fourth Circuit wrote, "[I]f the parties unambiguously agree
that a certain class of disputes is not subject to the grievance

37

procedure, then no court or arbitrator may reach the opposite
conclusion." 204 F.3d at 530.

B. THE APWU IS COLLATERALLY ESTOPPED FROM ARGUING THAT THE LOEB
AWARD SHOULD BE ENFORCED.

The Fourth Circuit decision in *USPS v. APWU*, 204 F.3d 523

(2000)(as well as the Das Award) collaterally estops the APWU in

this matter. If issues of law or fact were conclusively

determined in a prior action, collateral estoppel, or issue

preclusion, applies to preclude relitigation of those issues.

*National Post Office Mail Handlers v. American Postal Workers*

*Union*, 907 F.2d 190, 192 (D.C. Cir. 1990), *cert. denied*, 498

U.S. 820 (1990)(precluding relitigation of issue where Ninth

Circuit's decision was a final disposition on the merits,

involving the same parties and interpreting the same collective

bargaining agreement, and noting that because the legal issue

was the same, it did not matter that "the particular facts of

the underlying *** disputes differ . . . .") A party may be

collaterally estopped by administrative as well as judicial

determinations. *See Paramount Transport Systems v. Chauffeurs,*

*Teamsters and Helpers*, 436 F.2d 1064 (9th Cir. 1971).

A party asserting collateral estoppel must demonstrate that

38

(1) the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case, (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination. *Hall v. Clinton,* 285 F.3d 74, 82 n. 9 (D.C. Cir. 2002) (quoting *Yamaha Corp. of Am. v. United States,* 961 F.2d 245, 254 (D.C. Cir. 1992)), *cert. denied,* 507 U.S. 980 (1993)). This case satisfies all three requirements.

First, the Fourth Circuit (and Arbitrator Das) had before it the identical issue: whether pursuant to Article 12.1.A of the parties' collective bargaining agreement the separation of a probationary employee is arbitratable where the Postal Service has allegedly failed to comply with certain procedures in separating the individual. Second, the Fourth Circuit conclusively and unequivocally determined this issue in the prior decision, rejecting the APWU's argument. This determination was critical and necessary to the Fourth Circuit's final and valid decision; indeed it disposed of the matter. Third, the Union had every incentive to -- and did -- litigate the issue before the Fourth Circuit (as well as before

39

Arbitrator Das, after the Fourth Circuit decision issued) so
that there is no unfairness in holding the Union to the result
reached there.

Any attempt to avoid the application of the estoppel
doctrine by arguing that the issue in the instant case is
different from the issue at stake in the Fourth Circuit
litigation should be rejected. In the brief filed by the Union
in support if its summary judgment motion in *USPS v. APWU,* Civil
Action No. 01-1704 (D.D.C., January 28, 2000),Exhibit E hereto,
the APWU addressed the Postal Service's Fourth Circuit
collateral estoppel argument as it applied in that case.  *See*
Exhibit E.  The APWU maintained that collateral estoppel was not
appropriate with regard to its action to enforce the underlying
award there because the issue before the arbitrator was not one
which addressed whether the Postal Service "had violated its own
contractually enforceable provisions for discharging
probationary employee." *See* Exhibit E at p. 14.  The APWU
characterized the Fourth Circuit's ruling:

> The Fourth Circuit ruled that because notice of the
> termination occurred before the probationary period
> was over, the employee was barred under Article 12
> from challenging the termination in the grievance
> and arbitration procedure and that the APWU could
> not rely on a procedural technicality to establish

that the probationary employee's termination was
defective under the National Agreement.

*See* Exhibit E at p.15. In a further attempt to distinguish that
case from the Fourth Circuit decision, the Union stated the case
underlying the "Fourth Circuit case, like the Das award,
involved a grievance that was directly related to the procedure
of the firing and could not have existed independent of the
probationary employee's firing." *See* Exhibit E at p. 5.

By the Union's own characterization, the Fourth Circuit
case is directly on point.  The Union's entire and only argument
has to do with the procedural deficiencies of the probationary
employee's separation, and could not have existed independent of
the probationary employee's separation. There is no dispute that
the employee was verbally terminated before her probationary
period ended.  The contract language of Article 12.1.A does not
contain a requirement that the termination be accomplished in
writing -- this may only be found in the ELM provisions.
Therefore, the only issue was whether the termination was
accomplished in accordance with the ELM provisions.  The door
was closed on such grievances by the Fourth Circuit decision,
and by Arbitrator Das' Award, each of which conclusively
determined that procedural attacks on the separation of a

probationary employee are not arbitratable and awards which

permit such challenges contravene the unambiguous language of

Article 12.1.A. 204 F.3d at 528; Exhibit A(Waters Decl.)at

Exhibit 4 (Das Award), at pp. 22-23.

III. CONCLUSION

For the foregoing reasons, the United States Postal

Service's Motion for Summary Judgment should be granted and the

Union's Motion for Summary Judgment should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar #498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar #434122
Assistant United States Attorney
/s/
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 4TH Ave., N.W., E- 4110
Washington, D.C. 20030
(202)514-7201

Of Counsel:

Larissa Omelchenko Taran
United States Postal Service
Washington, D.C.

42

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES POSTAL SERVICE )
                              )
        Plaintiff/            )
        Counter-Defendant     )
                              )
v.                            )  Civil Case No. 1:06-CV-00793-RJL
                              )
AMERICAN POSTAL WORKERS       )
UNION, AFL-CO                 )
                              )
        Defendant/            )
        Counter-Plaintiff     )
_____)

UNITED STATES POSTAL SERVICE'S STATEMENT OF MATERIAL
FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

In support of its Motion for Summary Judgment, the United
States Postal Service ("USPS" or "Postal Service") sets forth
the following statement of material facts as to which there is
no genuine issue, in accordance with Local Rule 7(h):

1.    The Postal Service has a long-standing collective
bargaining relationship with the American Postal Workers Union,
AFL-CIO ("APWU" or "Union"), one of several unions representing
Postal Service employees.  Declaration of Anthony Waters
("Waters Declaration") Exhibit A at ¶3.

2.    The dispute that is the subject of this action arose
under the collective bargaining agreement between the Postal
Service and the APWU that was in effect between 1994 and 1998

("National Agreement").  *Id.* at ¶4.

3.  All postal bargaining unit employees are required to serve a 90-day probationary period. Article 12.1 of the National Agreement sets out certain of the terms and conditions of employment applicable to probationary employees, and states, in pertinent part:

> The probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.

*Id.* at ¶4 and Exhibit 1 thereto(Article 12.1.A).

4.  Article 15 of the National Agreement sets out the grievance and arbitration procedures agreed to by the parties to resolve disputes over the interpretation and application of the National Agreement, including disputes involving the termination of non-probationary employees.  Different parts of the dispute resolution procedures are utilized depending upon whether the grievance involves a dispute over the application of the labor agreement to particular individuals or circumstances, or a dispute over the interpretation of the labor agreement that has general nationwide application.  If either type of dispute remains unresolved through the grievance process, it may then be

2

referred to either national or area arbitration, depending on the type of dispute.  *Id.* at ¶5 and Exhibit 2 thereto.

5.    National arbitration awards – those involving national interpretative issues – provide definitive interpretations of the language of the National Agreement.  These national arbitration awards provide controlling precedent, and they are binding on the parties and on area arbitrations in disputes over the application of the National Agreement to particular circumstances and individuals. *Id.* at ¶6.

6.    Article 15.5.A.6 provides, in pertinent part, as follows:

> All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator.

*Id.* at ¶6 and Exhibit 2.

7.    On September 10, 2001, National Arbitrator Shyam Das issued an award ("Das Award") in a national interpretative dispute where the parties disagreed as to whether Article 12.1.A. barred the Union from utilizing the grievance and arbitration process to challenge the separation of a probationary employee on the grounds that the Postal Service had not complied with the procedures contained in ELM 365.32.  *Id.* at ¶10 and Exhibit 4 thereto A.

3

9.    Based on the language and purpose of Article 12.1.A., Arbitrator Das denied the Union's grievance. In his award, Arbitrator Das stated, in pertinent part:

> Article 12.1.A. denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM.

Id. at ¶11 and Exhibit 4 at p. 9. Arbitrator Das further stated:

> Not permitting a probationary employee to grieve a procedural defect in the processing of his or her separation is fully consistent with the evident purpose of Article 12.1.A, which is to permit the Postal Service to elect to separate a probationary employee before that employee attains permanent employee status without having to defend its action in the grievance procedure.

Id. at ¶11 and Exhibit 4 at p. 20.

10.    The APWU filed a grievance challenging the separation of a probationary employee, Lorraine G. Daliessio, alleging that her termination was invalid because it did not comply with procedures contained in Section 365.32 of the ELM.    Id. at ¶3 and Exhibit 4.

11.    Ms. Daliessio had been hired on November 22, 1997, and her 90-day probationary period ran until February 19, 1998. Id. at ¶ 3.

12.    Ms. Daliessio was informed by her supervisor on or

4

about January 15, 1998, that her performance in two key areas, work quality and work quantity, was unsatisfactory, and she was given two weeks to improve such performance. *See* Declaration of Vivian T. Barnett ("Barnett Decl."),Exhibit B, at ¶5 and ¶6.

13. During her shift which began on January 30, 1998, Ms. Daliessio's supervisor informed Ms. Daliessio that her performance had not improved, and she was verbally terminated. *Id.* at ¶7 and 8.

14. Ms. Daliessio was offered the option of resigning, but she declined to do so. *Id.* at ¶7.

15. Immediately after verbally terminating Ms. Daliessio, the supervisor directed Ms. Daliessio to clean out her locker and turn in her locker key, which she did. *Id.* at ¶7. Ms. Daliessio was then escorted to the exit door, where she surrendered her postal employee access badge and left the building. *Id.* at ¶ 8.

16. Ms Daliessio did not report for duty following her verbal termination. *Id at* ¶ 8.

17. Subsequently, Ms. Daliessio was sent a letter, dated February 20, 1998, confirming her separation, effective January 30, 1998. *Id.* at ¶10.

5

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. Bar 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar#434122
Assistant United States Attorney
                    /s/
FRED E. HAYNES, D.C. Bar #165654
Assistant United States Attorney
555 4TH Ave., N.W., Room E-4110
Washington, D.C. 20530
(202)514-7204

Of Counsel:

Larissa Omelchenko Taran
United States Postal Service
Washington, D.C.

6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE ) | |
| ) | |
| Plaintiff/ ) | |
| Counter-Defendant ) | |
| ) | |
| v. ) | Civil Case No. 1:06-CV-00793-RJL |
| ) | |
| AMERICAN POSTAL WORKERS ) | |
| UNION, AFL-CIO ) | |
| ) | |
| Defendant/ ) | |
| Counter-Plaintiff ) | |
| ) | |

<u>ORDER</u>

UPON CONSIDERATION of the motions by the parties for summary judgment, and the entire record in this case, it is this _____ day of _____, 2007,

ORDERED that the United States Postal Service's motion for summary judgment is granted; and it is further

ORDERED that the American Postal Workers Union's Motion for Summary Judgment is denied; and it is further

ORDERED that Arbitrator Loeb's decision is vacated.  This is a final, appealable order.


UNITED STATES DISTRICT JUDGE