EXHIBIT A TO MEMORANDUM IN
SUPPORT OF THE POSTAL SERVICE'S
MOTION FOR SUMMARY JUDGMENT

DECLARATION OF ANTHONY WATERS
06cv00793 RJL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE )<br>        Plaintiff/ )<br>        Counter-Defendant )<br>        )<br>v.                           )<br>        )<br>AMERICAN POSTAL WORKERS )<br>UNION, AFL-CO         )<br>        )<br>        Defendant/ )<br>        Counter-Plaintiff ) | Civil Case No. 1:06-CV-00793-RJL<br><br>DECLARATION OF<br>ANTHONY WATERS |

Pursuant to 28 U.S.C. §1746, I, Anthony Waters, declare that the following statements are true and correct:

1. I am a Labor Relations Specialist in the Labor Relations Department at United States Postal Service ("Postal Service") headquarters, Washington, DC and have held this position since October, 2006. Prior to that, I held the same position in the Philadelphia, PA District from January 2005 until October 2006. I held the position of Acting Labor Relations Specialist in the Philadelphia PA District from August of 1990, to January 2005. From December of 1988 until August of 1990, I held the position of Supervisor, Distribution Operations, also in the Philadelphia, PA District.

2. As a Labor Relations Specialist, I am responsible for administering the various collective bargaining agreements that the Postal Service has with unions representing Postal Service employees. Additionally, I represent the Postal Service in regular arbitrations (as opposed to expedited and national level arbitrations), as well as proceedings before the Equal Employment Opportunity Commission.

3. The Postal Service has a long-standing collective bargaining relationship with the APWU. As a consequence, the Postal

Service and the APWU have been parties to a series of collective bargaining agreements which establish many of the terms and conditions of employment for those employees represented by the APWU.

4. Article 12.1 of the 1994-1998 collective bargaining agreement ("the National Agreement"), the relevant agreement in this case, sets out certain terms and conditions of employment that apply to probationary employees. In particular, Article 12.1.A covers the termination of probationary employees and provides, in pertinent part, that the Postal Service has the right to separate probationary employees during a 90-day probationary period, and probationary employees cannot use the grievance process to challenge such actions. Article 12.1.A states, in pertinent part, as follows:

> The probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.

The plain language of Article 12.1.A does not require that the separation of a probationary employee be in writing. The probationary period is a trial period during which an employer is allowed to evaluate a new employee and, if necessary, terminate the employee for any reason without becoming entangled in the complicated procedures afforded to tenured employees. This right becomes increasingly important as the Postal Service moves towards a more centralized human resources function. A true and correct copy of Article 12.1 in its entirety is appended hereto as Exhibit 1.

5. Article 15 of the National Agreement sets out the grievance and arbitration procedures that the parties utilize to resolve disputes over the interpretation and application of the National Agreement, including disputes involving the termination of non-probationary

2

employees. Different parts of the dispute resolution procedures are used depending upon whether the grievance involves a dispute over the application of the labor agreement to particular individuals or circumstances or a dispute over the interpretation of the labor agreement that has general nationwide application. Under the Article 15 procedures, the latter type of disputes -- national interpretative disputes -- are handled at the national level at Step 4 of the grievance process and, if unresolved, are submitted for national arbitration. By contrast, the former types of local disputes are processed through Steps 1 to 3 of the grievance procedure and are submitted for regular arbitration, if necessary. A true and correct copy of Article 15 in its entirety is appended hereto as Exhibit 2.

6. National arbitration awards, unlike regular arbitration awards, provide definitive interpretations of the language of the National Agreement. These national arbitration awards provide controlling precedent, and are binding on regular panel arbitrators. By contrast, regular arbitration awards have no binding precedential value.

7. Article 15 also makes clear that arbitrators have limited jurisdiction. Thus, Article 15.5.A.6 provides, in pertinent part, as follows:

> All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator.

See Exhibit 2, Article 15.5.A.6.

8. Article 16 of the 1994 National Agreements sets out procedures for disciplining employees who have successfully completed

3

their probationary period. A true and correct copy of Article 16 is appended hereto as Exhibit 3.

9. The Employee and Labor Relations Manual sets out certain procedures to be followed in involuntarily separating a probationary employee. Specifically, Section 365.326 provides as follows:

> 365.326 Procedures in Separating
>
> If an appointing official decides to terminate an employee who is serving a probationary period due to conditions arising prior to appointment, or because work performance or conduct during this period fails to demonstrate fitness or qualification for continued postal employment, the employee's services are terminated by notifying the employee in writing why he or she is being terminated and the effective date of the action. The information in the notice regarding the termination must, at a minimum, consist of the appointing official's conclusions as to the inadequacies of performance or conduct.

A true and correct copy of ELM 365.32 may be found at pp. 18-19 of Exhibit 5 (see Paragraph 13, below.)

10. The parties disagreed at the national level regarding the interpretation of Article 12.1.A. Specifically, the parties disagreed as to whether Article 12.1.A denies probationary employees' access to the grievance procedure on the basis that the separation was not accomplished in accordance with the procedures contained in ELM 365.32. The issue was docketed for national interpretive arbitration, and heard by Arbitrator Shyam Das. Following two days of hearing, on September 10, 2001, Arbitrator Das issued an award ("Das Award"). A true and correct copy of the Das Award is appended hereto as Exhibit 4.

11. Because of the clear and unequivocal language of Article 12.1.A prohibiting probationary employees from challenging their

4

separations, Arbitrator Das denied the Union's grievance. His award stated, in pertinent part, as follows:

> Not permitting a probationary employee to grieve a procedural defect in the processing of his or her separation is fully consistent with the evident purpose of Article 12.1.A, which is to permit the Postal Service to elect to separate a probationary employee before that employee attains permanent employee status without having to defend its action in the grievance procedure.

Das Award at p. 20. In response to the APWU's submission of several regular (also referred to as "regional") arbitration awards upholding grievances challenging the separation of probationary employees, Arbitrator Das responded, as follows:

> My review of the cases indicates that, like the recently vacated Miles Award, many of the regional decisions that ruled in the Union's favor on arbitrability did so on the basis that, as Arbitrator Miles put it, the ELM provisions are "every bit a part of the Agreement, pursuant to Article 19, as is Article 12, Section 1." What is missing in these decisions is a convincing analysis that gets around the prohibition on access to the grievance procedure set forth in Article 12.1.A. Even assuming that the National Agreement requires the Postal Service to comply with the ELM provisions – just as it requires the Postal Service not to discriminate on the basis of handicap (Article 2) and not to retaliate against employees for filing workers compensation claims (Article 21) – Article 12.1.A bars access to the grievance procedure "in relation" to the separation of a probationary employee.

Das Award at p. 21.

12. Because the Das Award is a national arbitration award, it is dispositive of the interpretative issue which it addresses and provides controlling and binding precedent for regular panel arbitrators.

13. In my capacity as a Labor Relations Specialist, I represented the Postal Service in a regular arbitration (Case No. C94C-4C-D 98076813), held on November 2, 2005, before Arbitrator Lawrence R. Loeb. At the hearing the union advocate and I jointly agreed to the submission of Joint Exhibit 1 -- a 19-page packet of documents including the grievance papers and other related documents. A true and correct copy of Joint Exhibit 1 is appended hereto as Exhibit 5.

14. In the case before Arbitrator Loeb, the APWU challenged the separation of a probationary employee, Lorraine G. Daliessio, who worked for the Postal Service as a computer forwarding clerk in Philadelphia, PA. See Exhibit 5 at p. 6. Ms. Daliessio was hired on November 22, 1997, and her 90-day probationary period was to have expired on February 19, 1998. See Exhibit 5 at p. 14. Although in the grievance papers the union alleged several bases on which they believed the termination to be improper, the union pursued only one at arbitration. Specifically, the union alleged that because the Postal Service did not provide the employee with written notice of her termination before the expiration of her probationary period, and therefore did not comply with the ELM requirements, her separation was not effectual. See Exhibit 5 at pp. 2-6. The union's entire case presentation at the hearing concerned this procedural issue.

15. At the hearing, I read into the record a prepared opening statement, during which I requested the case be bifurcated with a separate ruling on arbitrability. I then explained that Article 12.1.A clearly prohibits access to the grievance procedure of *any* challenge related to a probationary employee's separation. I explained in detail the numerous arbitration and court decisions which upheld the Article 12.1.A proscription. Among these were two decisions which are right on point with the issue before Arbitrator Loeb, and in fact, definitively

6

decided that issue. The first was the Fourth Circuit decision, *USPS v. APWU*, 204 F.3d 523 (4th Cir. 2000), where the court vacated the underlying award, concluding "the arbitrator's decision that procedural attacks [pursuant to ELM 365.32] on the separation of a probationary employee are arbitral contravenes the unambiguous language of Article 12.1.A." The second was the binding Das Award, in which Arbitrator Das conclusively ruled that Article 12.1.A bars a grievance challenging the separation of a probationary employee on the grounds of alleged noncompliance with ELM 365.32. A true and correct copy of the Postal Service's Opening Statement in Case No. C94C-4C-D 98076813 is appended hereto as Exhibit 6.

16.   There was no dispute at the hearing that during her shift which began on January 30, 1998, Ms. Daliessio was verbally terminated. The Union's Step 2 and Step 3 Grievance Appeal Forms, *see* Exhibit 5 at pp. 2-6, as well as a signed statement prepared by Ms. Daliessio (see Paragraph 19 below), all accurately reflect that on January 30, 1998, (the 70th day of her scheduled 90-day probationary period), Daliessio was verbally informed by her work location supervisor, Vivian Barnett, that she was to clean out her locker and that she was being terminated. There was no dispute that Ms. Daliessio was informed on January 30, 1998 by Supervisor Barnett, that the reasons for her termination were unacceptable work quantity and work quality in relation to her assignment. *See* Exhibit 5 at p. 16. There was no dispute that Ms. Daliessio was required by Supervisor Barnett to clear out her locker, turn in her locker key and, after being escorted to the exit gate, to turn over her employee access badge. (Such badges are necessary in order to gain access to postal premises and required by regulation to be surrendered upon termination of employment.) Finally, there was no

dispute that Ms. Daliessio did not return to work after being verbally terminated.

17. Arbitrator Loeb issued his award ("Loeb award") on January 28, 2006. Arbitrator Loeb found that Ms. Daliessio had not been properly separated during her probationary period because the Postal Service did not comply with the procedures contained in ELM 365.32. Article 19 of the parties' collective bargaining agreement incorporates the requirements of ELM 365.32 into the National Agreement, including the written notification requirement. Because Ms. Daliessio did not receive written notification of her termination before her probationary period expired, Ms. Daliessio's termination was ineffectual. A true and correct copy of the Loeb Award in its entirety is appended hereto as Exhibit 7.

18. 14. Ms. Daliessio also initiated an Equal Employment Opportunity ("EEO") complaint (Case No. 4C-190-0108-98) alleging she was discriminated on the basis of her age (49) and race (White) when she was separated on January 31, 1998. A true and correct copy of the EEO file is appended hereto as Exhibit 8. On February 9, 1998, Ms. Dalliesio requested pre-complaint counseling, noting on the form "[o]n January 31, 1998 . . . I was terminated." See Exhibit 8 at p. 32. Ms. Dalliesio was notified of the right to file an individual complaint, within 15 calendar days of her receipt of the notice. Ms. Dalliesio did file a formal complaint, which she dated April 10, 1999; however, it was not received by the EEO Complaints Processing Office until April 16, 1999. With regard to her separation date, Ms. Dalliesio stated on her complaint form "1-31-98, 12:30AM, (Date of Termination)." Id. at p. 26.

19. In support of her complaint, Ms. Dalliesio submitted a typewritten statement which she prepared. Id. at pp. 21-24. At page 4

8

of that statement, Ms. Dalliesio described the events leading up to her termination, and her termination during her shift which began on January 30, 1998. *Id.* at p. 24. Ms. Dalliesio confirmed she was informed during her January 15 evaluation that her work quality and quantity performance was unsatisfactory. *Id.* at p. 22. She was put on notice by her supervisor that she had two weeks to improve her performance, and if she did not, would be facing termination. *Id.* at p. 23. Ms. Dalliesio explained she was called into her supervisor's office during her shift which began on January 30, and was told that her performance had not improved. *Id.* at p. 24. She was offered the option of resigning, rather than being terminated, but refused to resign. *Id.* After being terminated, Ms. Dalliesio cleaned out her locker, was escorted to the gate, and turned in her employee access badge. *Id.*

20. By decision dated June 18, 1999, Ms. Dalliesio's EEO complaint was dismissed as untimely. *Id.* at pp. 6-8. The agency's dismissal was upheld by the Office of Federal Operations, EEOC, in a decision dated July 18, 2002, and her request for reconsideration was denied in a decision dated November 13, 2002. *Id.* at pp. 1-5.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on *May 7, 2007*.

Anthony Waters