# EXHIBIT 4 TO EXHIBIT A

(TO THE MEMORANDUM IN SUPPORT OF THE POSTAL SERVICE'S MOTION FOR SUMMARY JUDGMENT)

06cv00793 RJL

RECEIVED
SEP 17 2001
COLLECTIVE BARGAINING AND ARBITRATION
LABOR RELATIONS

National Arbitration Panel

| | |
|---|---|
| In the Matter of Arbitration<br>between<br>United States Postal Service<br>and<br>American Postal Workers Union<br>and<br>National Association of Letter Carriers - Intervenor | Case No.<br>Q98C-4Q-C 99251456 |

Before: Shyam Das

Appearances:

For the Postal Service: Larissa Omelchenko Taran, Esquire

For the APWU: Susan L. Catler, Esquire

For the NALC: Keith E. Secular, Esquire

Place of Hearing: Washington, D.C.

Dates of Hearing: February 28, 2001
April 4, 2001

Date of Award: September 10, 2001

Relevant Contract Provision: Article 12.1.A

Contract Year: 1998-2000

Type of Grievance: Contract Interpretation

## Award Summary

1. Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM.

2. A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.

Shyam Das, Arbitrator

<u>BACKGROUND</u> Q98C-4Q-C 99251456

This case arises under the 1998-2000 National Agreement between the American Postal Workers Union (APWU) and the Postal Service. The National Association of Letter Carriers (NALC) has intervened in support of the position taken by the APWU. The dispute involves the interpretation of Article 12.1.A of the National Agreement, which provides as follows:

> The probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto. If the Employer intends to separate an employee during the probationary period for scheme failure, the employee shall be given at least seven (7) days advance notice of such intent to separate the employee. If the employee qualifies on the scheme within the notice period, the employee will not be separated for prior scheme failure.

The Unions assert that a grievance over whether the Postal Service has actually effectuated a separation of an employee during his or her probationary period is subject to the grievance-arbitration procedure. More particularly, the Unions maintain that Section 365.32 of the Employee and Labor Relations Manual (ELM) sets forth four procedural requirements for effectuating the separation of a probationary employee, and that the Union may file a grievance that challenges whether those separation procedures were followed.

The Postal Service maintains that Article 12.1 clearly denies a probationary employee access to the grievance procedure to challenge his or her separation on any grounds, including alleged noncompliance with Section 365.32 of the ELM.

The principle provisions of Section 365.32 of the ELM cited by the Unions provide as follows:

> 365.3 Separations - Involuntary
>
> * * *
>
> 365.32 Separation-Disqualification (S-Disqual)
>
> 365.321 Applicability
>
> This type of separation applies only to employees who have not completed their probationary period, except where the separation is caused by a finding that employees who have completed the probationary period have failed to meet certain conditions attached to their appointment.
>
> * * *
>
> 365.323 Probationary Period
>
> *Separation-disqualification* must be effected during the probationary period except as provided in 365.321. Action is initiated at any time in the probationary period when it becomes apparent that the employee is lacking in fitness and capacity for efficient service. Any separation based on disqualification not effected during the probationary period, as provided in 365.321,

even though the action is based on unsatisfactory performance during the probationary period, must be effected as a removal.

* * *

365.325 Who Initiates Action

Supervisors may recommend separation-disqualification, but such recommendations must be referred for decision to the official having authority to take the action.

365.326 Procedure in Separating

If an appointing official decides to terminate an employee who is serving a probationary period due to conditions arising prior to appointment, or because work performance or conduct during this period fails to demonstrate fitness or qualification for continued postal employment, the employee's services are terminated by notifying the employee in writing why she or he is being terminated and the effective date of the action. The information in the notice regarding the termination must, at a minimum, consist of the appointing official's conclusions as to the inadequacies of performance or conduct.

365.327 Effective Date

The effective date of separation by disqualification must be before the end of the probationary period but may not be retroactively effective. The notice of separation must be given to the employee before the end of the probationary or trial period.

Article 19 of the National Agreement provides that:

> Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours, or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement, and shall be continued in effect except that the Employer shall have the right to make changes that are not inconsistent with this Agreement and that are fair, reasonable, and equitable. This includes, but is not limited to, the Postal Service Manual and the F-21, Timekeeper's Instructions.
>
> Notice of such proposed changes that directly relate to wages, hours, or working conditions will be furnished to the Union at the national level at least sixty (60) days prior to issuance.... At the request of the Union, the parties shall meet concerning such changes. If the Union, after the meeting, believes the proposed changes violate the National Agreement (including this Article), it may then submit the issue to arbitration....

The issue in this case has not been addressed in a National Arbitration decision. Evidently, the only National Arbitration decision dealing with Article 12.1.A is the 1985 decision of Arbitrator Zumas in Case No. H1C-4C-C 27351/2. In that case, the APWU challenged the separation of two probationary employees. The Union alleged that the grievants had been retaliated against for filing workers compensation claims, in violation of Article 21, and had been the victims of handicap discrimination in violation of Article 2. Arbitrator

Zumas rejected the Union's contentions that the grievants were entitled to enforce their rights under Articles 2 and 21 through the grievance-arbitration procedure, and that the language of Article 12.1.A applies only as an exception to the "just cause" provision of Article 16. In his decision, Arbitrator Zumas stated:

> Article 12.1A, in clear, unqualified, unrestricted, and all encompassing language, denies probationary employees access to the grievance-arbitration process if they are terminated <u>for any reason</u> during the probationary period. There is simply no contractual basis that would warrant a conclusion that the Article 12.1A exception has application only to "just cause" terminations.

There have been a considerable number of regional arbitration cases in which the Unions challenged the purported separation of a probationary employee on various grounds, including that the separation was not properly effectuated in accordance with one or more of the requirements of Section 365.32 of the ELM. Prior to 1999, a large majority of the regional arbitrators who were presented with a claim that a purported separation did not comply with the cited ELM provisions applied those provisions, even in cases where the Postal Service insisted the grievance was not arbitrable under Article 12.1.A. Prior to 1998, the Postal Service never challenged any of the decisions which ruled in the Unions' favor on that issue in a court of law.

Regional Arbitrator Miles issued a decision in Case No. K94C-4K-D 97080929 on June 16, 1998. The APWU had filed a grievance challenging the separation of the grievant on the grounds that the Postal Service violated the procedures in Section 365.32 of the ELM. More particularly, as articulated by Arbitrator Miles, the Union claimed that the Postal Service failed to provide a specific statement that the grievant was being terminated for a particular reason and that the notice of separation was not issued by the appointing official. The Postal Service asserted that the grievance was not arbitrable under Article 12.1.A. The case was bifurcated, and Arbitrator Miles issued a decision holding that the question of whether the Postal Service adhered to the proper ELM procedures was an arbitrable matter. Arbitrator Miles stated:

> There is no question that Article 12, Section 1 of the Agreement entitles the Postal Service to terminate probationary employees prior to the expiration of their probationary period. However, Article 12 does not stand alone, rather it must be considered in conjunction with all other provisions of the Agreement. Thus, when taking action to separate a probationary employee, the Postal Service must do so in accordance with the provisions of the Agreement and the applicable provisions which are contained in Section 365.32 of the ELM. This provision is every bit a part of the Agreement, pursuant to Article 19, as is Article 12, Section 1.

The Postal Service brought an action to vacate the Miles award in the United States District Court for the Eastern

District of Virginia. The APWU counterclaimed for enforcement of the award. The district court vacated the Miles award, ruling that the arbitrator had exceeded his authority by issuing an award that was directly contrary to the language of Article 12.1 of the parties' collective bargaining agreement. Thereafter, the APWU appealed that decision to the United States Court of Appeals for the Fourth Circuit. It also initiated this Step 4 interpretive dispute.

The Fourth Circuit Court of Appeals issued its ruling on February 25, 2000 (USPS v. APWU, 204 F.3d 523.) By a 2 to 1 majority, the court affirmed the district court's judgment vacating the Miles award. The court rejected the APWU's argument that the Miles award does not violate Article 12.1.A because nothing in that provision precludes an arbitrator from determining whether a probationary employee was actually separated in the first place. The Court stated:

> ...The arbitrator's decision that procedural attacks on the separation of a probationary employee are arbitrable contravenes the unambiguous language of Article 12.1.A. The terms of this provision are worth repeating: "The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees *shall not be permitted access* to the grievance procedure *in relation thereto*" (emphasis added). This language is unqualified and admits of no exception. The provision makes no distinction whatsoever between procedural attacks on separations and substantive challenges. The sweeping

> phrase "in relation thereto" brings any separation-related grievance by a probationary employee within the ambit of the prohibition. In other words, so long as the matter involves probationary employees and the question of separation, no grievance may be brought. In fact, it is difficult to see how the parties could have been any clearer in prohibiting every kind of separation-related grievance by a probationary employee.
>
> The arbitrator ruled that notwithstanding the clear language of Article 12, Article 19 somehow renders this matter grievable. He claimed that Article 19 incorporates Postal Service handbooks and manuals into the National Agreement, and that ELM violations are grievable by probationary employees because ELM violations are also violations of the National Agreement.
>
> This argument, however, has no basis whatsoever in the National Agreement. Even assuming, *arguendo*, that Article 19 incorporates the ELM into the National Agreement, there is no language either in the ELM or in Article 19 that even suggests ELM violations are grievable by probationary employees. Further, even if there were any hint in the ELM that probationary employees could grieve ELM violations, this hint would run smack into Article 12. And Article 19 unequivocally states that Postal Service handbooks and manuals "shall contain nothing that conflicts with this Agreement."

In addition to the action it filed to vacate the Miles award, the Postal Service has since filed similar actions to vacate other regional arbitration awards holding that a grievance that protests that a purported separation violates

Section 365.32 of the ELM is arbitrable. The Union has counterclaimed to enforce those awards. These actions in various United States District Courts have been stayed (or a motion to stay has been filed), pending issuance of this National Arbitration decision.

UNION POSITION

Initially, the Unions point out that Article 15.5.A.9 of the National Agreement provides that: "Any dispute as to arbitrability may be submitted to the arbitrator and be determined by such arbitrator".

The Unions contend that Article 12.1.A must be interpreted in the context of the separation procedures set forth in Postal Service Manuals and Regulations. Since at least the 1950's the Postal Service had regulations set forth in its Post Office Manuals governing the separation of probationary employees. Although the language changed slightly over the years, the core requirements for the Postal Service to effectuate a probationary separation always have been: (1) written notice; (2) by the appointing official; (3) stating, at a minimum, the reasons for the termination; (4) provided to the employee prior to the end of the probationary period. These regulations also provide that if an employee is not separated during the probationary period, that employee can only be removed by following the procedures for permanent employees,

even if the action is based on unsatisfactory performance during the probationary period.

The Unions stress that prior to adoption of Article 12 in 1971, the Postal Service had to satisfy all the requirements for separating a probationary employee in order to effectuate such a separation. The Unions argue that it was in this context that they entered into negotiations with the Postal Service for the first National Agreement in 1971, and that the language in the Post Office Manual provided the basis for the parties agreeing to Article 12. The language in Article 12 was intended to operate in tandem with the separation procedures in the Post Office Manual, which remained in effect. Thus, there was no reason to include any language defining probationary separations in the National Agreement. The Postal Service would effectuate a probationary separation by following the procedures in the Post Office Manual. Once there was a separation, the language of Article 12 would bar challenges to that separation, which was the Postal Service's central concern. For decades after the first National Agreement, the Unions assert, the Postal Service continued to apply the probationary separation procedures and arbitrators continued to review whether the Postal Service had complied with those procedures.

The Unions point out that the Postal Service could hardly have negotiated Article 12 with the belief that Article 19 would eliminate the separation procedures as contradictory language, because Article 19 did not come into existence until the second National Agreement was negotiated in 1973. Moreover,

the Postal Service's claim that the ELM provisions are in conflict with Article 12 is controverted by its promulgation of the ELM in 1978, which reincorporated the separation procedures previously set forth in the Postal Manual. The Unions also emphasize that the provisions of the ELM are part of the official regulations governing the Postal Service, as provided in 39 C.F.R. §211.2(a)(1).

The Unions contend that the contract language supports its interpretation. The language of Article 12 is far from clear. It speaks of the right to the Postal Service to separate employees and the prohibition on the right to file grievances in relation to that separation, but there is no guidance as to when a separation has occurred. Absent language elsewhere incorporated into the National Agreement or past practice, it reasonably could be argued that common sense or industrial common law could be used to determine the threshold issue of whether an employee was separated during the probationary period. Here, however, the language of the ELM and the past practice of the parties spells out exactly what it means to "separate" a probationary employee.

The Unions assert that ELM provisions in Section 365.32 clearly and specifically define when a separation of a probationary employee occurs. These provisions have been specifically incorporated into the National Agreement by Article 19 and have been in effect for at least a half century. There is no conflict between these provisions and Article 12, and they should be followed in applying that provision.

The Unions adamantly reject the Postal Service's claim that the Unions' position will deprive the Postal Service of the benefit of its bargain. Nothing in the Unions' argument diminishes the Postal Service's right to separate probationary employees during the probationary period without adhering to the just cause standard. All the Unions are seeking here is a decision requiring the Postal Service to adhere to its own almost 50-year-old regulation when effecting the separation. The benefit of the bargain argument also cuts both ways. The Unions have negotiated just cause protection for all employees who have not been properly separated before the end of their 90th day of employment. A ruling which undermines the standards for effectuating separations diminishes this protection.

The Unions maintain that the 2000 Fourth Circuit Court of Appeals decision upholding the vacating of the Miles award misinterpreted the National Agreement. Moreover, that court did not have the benefit of the parties' negotiating history and the foundation of the Post Office Manual serving as a governing document when the parties first negotiated Article 12. The Unions also assert that the Zumas National Arbitration Award and two earlier Federal Court of Appeal decisions cited by the Postal Service are not on point. Those cases merely held that once a separation is effected during the probationary period, the basis for the separation cannot be challenged through the grievance procedure even if the Union alleges that the basis for the separation violated another provision of the National Agreement.

The Unions also insist that the post-1971 bargaining history cited by the Postal Service does not support the Postal Service's claim that the Unions are trying to achieve by arbitration what they failed to gain in negotiations. The Unions never sought to include into the National Agreement the right to challenge whether a separation occurred during the probationary period, always believing it had that right by way of the ELM. The bargaining proposals the Unions submitted sought to shorten the probationary period and to include just cause dismissal rights enforceable in the grievance procedure, for probationary employees. The just cause proposals went to the reasons for separation, not whether a separation occurred.

POSTAL SERVICE POSITION

The Postal Service contends that the language of Article 12.1.A is as clear and unequivocal as contract language can be. The probationary period is intended to be a trial period designed to determine if the initial decision to employ a person was appropriate. The purpose of Article 12.1.A is to allow the Postal Service to make such evaluations and, if necessary, to separate a probationary employee without becoming entangled in the complicated and time-consuming procedures afforded to permanent employees by Article 15 (Grievance-Arbitration Procedure) and Article 16 (Discipline Procedure). The Postal Service asserts that this right is especially important in an organization as large as the Postal Service, and

becomes increasingly important as the Postal Service moves away from the notion of a traditional personnel office, and toward a system where the supervisor has increased autonomy and uses shared web-based applications to process personnel actions directly.

The Postal Service maintains that in the negotiation of the first National Agreement in 1971, its negotiators insisted that management have the unequivocal right to dismiss an employee during the probationary period without having the decision challenged through the grievance-arbitration procedure. This was the *quid pro quo* for its agreement to shorten the probationary period, which had been one year under the Postal Manual, to 90 days. The parties unambiguously agreed that a certain class of disputes is not subject to the grievance-arbitration procedure. Only the parties, by mutual agreement, may change that.

Over the years, the Postal Service asserts, the Unions have unsuccessfully sought to amend Article 12.1.A to secure probationary employees access to the grievance procedure. They cannot gain through arbitration what they could not gain through negotiation.

The Postal Service states that the provisions of the Postal Manual relating to probationary separations were in large part continued in Section 365.32 of the ELM in 1978, despite the negotiated language of Article 12, because they continue to apply to non-bargaining unit employees.

The Postal Service insists that Article 12.1.A does not differentiate between substantive and procedural challenges to a probationary employee's separation -- both are precluded by the blanket prohibition contained in that provision. It asserts that the Fourth Circuit Court of Appeals recognized the Unions' argument for what it is -- a "back door" attempt to obtain access for probationary employees to the grievance-arbitration procedure. To allow probationary employees access to the grievance procedure to challenge alleged "procedural" violations of Section 365.32 of the ELM would open the flood gates to grievances alleging violation of that and other ELM provisions. Apart from eviscerating the Postal Service's bargain, permitting probationary employees to challenge the manner in which their separations were effectuated would render the language of Article 12.1.A meaningless. As the Fourth Circuit noted, the Unions' distinction between procedural and substantive challenges is a "false dichotomy", and substantive challenges to probationary employee separations can often be formulated as procedural ones.

The Postal Service maintains that the Unions' argument that ELM violations are grievable violations of the National Agreement because Article 19 incorporates the ELM into the Agreement is fundamentally flawed and blatantly ignores the plain meaning of Article 12.1.A. This argument was flatly rejected by the Fourth Circuit's decision. Under Article 19, ELM provisions cannot supersede the clear and unequivocal language of Article 12.1.A.

The Postal Service cites USPS v. APWU, 922 F 2d.256 (5th Cir. 1991), a case in which the Union grieved the separation of a probationary employee on the ground that the Postal Service separated the employee due to compensable work-related injury in violation of the Federal Employees Compensation Act (FECA) and postal regulations implementing FECA. A regional arbitrator found the grievance was arbitrable and that the Postal Service violated Articles 19 and 21. The Court of Appeals affirmed the district court's ruling that the arbitrator exceeded his authority under Article 15.4.A.6, because Article 12.1.A denies probationary employees "any right to resort to grievance and arbitration procedures".[1]

Arbitrator Zumas in his 1985 National Arbitration decision likewise rejected a similar attempt by the Union to challenge the separation of a probationary employee on the grounds that it violated Articles 2 and 21. As Arbitrator Zumas declared: "Article 12.1.A, in clear, unqualified, unrestricted, and all-encompassing language, denies probationary employees access to the grievance-arbitration process if they are terminated for any reason during the probationary period."

Finally, the Postal Service explains that the reason it does not dispute that notice of separation must be provided to a probationary employee within a 90-day period is that

---

[1] The Postal Service also cites APWU v. USPS, 940 F.2d 704 (D.C. Cir. 1991). Although the court in that case relied on Article 12.1.A to dismiss the Union's breach of contract claim, access to the grievance-arbitration procedure was not an issue in that case.

Article 12.1.A defines the probationary period as 90 days. That is an enforceable contract provision, unlike the remaining elements in Section 365.32 of the ELM cited by the Unions that are superseded by Article 12.1.A.

FINDINGS

The 2000 decision of the Court of Appeals for the Fourth Circuit serves at the very least as a sharp reminder that an arbitrator must focus first and foremost on the language of the parties' agreement. As explicitly stated in Article 15.5.A.6 of the National Agreement:

> All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator.

Article 12.1.A grants the Postal Service the unqualified right "to separate from its employ any probationary employee at any time during the probationary period" and mandates that "these probationary employees shall not be permitted access to the grievance procedure in relation thereto". Looking solely to the language of Article 12.A.1, I have to agree with the finding of the Fourth Circuit that:

> This language is unqualified and admits of no exception. The provision makes no distinction whatsoever between procedural attacks on separations and substantive

> challenges. The sweeping phrase "in relation thereto" brings any separation-related grievance by a probationary employee within the ambit of the prohibition.

The Unions, of course, are correct in asserting that there must have been a separation before the end of the employee's probationary period in order for Article 12.1.A to apply. Absent such a separation, the probationary employee becomes a permanent employee and can only be discharged or removed for just cause in accordance with Article 16. The discharge of a permanent employee, in contrast to the separation of a probationary employee, is subject to the grievance-arbitration procedure.

The Unions also are correct in pointing out that Article 12 does not define what constitutes a separation. That definition is provided, however, in Section 365.11 of the ELM which states:

> *Separations* are personnel actions that result in employees' being removed from the rolls of the Postal Service.

Section 365.32 then goes on to provide the procedures to be followed in involuntarily separating a probationary employee. I agree with the Unions that these provisions of the ELM, in effect, are incorporated in the National Agreement pursuant to Article 19. There is nothing in the National Agreement or the ELM to suggest that these provisions do not apply to bargaining unit probationary employees. These provisions are not in any

way inconsistent with Article 12.1.A. By the same token,
however, these ELM provisions do not address or govern access to
the grievance-arbitration procedure.

The issue, in my view, is not whether the ELM
provisions the Unions rely on "conflict" with Article 12.1.A.
They do not. The issue, however, is whether Article 12.1.A
nonetheless precludes a probationary employee and the Union from
grieving that the employee's separation did not comply in one or
more respects with those ELM provisions. Or put a different
way, whether Article 12.1.A permits a probationary employee and
the Union to grieve that a separation action taken by the Postal
Service was not a "separation", for purposes of Article 12.1.A,
because the Postal Service did not comply in one or more
respects with the ELM provisions.

The 1985 National Arbitration decision by Arbitrator
Zumas is instructive in answering this question. It holds, as
did the 1991 Fifth Circuit Court of Appeals decision, that a
probationary employee and the Union cannot resort to the
grievance procedure to challenge a separation on the grounds
that the separation violated some other valid provision of the
National Agreement. Thus, even if Article 19 incorporates the
provisions of Section 365.32 of the ELM into the National
Agreement, and even if those provisions do not conflict with
Article 12.1.A, that does not provide a contractually valid
basis on which to disregard Article 12.1.A's broad prohibition
on access to the grievance procedure.

Similarly, even accepting the Union's contention that the parties negotiated Article 12.1.A in 1971 with the implicit understanding that the separation procedures in the Post Office Manual (later included in the ELM) would continue to apply to the separation of probationary employees, it does not follow that they intended to permit probationary employees to grieve alleged violations of those procedures. The broad sweep of the language they agreed to, in my opinion, compels a finding that the prohibition on access to the grievance procedure applies equally to such procedural challenges.

Not permitting a probationary employee to grieve a procedural defect in the processing of his or her separation is fully consistent with the evident purpose of Article 12.1.A, which is to permit the Postal Service to elect to separate a probationary employee before that employee attains permanent employee status without having to defend its action in the grievance procedure. The Unions have not established a convincing contractual basis on which to conclude that, notwithstanding the broad language in Article 12.1.A, the parties agreed to permit procedural attacks on such separations in the grievance procedure.

I recognize that, starting in the late 1970's, many regional arbitrators have applied the ELM provisions and, when they have found violations, have upheld grievances challenging the separation of probationary employees. Since Arbitrator Zumas' 1985 National Arbitration decision, however, there have

been a number of regional decisions that have found such
grievances not to be arbitrable.

        My review of the cases indicates that, like the
recently vacated Miles award, many of the regional decisions
that ruled in the Unions' favor on arbitrability did so on the
basis that, as Arbitrator Miles put it, the ELM provisions are
"every bit a part of the Agreement, pursuant to Article 19, as
is Article 12, Section 1". What is missing in these decisions
is a convincing analysis that gets around the prohibition on
access to the grievance procedure set forth in Article 12.1.A.
Even assuming that the National Agreement requires the Postal
Service to comply with the ELM provisions -- just as it requires
the Postal Service not to discriminate on the basis of handicap
(Article 2) and not to retaliate against employees for filing
workers compensation claims (Article 21) -- Article 12.1.A bars
access to the grievance procedure "in relation" to the
separation of a probationary employee.[2]

        In all these cases, the individual on whose behalf the
Union has filed a grievance has been removed from the rolls,
that is, separated by an action taken by the Postal Service.
Otherwise, there would have been no reason to file a grievance.
The one issue that legitimately can be raised in a case where
the Postal Service claims that a grievance is barred by Article

---

[2] Arbitrator Zumas' 1985 National Arbitration decision held that
Article 12.1.A denies probationary employees access to the
grievance procedure to protest that their separations violated
Articles 2 and 21.

12.1.A, is that the separation action did not occur during the probationary period.[3] The Postal Service acknowledges this, as it must, because Article 12.1.A has no application if the separation action does not occur during the probationary period. That is a fundamentally different issue, however, from whether or not the separation action complied with all the particular requirements set forth in Section 365.32 of the ELM. A challenge to the validity of the procedures followed in effecting a separation is barred by the broad prohibitory language of Article 12.1.A.

For the reasons set forth in this decision, I conclude that Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM. A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.

[3] This was an issue in a significant number of the regional arbitration cases involving Article 12.1.A.

## AWARD

The grievance is resolved on the following basis:

1. Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM.

2. A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.

Shyam Das, Arbitrator