EXHIBIT 6 TO EXHIBIT A

(TO THE MEMORANDUM IN SUPPORT
OF THE POSTAL SERVICE'S MOTION
FOR SUMMARY JUDGMENT)

06cv00793 RJL

In the Matter of the Arbitration

between

UNITED STATES POSTAL SERVICE

and.

AMERICAN POSTAL WORKERS UNION,
AFL-CIO, Philadelphia Area Local

Arbitration Case No. C94C-4C-D 98076813
981234

BEFORE ARBITRATOR  LAWRENCE LOEB

## UNITED STATES POSTAL SERVICE'S OPENING STATEMENT

I.   INTRODUCTION

This case is before the Arbitrator pursuant to a grievance filed by the

American Postal Workers Union, AFL-CIO ("APWU").


II.     BACKGROUND

A. Grievance C94C-4C-D 98076813

The undisputed record in the present case indicates that on 11-22-07, the

Grievant, Lorraine DAliessio, entered on duty and began a period of probationary

employment as an automated mark-up clerk, employed by the Philadelphia

District of the U.S. Postal Service. The Grievant's 90-day probation expiration

date was set at 02-19-98.   There is no dispute between the parties that "on 01-

30-98,[ on the 70th day of her scheduled 90-day probationary period], the Grievant

was verbally informed by Supervisor V[ivian] Barnett [her work location

supervisor] that she was to clean out her locker and that she was being

terminated." (See Joint Exhibit  Step 2 Grievance Appeal Form ) There is no

dispute between the parties that the Grievant did not serve a 90-day probation

("ELM, Section 377.A states bargaining unit position serves a probationary period

of 90 days that was not done") (See Joint Exhibit Union Additions/Corrections.

Of course, given the fact that the Grievant was terminated by her supervisor at the 70th day of her probationary period, an 80-day and/or 90-day evaluation would have been both superfluous and an impossibility.

By a grievance initiated at Step 1 of the grievance arbitration procedure on March 30, 1998, the Union contended that "[o]n 1-31-98, Part-Time Flexible Computer Forwarding Clerk, Ms. Lorraine G. DAliessio, was verbally informed by Supervisor V. Barnett that she was to clean out her locker and that she was being terminated." The Union cited alleged violations of ELM provisions pertaining to probationary employee procedures including evaluation, training and termination, as well as age discrimination, and violation of the EL-921 as the basis for the grievance.

### III. ARGUMENT

The APWU was put on notice of the Postal Service's position on arbitrability in the present case. As required by Article 15, at Step 2, the Postal Service provided the Union with a statement of its understanding of the issues involved in the case. That document, dated April 16, 1998, clearly stated that "the National Agreement Article 12 Section 1 a of the National Agreement the employer has a right to separate from its employee [sic] any probationary employee at any time during the probationary period and these employees shall not be permitted access to the grievance procedures." The Management Step 2 decision also observed that "the grievance was not timely in nature."

Accordingly, the Postal Service takes the position today at arbitration that this grievance is not arbitrable. The Postal Service requests that this case be bifurcated and that a decision on the issue of arbitrability, alone, be made by the arbitrator today.

The Postal Service argument regarding inarbitrability is a straightforward one: The collective bargaining agreement between the Postal Service and the APWU establishes the APWU as the exclusive bargaining representative of all employees in its respective bargaining unit. This union recognition clause is contained in Article 1. As is typical with labor agreements, covered employees, if they choose, may have the Union represent them when they feel they have been aggrieved by some action of the employer. That process normally begins with a

grievance, and is governed by Article 15 of the National Agreement, entitled "Grievance-Arbitration procedure."

The National Agreement also establishes that certain groups of employees are excluded from union representation, and that the Agreement does not apply to them. For example, managerial employees are explicitly excluded from the operation of the APWU Agreement.

Finally, there is a category of employees that, while not specifically excluded from union representation under the agreement, is expressly limited by the Agreement and is expressly prohibited by the terms of the National Agreement from access to certain procedures in that Agreement. The category of employees I speak of is the Probationary employee. The procedure that they are restricted from using is the Grievance-Arbitration procedure contained in Article 15.

The specific contours of this express prohibition against probationary employee access to the grievance-arbitration procedure has been frequently arbitrated by the parties, and has been the subject of two national level arbitration awards. The issue has also formed the subject matter of federal court litigation between the parties. In this regard, the Postal Service has shown a growing resolve to exercise vacatur, when necessary, to preserve its unfettered ability to separate from its employ, prior to the expiration of the 90-day probationary period, any probationary employee, without granting access to the grievance-arbitration procedure.

## A. Article 12.1.A Explicitly and Completely Bars Probationary Employees' Access to the Grievance-Arbitration Procedure

### 1. Language and Underlying Purpose of Article 12.1.A

The contractual language of Article 12.A.1 is as clear and unequivocal as contract language can be. It expressly states that the Postal Service "shall have the right to separate from its employ any probationary employee at any time during the probationary period." Article 12.1.A. Moreover, as if that language were not clear enough, the language of the National Agreement continues that "these probationary employees shall not be permitted access to the grievance procedure in relation thereto." A more forcefully stated, unambiguous grant of right to an employer can hardly be imagined.

The probationary period is intended to be a trial period – an extension of the selection process – designed to determine if the initial decision to employ a person was appropriate. In addition to allowing the Postal Service to thoroughly investigate criminal , military and prior employment files, it allows the Postal Service to evaluate an employee's on-the-job performance prior to making a permanent employment decision. The purpose of Article 12.1.A is to allow the Postal Service to make such evaluations, and if necessary, separate a probationary employee without becoming entangled in the complicated and time-consuming procedures afforded to permanent employees by Articles 15 (Grievance-Arbitration Procedure) and 16 (Discipline Procedure) of the National

Agreement. See APWU v. USPS, 940 F. 2d. 704, 707 (DC Cir. 1991)(the

purpose of the probationary period, which is to permit an employer to evaluate a

new employee on a trial basis and terminate him for whatever reason it chooses

during the trial period of employment, would be undermined if probationary

employees were allowed to enforce the just-cause requirement of Article 16).

This right is especially important in an organization as large as the Postal Service,

and becomes increasingly important as the Postal Service moves away from the

notion of a traditional personnel office, and towards a more centralized human

resources function, where the supervisor uses shared web-based applications to

process personnel actions directly.


2. Negotiations History

The current language of Article 12.1.A first appeared in the 1971 National

Agreement, the first to be negotiated by the parties after the passage of the

Postal Reorganization Act, 39 U.S.C. §101 et seq., ("PRA").[1]  Although the unions

resisted the inclusion of the prohibition, Postal Service negotiators insisted that

management have the unequivocal right to dismiss an employee during his/her

probationary period without having the decision challenged through the grievance-

arbitration procedure.

Prior to the PRA, the Post Office Manual, United States Postal Department

("Postal Manual"), contained the "operating instructions" for all functions of the

organization, including personnel.  Pursuant to the Postal Manual, the probationary period was set at one year.  ( Postal Manual, Ch. II. Art. 25(a) (1955)). The Postal Manual continued in effect for several years after Postal Reorganization and collective bargaining began, in 1971, until the first edition of the ELM was released in 1978.  The provisions of the Postal Manual with respect to probationary separations were in large part continued in ELM 365.32.

During the 1971 negotiations, the Unions proposed a 30-day probationary period,  whereas the Postal Service proposed a six month probationary period. Ultimately, the parties agreed to a 90-day probationary period.  The Postal Service was adamant that the Employer's right to separate employees during their probationary period be an unencumbered one.  Management needed this right so that it could expeditiously make decisions about which probationary employees to retain without having to worry about going through the time consuming grievance-arbitration process.  The quid pro quo for the substantially shortened probationary period was the employer's unencumbered right to separate probationary employees during the 90-day probationary period.  By negotiating the language contained in Article 12.1.A , the Unions waived the right to enforce the provisions contained in the Postal Manual and the ELM related to the separation of probationary employees.

---

[1] Beginning with the first National Agreement and through the 1990 National Agreement, the APWU and the NALC bargained together as the Joint Bargaining Committee (JBC).

As the U.S. Court of Appeals for the Fourth Circuit noted, if the Unions wished probationary employees to have access to the grievance procedure to challenge a separation, they could have bargained for such a right. <u>United States Postal Service v. American Postal Workers Union,</u> 204 F3d 523. That they did not achieve this right is evident in that the Unions have made proposals over the years to amend the language of Article 12.1.A to secure probationary employees access to the grievance procedure.[2]

The Unions were unsuccessful in negotiating the aforementioned, and Article 12.1.A remained unchanged. The Unions cannot gain through arbitration what they could not gain through negotiation. In negotiating the National Agreement, the parties struck a bargain, and part of the bargain was that the probationary period was shortened from one year to 90 days. Another part of the bargain was that the Postal Service was given the discretion to discharge probationary employees without the prospect that such decisions will be subject

---

[2] The 1973 JBC proposal to amend Article 12.1.A to include, among other things, probationary employees' access to the grievance procedure in relation to separation, and separation for just cause during probationary period)[2]; 1975 JBC proposal to amend Article 12.1.A to include, among other things, probationary employees' access to the grievance procedure in relation to separation, and separation or discipline of probationary employees for just cause only); 1978 JBC proposal to amend Article 12.1.A to include, among other things, probationary employees' access to the grievance procedure for all grievable actions other than separation); 1981 JBC proposal to amend Article 12.1.A to include, among other things, requiring just cause for probationary employees who have suffered compensable injuries or job-related illnesses and giving them access to the grievance-arbitration procedure); and 1987 JBC proposal to amend Article 12.1.A to provide that a probationary discharge must meet certain standards, and access to the grievance-arbitration procedure in relation thereto.).

to contractual review.  The parties unambiguously agreed that a certain class of

disputes is not subject to the grievance-arbitration procedure, and only the

parties, by mutual agreement, may change that.

   Apart from eviscerating the Postal Service's bargain, if probationary

employees were allowed to challenge via the grievance-arbitration procedure the

manner in which his/her separation was effectuated, the language of Article

12.A.1 would be rendered meaningless.  Realistically speaking, the unions could

grieve every probationary separation alleging a procedural violation.  As the

Fourth Circuit noted, the Union's distinction between procedural and substantive

challenges is a "false dichotomy", and substantive challenges to probationary

employee's separations can often be formulated as procedural ones.  This would

clearly grant the union the right to pursue any probationary separation through the

grievance procedure, defeating the original intent of the prohibition bargained for

by the parties, and so clearly and unequivocally stated in Article 12.1.A.

   In addition, to allow probationary employees access to the grievance

procedure to challenge alleged "procedural" violations of ELM 365.32 would open

the floodgates to grievances alleging violations of that and other ELM provisions.

In National Case No. Q-98C-4A-C99251456, the Union identified five procedural

issues they believe to be required by ELM 365.32. Had the union prevailed before

Arbitrator Das in that National Level Arbitration -- each of these elements would

now have to be arbitrated prior to successfully separating each and every

probationary employee.

Clearly, the floodgates would have been opened by such a finding as the

Union sought in that case. Arbitrator Das understood that that is not what the

clear language of Article 12.1.A was intended to accomplish. To the contrary – it

was intended to expressly deny probationary employees access to the grievance

procedure.

> B. Federal Courts and National and Regional Arbitrators Have
> Overwhelmingly Held that Article 12.1.A Bars Probationary Employee
> Access to the Grievance-Arbitration Procedure and Support a Finding in
> the Case at Bar in Favor of the Postal Service

> 1. Federal Court precedent

Article 12.1.A expressly denies probationary postal employees *any*

contractual right to contest their discharge. As noted above, this language was

bargained for in order to permit the Postal Service an opportunity to evaluate a

new employee on a trial basis and, if so decided, to separate such employees

easily. Article 12.1.A does not differentiate between substantive and procedural

challenges of a probationary employee's separation – both are precluded by the

blanket prohibition contained in that provision. Indeed, in a decision dated

February 25, 2000, the Fourth Circuit Court of Appeals specifically addressed the

Article 12.1.A prohibition and rejected the Union's back-door attempt to gain

access for probationary employees to the grievance arbitration procedure.

(USPS v. APWU, 204 F.3d 523 (4th Cir. 2000)).

In the arbitration underlying that decision, (K94C–4K-D 97080929 Regional Arb. Miles 6-16-1998, Hoang, Arlington, Va.)a probationary employee was terminated during her probationary period.  The APWU grieved her termination, claiming, among other things, that in separating her, the Postal Service failed to comply with the provisions contained in ELM 365.  Id. at p. 526.  Specifically, the Union claimed that the proper official did not initiate the separation (ELM 365.325) and that the separation notice failed to include the requisite "conclusions as to the inadequacies of performance or conduct " (ELM 365.26).  Id.  As such, the Union argued, the separation was not "effectuated", and if the Postal Service wanted to separate her, it would have to follow the discharge procedures applicable to permanent employees, which would include access to the grievance-arbitration procedure.  Id.

In the Fourth Circuit vacatur, the Postal Service argued the same position it takes in the case at bar today – that the matter was not grievable by virtue of the language of Article 12.A.1 because the dispute related to the separation of a probationary employee.

Arbitrator Miles ruled that the grievance was arbitrable.  Id.  He asserted that the termination of a probationary employee must be effectuated in accordance with the ELM.  He further stated that Article 19 incorporated the provisions of the ELM related to wages, hours and working conditions, and that a

violation of ELM procedures was a violation of the National Agreement, and therefore subject to arbitration under Article 15.  Id.

The Postal Service filed an action in the District Court for the Eastern District of Virginia to vacate that award, and the court did so on summary judgment.  Id.  The district court concluded that Arbitrator Miles exceeded his authority, that the decision altered the terms of Article 12.A.1, and thereby violated the prohibition contained in Article 15.5.A(6) against an arbitrator altering the National Agreement.  Id.

The APWU appealed, and the Fourth Circuit Court of Appeals affirmed the district court's decision.  The court stated that the "arbitrator's decision that procedural attacks on the separation of a probationary employee are arbitrable contravenes the unambiguous language of Article 12.1.A."  Id. at p. 528.

> "This language is unqualified and admits of no exception.  The provision makes no distinction whatsoever between procedural attacks on  separations and substantive challenges.  The sweeping phrase "in relation thereto" brings any separation-related grievance by a probationary employee within the ambit of the prohibition.  In other words, so long as the matter involves [1] probationary employees and [2]the question of separation, no grievance may be brought.  In fact, it is difficult to see how the parties could have been any clearer in prohibiting every kind of separation-related grievance by a probationary employee. [emphasis added]

Id. at  528.

The grievance in the case at bar, satisfies the prerequisites articulated by the Court of Appeals. The present grievance involves the separation, on 01-30-

98, during the 90-day probationary, of an employee who was, at the time of that separation, still a probationary employee. As such, this case falls squarely within the ambit of the clear contractual prohibition of Article 12.1.A that was clearly given jurisprudential recognition in the Court of Appeal's decision.

The Court specifically rejected the APWU's Article 19 argument, pointing out that there is no language in the ELM or Article 19 that even suggests that ELM violations are grievable by probationary employees. Id. Even if there were, the language of Article 19 states that nothing in postal handbooks or manuals shall conflict with the National Agreement. Id. Therefore, the clear language of Article 12 must take precedence.

In sum, the Fourth Circuit recognized the Union's argument for what it is -- "a back door" attempt to obtain access for probationary employees to the grievance arbitration procedure, and rejected that argument in its entirety.

In USPS v. APWU, 922 F 2d 256, (5th Cir. 1991), the APWU sought to grieve the separation of a probationary employee on the ground that the Postal Service separated the employee due to a compensable work-related injury, in violation of the Federal Employees Compensation Act (FECA), and postal regulations implementing FECA. Postal Service Exhibit 3 (USPS v. APWU, 922 F.2d 256 (5th Cir. 1991). Again, the APWU argued that despite the Article 12 prohibition, such alleged violations were grievable because Article 19 incorporated them into the National Agreement. Id. at 259. The arbitrator found

the grievance to be arbitrable. Id. The district court vacated the award, and the Fifth Circuit affirmed on the grounds that the language of Article 12.A.1 is clear and unequivocal, and that the Agreement denies the probationary employee "any right to resort to grievance and arbitration procedures. Id. "Article 12 does not permit the arbitrator to ever reach the question of arbitrability when the dismissal at issue involves probationary employees." Id. at 260.

In APWU v. USPS, 940 F. 2d. 704 (DC Cir. 1991), the APWU unsuccessfully attempted to use Article 2, Non-Discrimination and Civil Rights, to gain access to the grievance-arbitration procedure for probationary employees. Article 2.3 specifically states that grievances arising under that article may be filed at Step 2. Id. at 705. The DC Circuit rejected that attempt as well, concluding that although Article 2 of the National Agreement expressly allows the grievance and arbitration of disputes arising under that provision, probationary employees have no access because Article 12 denies them such access. Id. at 707. Article 12 "permits the USPS to dismiss any probationary employee regardless of its reason for doing so without breaching the collective bargaining agreement." Id. The Court further held that the purpose of the probationary period is to permit an employer to evaluate a new employee on a trial basis and terminate him for whatever reason it chooses during such period. Id. The purpose of the probationary period would be undermined if probationary employees were allowed to enforce the just-cause requirement of Article 16. Id.

2. National Arbitration Award – Zumas 1985

In 1985, Arbitrator Nicholas Zumas issued the first national level arbitration award interpreting the Article 12.1.A prohibition.  (Award No. H1C-4C-C 27351/2 September 23, 1985).  That case involved two employees who were discharged during their probationary period.  They filed grievances alleging discrimination, in violation or Article 2, and retaliation for filing workers' compensation claims.  Significantly, Article 2, which prohibits discrimination on the basis of handicap, specifically provides that "[g]rievances arising under this Article may be filed at step 2 of the grievance procedure. . ."

Arbitrator Zumas concluded the grievances were not arbitrable and dismissed them.    He stated that "Article 12.1.A, in clear, unqualified, unrestricted, and all-encompassing language, denies probationary employees access to the grievance-arbitration process if they are terminated for any reason during the probationary period."  In order to enforce the contractual rights contained in Article 2, an employee must successfully complete the probationary period.  As Arbitrator Zumas stated, "[t]here is simply no contractual basis that would warrant a conclusion that the Article 12.1A exception has application only to 'just cause" terminations.".[3]

_____

[3] Arbitrator Zumas subsequently issued a regional arbitration award in Case No. N1C-1E-D 27209, dated September 28, 1984 in which Article 12.1.A was discussed.  The issue in that case was whether the Grievant was notified of his termination prior to the expiration of his probationary period.  Although ELM

Again, the grievance in the case at bar, satisfies the prerequisites articulated by Arbitrator Zumas. The present grievance involves the separation, on 01-30-98, during the 90-day probationary, of an employee who was, at the time of that separation, still a probationary employee. As such, this case falls squarely within the ambit of the clear contractual prohibition of Article 12.1.A given jurisprudential recognition in the Court's decision.

Significantly, the Zumas award also disposed of the union contention in that case, also present in today's case, that the grievance regarding a probationary separation was arbitrable, based upon an allegation of discrimination. Zumas agreed with Arbitrator Levin, that such a claim was barred from adjudication within the grievance arbitration procedure, based upon the unequivocal language of Article 12.1.A

> In case no. N1T-1E-D 29164, Arbitrator Levin held:
>
> Article 2 clearly states the position of the parties with regard to non-discrimination and Civil Rights. But to enforce such rights through the grievance procedure, an employee must have passed the probationary period. No exception is made for probationary employees and there is no basis to imply the existence of such an exception.

---

365.32 was referred to by Arbitrator Zumas, he did not conclusively hold that all the elements of that section must be complied with in order to effectuate a probationary separation. To the contrary, he stated that "[i]t is noted that there is no requirement that the probationary employee be notified in writing of such termination; and oral terminations of probationary employees have been upheld in several prior awards." [Emphasis added]. Although he did find the grievance to be arbitrable, his conclusion was based on his finding that "the Grievant was not

3. National Arbitration Award – Das 2001

Finally, in National Case No. Q98C-4Q-C 99251456, decided on

September 10, 2001, Arbitrator Das  definitively addressed " whether Article

12.1.A  [...] precludes a probationary employee and the Union from grieving that

the employee's separation did not comply, in one or more respects, with [...] ELM

provisions. Or put a different way, whether Article 12.1.A permits a probationary

employee and the Union to grieve that a separation action taken by the Postal

Service was not a "separation", for purposes of Article 12.1.A, because the Postal

Service did not comply in one or more respects with the ELM provision."

That case arose under the 1998-2000 National Agreement between the

American Postal Workers Union (APWU) and the Postal Service.  The National

Association of Letter Carriers (NALC) intervened in support of the position taken

by the APWU.  The dispute involved the interpretation of Article 12.1.A of the

National Agreement, which provides as follows:

> The probationary period for a new employee shall be ninety (90)
> calendar days.  The Employer shall have the right to separate from
> its employ any probationary employee at any time during the
> probationary period and these probationary employees shall not be
> permitted access to the grievance procedure in relation thereto.  If
> the  Employer  intends  to  separate  an  employee  during  the
> probationary period for scheme failure, the employee shall be given
> at least seven (7) days advance notice of such intent to separate the
> employee.  If the employee qualifies on the scheme within the notice
> period, the employee will not be separated for prior scheme failure.

notified, in writing or otherwise, of his separation prior to the end of the
probationary period. . . . "  Id.    [emphasis added]

As in the case at bar today, in <u>Das</u>, the Unions had asserted that a grievance over whether the Postal Service has actually effectuated a separation of an employee during his or her probationary period is subject to the grievance-arbitration procedure.  More particularly, the Unions maintained that Section 365.32 of the Employee and Labor Relations Manual (ELM) sets forth four procedural requirements for effectuating the separation of a probationary employee, and that the Union may file a grievance that challenges whether those separation procedures were followed.

As in the case at bar today, the Postal Service maintained that Article 12.1 clearly denies a probationary employee access to the grievance procedure to challenge his or her separation on any grounds, including alleged noncompliance with Section 365.32 of the ELM.

As in the case at bar today, in <u>Das</u> , the principle provisions of Section 365.32 of the ELM cited by the Unions provided as follows:

365.3  Separations - Involuntary

\*     \*     \*

365.32  Separation-Disqualification
     (S-Disqual)

365.321  Applicability

This type of separation applies only to employees who have not completed their probationary period, except where the separation is caused by a finding that employees who have completed the probationary period have failed to meet certain conditions attached to their appointment.

365.323 Probationary Period

Separation-disqualification must be effected during the probationary period except as provided in 365.321. Action is initiated at any time in the probationary period when it becomes apparent that the employee is lacking in fitness and capacity for efficient service. Any separation based on disqualification not effected during the probationary period, as provided in 365.321, even though the action is based on unsatisfactory performance during the probationary period, must be effected as a removal.

*    *    *

365.325  Who Initiates Action

Supervisors may recommend separation-disqualification, but such recommendations must be referred for decision to the official having authority to take the action.

365.326  Procedure in Separating

If an appointing official decides to terminate an employee who is serving a probationary period due to conditions arising prior to appointment, or because work performance or conduct during this period fails to demonstrate fitness or qualification for continued postal employment, the employee's services are terminated by notifying the employee in writing why she or he is being terminated and the effective date of the action. The information in the notice regarding the termination must, at a minimum, consist of the appointing official's conclusions as to the inadequacies of performance or conduct.

365.327  Effective Date

The effective date of separation by disqualification must be before the end of the probationary period but may not be retroactively effective. The notice of separation must be given to the employee before the end of the probationary or trial period.

Article 19 of the National Agreement provides that:

Those parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours, or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement, and shall be continued in effect except that the Employer shall have the right to make changes that are not inconsistent with this Agreement and that are fair, reasonable, and equitable. This includes, but is not limited to, the Postal Service Manual and the F-21, Timekeeper's Instructions.

Notice of such proposed changes that directly relate to wages, hours, or working conditions will be furnished to the Union at the national level at least sixty (60) days prior to issuance.... At the request of the Union, the parties shall meet concerning such changes. If the Union, after the meeting, believes the proposed changes violate the National Agreement (including this Article), it may then submit the issue to arbitration....

Citing the 1985 National Arbitration decision by Zumas and the 1991 Fifth Circuit court of appeals decision in APWU v. USPS, 940 F.2d 704 (D.C. Cir. 1991), as instructive, Das held:

[...]a probationary employee and the Union cannot resort to the grievance procedure to challenge a separation on the grounds that the separation violated some other valid provision of the National Agreement. Thus, even if Article 19 incorporates the provisions of Section 365.32 of the ELM into the National Agreement, and even if those provisions do not conflict with Article 12.1.A, that does not provide a contractually valid basis on which to disregard Article 12.1.A's broad prohibition on access to the grievance procedure.

Similarly, even accepting the Union's contention that the parties negotiated Article 12.1.A in 1971 with the implicit understanding that the separation procedures in the Post Office Manual (later included in the ELM) would continue to apply to the separation of probationary employees, it does not follow that they intended to permit probationary employees to grieve alleged violations of those procedures. The broad sweep of the language they agreed to, in my opinion, compels a finding that the prohibition on access to the grievance procedure applies equally to such procedural challenges.

Not permitting a probationary employee to grieve a procedural defect in the processing of his or her separation is fully consistent with the evident purpose of Article 12.1.A, which is to permit the Postal Service to elect to separate a probationary employee before that employee attains permanent employee status without having to defend its action in the grievance procedure. The Unions have not established a convincing contractual basis on which to conclude that, notwithstanding the broad language in Article 12.1.A, the parties agreed to permit procedural attacks on such separations in the grievance procedure.

I recognize that, starting in the late 1970's, many regional arbitrators have applied the ELM provisions and, when they have found violations, have upheld grievances challenging the separation of probationary employees. Since Arbitrator Zumas' 1985 National Arbitration decision, however, there have been a number of regional decisions that have found such grievances not to be arbitrable.

My review of the cases indicates that, like the recently vacated Miles award, many of the regional decisions that ruled in the Unions' favor on arbitrability did so on the basis that, as Arbitrator Miles put it, the ELM provisions are "every bit a part of the Agreement, pursuant to Article 19, as is Article 12, Section 1". What is missing in these decisions is a convincing analysis that gets around the prohibition on access to the grievance procedure set forth in Article 12.1.A. Even assuming that the National Agreement requires the Postal Service to comply with the ELM provisions — just as it requires the Postal Service not to discriminate on the basis of handicap (Article 2) and not to retaliate against employees for filing workers compensation claims (Article 21) — Article 12.1.A bars access to the grievance procedure "in relation" to the separation of a probationary employee.

Das held that " Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM" and that only "[a] dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.

Based upon Arbitrator Das' edict, the case at bar today is clearly not arbitrable because the present grievance involves the separation, on 01-30-98, during the 90-day probationary, of an employee who, at the time of the separation, had reached only day 70 of her probationary period. As such,

on 01-30-98, she was still a probationary employee. Accordingly, this case falls squarely within the ambit of the clear contractual prohibition of Article 12.1.

There is no real dispute that action was taken by the Postal Service on 01-30-98 to separate the Grievant from Postal employment. The employee was called into the office on the 70th day of her probation by her supervisor. She was informed that she was being terminated, her Postal Identification badge was taken, her probationary evaluation form was completed in her presence indicating that her work was unacceptable. She was instructed by management to clear her locker; she was walked off postal premises; and her probationary training period was effectively put to an end. She was not permitted by Management to complete the probationary training period. ~~The only dispute raised by the Union is whether or not that action "~~

Moreover, consistent with Arbitrator Das' opinion, any requirement for written notice, (such as set forth in ELM ~~section~~ ) could only be enforced against the Postal Service, where the separation occurred after the passage of the 90-day period. Because the management action to separate the Grievant occurred on the 70th day of her probation, such a requirement cannot and should not be enforced against the Postal Service in the present case.

C. The Union Has Repeatedly Failed To Establish That
   The Cited ELM and Other Provisions Supercede
   The Clear And Unequivocal Language Of Article 12.1.A

The Union has the burden of proof in this case to prove the grievance arbitrable, and they have failed to meet that burden. The Union relies in the case at bar today on the same arguments they unsuccessfully advanced before the Fourth Circuit, and in National Level Arbitrations before Arbitrators Zumas and Das.

Specifically, the Union argues that the cited ELM provisions contain the procedural requirements for "effectuating" the separation of a probationary employee. The Union further claims that Article 19 of the National Agreement, entitled Handbooks and Manuals[4], incorporates Postal Service handbooks and manuals, into the National Agreement. According to the Union, ELM violations are therefore grievable because ELM violations are also violations of the National Agreement.

As such, the Union claims that if all the elements of ELM are not satisfied, the probationary employee's separation has not been effectuated, by an "official letter from personnel" and the Postal Service is required to issue a removal notice, subject to the just cause provisions of Article 16 and grievance-arbitration procedure.

---

[4] Article 19 provides that "[t]hose parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours or working

This Article 19 argument is fundamentally flawed and blatantly ignores the plain meaning of the Article 12.A.1 language. Even assuming, arguendo, that Article 19 incorporates the ELM into the National Agreement, as the Fourth Circuit stated,

> there is no language in either the ELM or in Article 19 that even suggests ELM violations are grievable by probationary employees. Further, even if there were any hint in the ELM that probationary employees could grieve ELM violations, this hint would run smack into Article 12. And Article 19 unequivocally states that Postal Service handbooks and manuals "shall contain nothing that conflicts with this Agreement."

204 F.3[d] at 528

Therefore, the claim that the ELM somehow provides probationary employees with the right to grieve the manner in which they are separated is directly contrary to the clear, unequivocal language of Article 12.A.1, which expressly denies probationary employees such access.

In addition, the Union's argument that the alleged definition of "separation" has been in existence since the first issue of the Postal Manual, and continues through the current ELM ignores the parties' very significant negotiations history.[5] As discussed above, the blanket prohibition of Article 12.1.A was negotiated by

---

conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement. . . "

[5] The provisions of the Postal Manual were incorporated wholesale into the ELM, and continued in the ELM, even after bargaining began, because they apply to *non-bargaining* unit employees.

the parties at the same time that the parties negotiated a substantially shorter probationary period. The quid pro quo for the Postal Service's agreement to shorten the probationary period was the Union's agreement that the Postal Service has the right to separate a probationary employee during the probationary period without such employee having access to the grievance procedure in relation to such separation.

Finally, the Union's argument that compliance with the cited ELM provisions within the 90-day period is required to effectively 'separate' the probationary employee has been nullified by Arbitrator Das' National Level Award.

To uphold the Unions' position in the present case, would clearly contravene Federal Court precedent and National Arbitration awards to the contrary. To do so would clearly deny the Postal Service the benefit of its bargain with the Unions. It would only serve to open the floodgates to endless numbers of grievances concerning alleged procedural violations, and would undermine and render meaningless the language of Article 12.1.A and the clear language in article 15.5.A.6 limiting the decisions of arbitrators to the terms and provisions of the Agreement.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, it is requested that the grievance be denied as inarbitrable.

Respectfully submitted,

Anthony Waters, J.D.
Acting Manager, Labor Relations
U.S. Postal Service
Philadelphia Performance Cluster