EXHIBIT B TO MEMORANDUM IN SUPPORT OF THE POSTAL SERVICE'S MOTION FOR SUMMARY JUDGMENT

DECLARATION OF VIVIAN T. BARNETT
06cv00793 RJL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES POSTAL SERVICE )
        Plaintiff/ )
        Counter-Defendant )
         )
v.          ) Civil Case No. 1:06-CV-00793-RJL
         )
AMERICAN POSTAL WORKERS ) DECLARATION OF
UNION, AFL-CO ) VIVIAN T. BARNETT
         )
        Defendant/ )
        Counter-Plaintiff )
_____ )

    Pursuant to 28 U.S.C. §1746, I, Vivian T. Barnett, declare that the following statements are true and correct:

    1.     I am currently employed by the United States Postal Service as a Supervisor, Computer Forwarding in the Philadelphia, PA Performance Cluster and have held this position since 1984. From 1979 until 1984, I held the position of Computer Forwarding Clerk at the same location.

    2.     As Supervisor, Computer Forwarding, I am responsible for a staff of up to 20 Computer Forwarding Clerks who perform work related to the forwarding of mail which is undeliverable as addressed. My duties, as they relate to the employees under my supervision, include training new employees; overseeing and supervising work performed by clerks in the Computer Forwarding unit; and completing periodic performance evaluations of new and existing employees.

    3.     Newly-hired bargaining unit employees are required to serve a 90-day probationary period pursuant to Article 12.1.A of the collective bargaining agreement between the United States Postal Service and the American Postal Workers Union, AFL-CIO ("APWU"). See Declaration of Anthony J. Waters ("Waters Decl."), Exhibit 1 (Article

12.1.A.) A probationary employee's work performance is generally evaluated by a supervisor on the thirtieth, sixtieth, and eightieth days of the probationary period. The supervisor marks appropriate ratings of various work performance factors on a Postal Service Form 1750, Employee Probationary Period Evaluation Form ("Form 1750"), for each identified period and discusses the evaluation with the employee. Id. at Exhibit 5, p. 16 (Daliessio Form 1750). At the conclusion, the employee is asked to initial the Form 1750 to indicate an evaluation discussion has taken place. Id.

4. Among the employees I have supervised is Lorraine G. Daliessio, who worked as a Part Time Flexible Mark-Up Clerk in the Computer Forwarding unit, during Tour 3, which begins at 4:30 pm and ends at 1:00 am. Id. at Exhibit 5, p. 14 (Daliessio Form 50, Notification of Personnel Action.) Ms. Daliessio was hired by the Postal Service on November 22, 1997, and as is true of all postal bargaining unit employees, Ms. Daliessio was required to serve a 90-day probationary period, which would have ended on February 19, 1998. Id.

5. On December 30, 1997, I conducted a 30-day evaluation of Ms. Daliessio's work performance using a PS Form 1750 and met with Ms. Daliessio to discuss her evaluation. Id. at Exhibit 5, p. 16 (Daliessio Form 1750.) I explained to Ms. Daliessio that her work performance with regard to the two key factors - work quantity and work quality - was unacceptable. Id. With regard to the remaining factors (dependability, work relations, work methods and personal conduct), I rated Ms. Daliessio's performance satisfactory. Id. Ms. Daliessio initialed the Form 1750 at the conclusion of the evaluation discussion, confirming that she received her 30-day evaluation. Id.

6. Approximately two weeks later, on or about January 15, 1998, I informed Ms. Daliessio that her performance with regard to work

2

quantity and work quality had not yet improved, and if it did not improve within two weeks, she would likely be terminated. *See* Waters Decl. at Exhibit 8, p. 23 (Daliessio Statement.) Sometime shortly before January 30, 1998, my supervisor, Herman T. Cockrell, Manager, Computer Forwarding, and I discussed Ms. Daliessio's work performance. We agreed that her work performance had not improved and her employment with the Postal Service would be terminated.

7. Towards the end of the Tour 3 shift, which began at 4:30 pm on January 30, 1998, and ended at 1:00 am on January 31, 1998, I called Ms. Daliessio into my office. *Id.* at p. 24. I informed her that I had completed her 60-day evaluation and showed her the completed Form 1750. *Id.* I explained that her performance with regard to work quality and work quantity had not improved and remained unsatisfactory, and that she did not meet the criteria for remaining in her position. *Id.* I showed her that on the Form 1750 I had checked the "no" box in response to the question "Would You Recommend This Person For Retention or Rehire," and informed her that she was being terminated from her position with the Postal Service, effective immediately. *Id.* I offered her the option of resigning from her position, rather than being fired, but Ms. Daliessio told me she would not resign. I then clearly informed her that her employment with the Postal Service was terminated immediately. Ms. Daliessio refused to initial the Form 1750, confirming our discussion, and I noted this in the box where she was to have initialed. *Id.*

8. I further explained to Ms. Daliessio that because her postal employment had just been terminated, she should no longer report for duty and that she had to empty her locker, and surrender to me both her locker key and employee access badge. *Id.* Ms. Daliessio emptied her locker and gave me the key, after which I escorted her to the exit

3

door, where she surrendered to me her employee access badge and left the postal facility. *Id.* Ms. Daliessio did not report for work after I informed her during her shift beginning on January 30, 1998, that she was terminated from her position with the Postal Service, effective immediately.

9. Generally, in the Computer Forwarding unit, after the verbal termination of a probationary employee, the supervisor sends a letter to the local Labor Relations office informing them of the removal and effectively requesting that they prepare a letter to the separated employee, for the supervisor's signature, confirming the employee's separation. I prepared such a letter, dated February 4, 1998, indicating that Ms. Daliessio had been terminated on January 30, 1998, and requesting that Labor Relations initiate action to remove Ms. Daliessio from the rolls effective January 30, 1998. *See* Waters Decl. at Exhibit 5, p. 17 (February 4, 1998, letter from Vivian Barnett to Charles Polk, Manager, Labor Relations.) My supervisor, Mr. Cockrell, also signed the letter, in concurrence. *Id.*

10. A draft, form letter to Ms. Daliessio confirming her earlier separation was prepared by a Labor Relations Specialist and provided to me for signature. *Id.* at p. 9 (February 20, 1998, letter confirming Grievant's January 30, 1998, separation.) After I signed the letter the Labor Relations office sent the letter to Ms. Daliessio via certified mail. *Id.* at p. 10 (copy of certified envelope stamped "unclaimed.") Two delivery attempts were made -- one on February 25th, and the other on March 2nd; however, neither attempt was successful because Ms. Daliessio failed to claim the letter. *Id.* Ultimately, a Labor Relations Specialist directed the carrier who serviced Ms. Daliessio's route to deliver an identical, first class letter to Ms. Daliessio's address of record. The carrier did so on March 21, 1998,

4

and signed a statement confirming this. Id. at p. 12 (Carrier Statement.)

11. The APWU initiated a grievance challenging Ms. Daliessio's termination (APWU Grievance No. 981234). Id. at p. 6 (Grievance Appeal Form.) Representing the Postal Service at Step 1 of the grievance process, I met with Ms. Daliessio and an APWU representative on March 30, 1998. During that meeting, the union representative alleged that Ms. Daliessio had been improperly separated because the Postal Service did not give her a written termination letter prior to the expiration of her probationary period. The union representative further claimed that this violated ELM 365.32, and therefore, Ms. Daliessio's separation was not effectuated. Id. I denied the grievance, and the APWU appealed the matter to Step 2 of the grievance procedure. Id.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 5/7/07

*Vivian J. Barnett*
Vivian T. Barnett

5