EXHIBIT E TO MEMORANDUM IN
SUPPORT OF THE POSTAL SERVICE'S
MOTION FOR SUMMARY JUDGMENT

DEFENDANT APWU'S MOTION TO DISMISS
AND CROSS-MOTION FOR SUMMARY JUDGMENT
IN USPS v. APWU, 01-1704

06cv00793 RJL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States Postal Service     )
                                 )
        Plaintiff,               )
                                 )
    v.                           )     CA No. 1:01CV01704 CCK
                                 )
American Postal Workers Union,   )
AFL-CIO                          )
                                 )
        Defendant.               )
_____)

## DEFENDANT'S MOTION TO DISMISS, AND CROSS MOTION FOR SUMMARY JUDGMENT OF THE AMERICAN POSTAL WORKERS UNION, AFL-CIO

Defendant/Counter-Plaintiff American Postal Workers Union, AFL-CIO ("APWU") respectfully moves the Court, pursuant to Rule 12(b)(6) to dismiss the Complaint of Plaintiff United States Postal Service ("Postal Service"), and pursuant to Rule 56 (a) of the Federal Rules of Civil Procedure, to enter an order granting summary judgment in favor of the APWU enforcing the May 8, 2001 arbitration award issued by Arbitrator Fred D. Butler ("Butler Award") and directing Plaintiff/Counter-Defendant Postal Service ("Postal Service") to comply with that Award. There are no genuine issues of material fact, and the APWU is entitled to judgment as a matter of law.

In support of this motion to dismiss and for summary judgment, the APWU has included a Memorandum of Points and Authorities, a separate Statement of Material Facts in accordance with L. Cv. R. 7.1(h), and a proposed order.

Dated: 8/30/02

Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By: _____
Darryl J. Anderson (D.C. Bar No. 154567)
1300 L Street, Suite No. 1200, NW
Washington DC 20005
(202) 898-1707/ (202) 682-9276 (FAX)

Attorneys for American Postal Workers Union
AFL-CIO

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States Postal Service )<br><br>Plaintiff, )<br><br>v. )<br><br>American Postal Workers Union, )<br>AFL-CIO )<br><br>Defendant. ) | CA No. 1:01CV01704 CCK |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, AND CROSS MOTION FOR SUMMARY JUDGMENT OF THE AMERICAN POSTAL WORKERS UNION, AFL-CIO**

**I.    INTRODUCTION**

The legal standard for judicial review of arbitration awards is among the narrowest in the law. United Paperworkers International Union v. Misco, Inc., 484 U.S. 29 (1987); Major League Baseball Players Association v. Garvey, 532 U.S. 504, 510. In this case, the Employer, the United States Postal Service ("USPS" or "the Postal Service") agreed with the American Postal Workers Union, AFL-CIO ("APWU" or "the Union"), as part of the parties' collective bargaining agreement, that issues of arbitrability may be decided by arbitrators, not by the courts. Furthermore, the parties mutually submitted the question of arbitrability to the Arbitrator in this case. This distinguishes this case from cases in which an employer may refuse to arbitrate the substance of a grievance on the ground that it is not properly within the jurisdiction of the arbitrator. See AT&T Technologies Inc., 475 U.S. 643, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986); See Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co., 442 F.2d 1234, 1236 (D.C. Cir. 1971)("In

determining the scope of an arbitrator's authority we look to two sources: the collective bargaining agreement, and the submission of the parties to the arbitrator.").

Arbitrator Butler in this case made specific findings of fact which, if true, or if accepted as final and binding, give Arbitrator Butler jurisdiction to hear the merits of the Union's grievance. The Employer now asks this Court to disregard Arbitrators Butler's findings of fact, to make its own findings of fact, and to substitute the Court's judgment for the judgment of Arbitrator Butler. As we show below, it is the judgment of Arbitrator Butler that the parties agreed to accept as part of their collective bargaining agreement. There is no legal basis for disturbing Arbitrator Butler's findings of fact or his conclusion that he has jurisdiction to hear the Union's safety and health grievance.

II.  **STATEMENT OF FACTS**

A.  **Applicable Contractual Provisions**

The APWU and the Postal Service are parties to a nationwide collective bargaining agreement covering terms and conditions of employment for all postal employees in the bargaining unit represented by the APWU ("the National Agreement"). Complaint for Declaratory and Injunctive Relief (hereinafter "Complaint"), at ¶ 5. The relevant collective bargaining agreement in this case is the National Agreement covering the time period between November 21, 1998 and November 20, 2000 ("the National Agreement"). Id and Exhibit 1 attached thereto.

The 1998 National Agreement sets forth a comprehensive grievance and arbitration procedure to address disputes concerning the terms and condition of employment of postal employees. See Exhibit 1   Disputes over discharges are subject to the parties'

2

comprehensive grievance-arbitration procedure, set out in Article 15. A true and correct copy of Article 15 of the 1998 National Agreement is attached to Complaint in Exhibit 1. Article 15, Section 1 of the 1994 National Agreement states that "[a] grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours and conditions of employment." Id. Article 15, Section 5.A.9. of the National Agreement states in relevant part:

> . . . Any dispute as to arbitrability may be submitted to the arbitrator and be determined by such arbitrator. The arbitrator's determination shall be final and binding.

Article 15, Section 5.A.6 of the National Agreement states, in relevant part:

> All decisions of an arbitrator will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator. Id.

Article 12, Section 1.A governs terminations for probationary employees. A true and correct copy of Article 12, Section 1.A of the 1998 National Agreement is attached to Complaint in Exhibit 1. It reads:

> The probationary period for a new employee shall be ninety (90) calendar days. The employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto. Id. at ¶ 4 and Exhibit 3 attached thereto. If the Employer intends to separate an employee during the probationary period for scheme failure, the employee shall be given at least seven (7) days advance notice of such intent to separate the employee. If the employee qualifies on the scheme within the notice period, the employee will not be separated for prior scheme failure. Id.

Article 14 of the National Agreement concerns safety and health provisions. A true and correct copy of Article 14 of the National Agreement is attached to the Complaint in Exhibit 1. It provides:

3

### Section 1. Responsibilities

It is the responsibility of management to provide safe working conditions in all present and future installations and to develop a safe working place. The Union will cooperate to develop a safe working force. The Union will cooperate with and assist management to live up to this responsibility . . .

### Section 2. Cooperation

The Employer and the union insist on the observance of safe rules and safe procedures by employees and insist on correction of unsafe conditions. Mechanization, vehicles and vehicle equipment and the work place must be maintained in a safe and sanitary condition, including adequate occupational health and environmental conditions . . . Id.

B. **The Employer Ordered Mr. Ford To Operate An Unsafe Vehicle, And Then Discharged Him When The Vehicle Malfunctioned**

Mr. Edward Ford, who is a veteran, entered the Postal Service on June 17, 2000. See Exhibit 4 attached to Complaint, at p. 1. On Sept. 8, 2000, the Postal Service assigned Mr. Ford to drive a postal vehicle around the Los Angeles Processing and Distribution Center to pick up trash. Id. at 4. The vehicle in which Mr. Ford was assigned to perform this task was so unsafe that, when it was last inspected on Jan. 26, 2000, supervisor Bryant had ordered that the vehicle be used only on the Postal Service lot, inasmuch as it was too unsafe to be used on public streets. See Vehicle Inspection Report, PS Form 4543 dated January 26, 2000, attached hereto as Exhibit A. A Postal Service inspection report dated January 12, 2000, under the heading "indicate possible trouble," reported:

  (1) Dead Battery

  (2) Starter Broken

  (3) Brakes Bad!!!

-4-

*[handwritten: admission that grievant left vehicle running]*

(4) Check Leakage.

<u>See</u> Vehicle Repair Tag dated January 12, 2000, attached hereto as Exhibit B. While performing his assigned task of picking up trash using this vehicle with bad brakes and a broken starter, Mr. Ford left the vehicle with the motor running. While Mr. Ford was out of the vehicle, it rolled backward striking and damaging the exit door of the postal facility and damaging the rear of the vehicle itself. <u>See</u> Exhibit 4, attached to Complaint, at p.4.

The response of the Postal Service to this incident is summarized by Arbitrator Butler (opinion at 4) as follows:

> Ford was terminated by letter from Willie Campbell Jr., Manager Maintenance, Los Angeles Processing and Distribution. The reasons given for his termination are that he committed an unsafe act while operating (to) Postal Vehicle. (JE-2, pg. 4) The termination was effective on 89th day of his required 90-probationary period. Ford's immediate supervisor had already recommended him for permanent status. (JE-2, pg. 5).

*[handwritten: typo]*

**C. Arbitrator Butler Found That The Union Grievance Is Based On An Alleged Article 14 Safety And Health Violation, Not On Ford's Discharge, And Held That The Union Is Entitled To Present Its Case On The Merits**

    **1. Arbitrator Butler Distinguished Between The Article 14 Safety Grievance In This Case And Grievances Challenging Discharges Of Probationary Employees**

In his findings of Fact, Arbitrator Butler found (Opinion at 4-5):

> The Union filed a grievance on the [matter] stating that Management violated the employee's safety rights. This matter was heard through a step 2 process and was denied by Management. (JE-2, pg.2)

Then, in the "Decision" section of his Opinion (Opinion at 8), Arbitrator Butler distinguished this situation from one in which the Union challenges a discharge on the ground that it is without just cause:

> In this matter, it is either true or not true that Management allowed an unsafe

5

situation to occur in violation of the CBA or its own rules. The same can be true as to whether or not the action taken against Ford was based on that action.

If the termination had been grieved as a discipline matter, the question of the applicability of Article 12.1, A would have been more definitive and concrete. However from the reading of the grievance in this matter, **the Union filed it's grievance based on a contract violation concerning Health and Safety.**
...
[Emphasis added here.]

## 2. Arbitrator Butler Has Not Ruled On The Merits Of The Grievance, And Has Not Decided Whether Reinstatement Of Ford Would Be An Appropriate Remedy If The Grievance Is Sustained

The Postal Service's Complaint in this case treats Arbitrator Butler's decision as if it were a ruling that a probationary employee may challenge his discharge through the grievance-arbitration procedure. That is not this case. Unlike the case relied upon by the Postal Service in its Complaint, and unlike the other cases referenced below, this case involves a grievance concerning a violation that occurred <u>before</u> the discharge of Mr. Ford. The violation at issue is the failure of the Postal Service to correct serious safety defects in the motor vehicle used on postal premises and the assignment of the vehicle to Mr. Ford for the purpose of trash collection around the postal facility.

Arbitrator Butler has expressly reserved judgment on the question whether, if he finds an Article 14 violation of safety and health requirements, a necessary or appropriate remedy would require the reinstatement or otherwise affect the employment status of Mr. Ford. Thus, in his Opinion (at 8) Arbitrator Butler held:

> This type of contract violation grievance places the burden of moving forward and the burden of proof on the Union to show that Management violated the CBA or Postal Services procedures and that this violation had an adverse effect on it's member. If the Union does not meet its burden, the

6

matter is closed. If however the Union proves that Management caused the violation, it would appear that the Union would have a strong argument for corrective action including a request that Management reconsiders any action taken against employees who were innocent of any wrongdoing. However in order to resolve the matter the grievance must be heard.

 Therefore, Article 12.1A does not preclude the question raised by the Union as to whether the Postal Service created a health and safety issue in violation of the CBA or other procedures and the impact if any that the violation had on the termination of Ford is a subject for Arbitration.

 The grievance filed in this should be scheduled for a hearing on the above question.

Arbitrator Butler's reference to the fact that the burden of proof will be on the Union to prove its case and establish its right to a remedy serves to accentuate the Arbitrator's holding that this is not a grievance challenging discipline. In discipline cases, the burden of going forward, and the ultimate burden of proof, is on the employer.

## III. ARGUMENT

### A. The Standard of Judicial Review in Assessing Enforcement of Arbitration Awards

The Supreme Court has repeatedly emphasized that the standard for judicial review of labor arbitration awards is extremely narrow, in fact, it is "among the narrowest known to the law." Union Pac. R.R. v. Sheehan, 439 U.S. 89, 91, 99 S.Ct. 399 (1978).[1] In 1987,

---

[1] Section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b), authorizes the district courts to enforce or vacate arbitration award entered pursuant to a collective bargaining agreement. American Postal Workers Union v. United States Postal Service, 827 F. Supp. 836, 838 (D.D.C. 1993), citing W.R. Grace & Co. v. Local 759, International Union of United Rubber, 461 U.S. 757, 764 (1983). Section 1208(b) is the postal analogue of Section 301(a) of the Labor-Management Relations Act of 1947, 29 U.S.C. § 185(a), the statute under which non-postal labor arbitration awards are enforced. Courts regularly rely on precedent under Section 301(a) in deciding cases under Section 1208(b). National Asso. of Letter Carriers v. United States Postal Service, 590 F.2d 1171, 1174-75 (D.C. Cir. 1978).

in <u>United Paperworkers International Union, AFL-CIO v. Misco, Inc.</u>, 484 U.S. 29; 108 S.Ct. 364 (1987), the Supreme Court observed that it had

> made clear almost 30 years ago that the courts play only a limited role when asked to review the decision of an Arbitrator. The courts are not authorized to reconsider The merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." [484 U.S. at 36]... "Because the parties have contracted to have disputes settled by an Arbitrator chosen by them rather than by a judge, it is the Arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. ... To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. .... Furthermore, it must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining. It is through these processes that the supplementary rules of the plant are established." [484 U.S. at 37-38]

In reversing the decision of a Court of Appeals which had vacated an arbitration award, the <u>Misco</u> Court observed: "no dishonesty is alleged; only improvident, even silly, fact-finding is claimed. This is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts."

In a much more recent decision, the Supreme Court focused particularly on the role of courts in reviewing factual findings by Arbitrators. <u>Major League Baseball Players Association v. Garvey</u>, 532 U.S. 504, 509-510, 121 S.Ct. 1724 (2001)(<u>per curiam</u>). The Court reversed a Court of Appeals decision in which the Court of Appeals had substituted its own findings of fact for those of the arbitrator. The Supreme Court, citing <u>Misco, supra</u>, held:

> Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement... When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the Arbitrator's "improvident, even silly, factfinding" does not provide a basis for a reviewing court to refuse to enforce the award. [Citations omitted.]

8

Likewise, "[t]he question of interpretation of the collective bargaining agreement is a question for the arbitrator." Cole v. Burns Int'l Sec. Serv., 105 F.3d 1465, 1474 (D.C. Cir. 1997). "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract the courts have no business overruling him because their interpretation of the contract is different from his." Id. The Court in American Postal Workers Union, citing W.R. Grace & Co. v. Local Union 759, International Union of United Rubber Workers, 461 U.S. 757, 764, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983), also reiterated the highly deferential standard for assessing whether to enforce the judgement of arbitrators enunciated in Enterprise Wheel:

> When the parties include an arbitration clause in their collective bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "draw its essence from the collective bargaining agreement," a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous.

789 F. 2d at 5. Accord United Paperworkers International Union v. Misco, Inc. 484 U.S. 29 (1987). ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.").

Thus, an arbitration award is "the presumptively valid product of collective bargaining." Communication Workers of Am. v. Bell Atlantic-West Virginia, 27 F. Supp. 2d 66, 69 (D.D.C. 1998). The requirement that an arbitrator's decision draw its essence from the collective bargaining agreement is a deferential standard which warrants vacating of the award only in "the narrowest circumstances." Madison Hotel v. Hotel & Restaurant

Employees, Local 25, AFL-CIO, 330 U.S. App. D.C. 212, 144 F. 3d 855, 858-59 (D.C. Cir. 1998); Communication Worker of Am., 27 F. Supp. 2d at 70. "[I]f an arbitrator was 'arguably construing or applying the contract,' a court must defer to the arbitrator's judgment." Madison, 144 F. 3d at 859, quoting Misco, 484 U.S. at 38; Communication Worker of Am., 27 F. Supp. 2d at 70.

B. **The Complaint to Vacate the Butler Award Should be Dismissed Because The Complaint Reveals On Its Face That The Award Does Not Address Mr. Ford's Discharge Arbitration**

Arbitrator Butler, after reviewing APWU's claims, determined that the grievance filed by the APWU was arbitrable based on the issue of alleged safety and health violations by the Postal Service under Article 14 of the National Agreement. He did not rule on the merits of this grievance, nor did he address the question of the propriety of Mr. Ford's discharge. Paragraph 14 of the Complaint alleges:

> The Arbitrator issued an award May 8, 2001. (Attachment 4). Despite clear contractual language to the contrary, the Arbitrator found the Grievance to be arbitrable. He reasoned that Article 12.1.A does not preclude the question of whether the Postal Service created a safety and health situation that violated the National Agreement, and that "impact if any that violation had on the termination of [Grievant] is a subject for arbitration." (Attachment 4 at p.8).

Arbitrators have wide discretion in formulating remedies for grievances. Misco, 484 U.S. at 40-42. If Arbitrator Butler sustains the Article 14 Safety and Health grievance, he will have available a number of possible remedies. He may for example, instruct the Postal Service to repair or stop using the unsafe vehicle, or mandate that the Postal Service act responsibly and comply with the provisions of the Article 14 fo the National Agreement. Arbitrator Butler may also decide that an appropriate remedy would require the Postal Service to "reconsider any action taken against any employees who were innocent of any

10

wrongdoing." (Butler Opinion at 8). Had Arbitrator Butler ruled that Mr. Ford is entitled to reinstatement with the Postal Service, then an argument could have been made by the Postal Service that the Butler Award in fact addresses the discharge of a probationary employee. However, the Butler Award did not specify any such remedy for the APWU concerning the violations of health and safety rights of Mr. Ford or other postal service employees under the collective bargaining agreement. The Arbitrator simply determined the grievance to be arbitrable under Article 14 of the National Agreement.

If a remedy is awarded to the APWU at a future arbitration hearing on the merits of the grievance brought on behalf of Mr. Ford, reinstating him to previous position with the Postal Service, then at that time the Postal Service may decide to contest that award, and may pursue a claim that the award provides probationary employees access to the grievance arbitration procedure on discharge issues. However, at this point of the arbitration, it is premature for the Postal Service to assert any claim to vacate Arbitrator Butler's Award, which does not specify what kind of remedies the APWU is entitled to for violations of the safety and health provisions of Article 14. In fact, the Arbitrator has not even decided whether the grievance is meritorious, as he focused only on the arbitrability of the issue of health and safety violations under Article 14. As any decision on the merits of the APWU's grievance has not yet been rendered, and the Arbitrator never ruled on the issue of a prospective remedy for the APWU, the Complaint should be dismissed.

C. <u>The APWU Is Entitled to Summary Judgment Requiring The Postal Service to Arbitrate The Merits of The Article 14 Safety and Health Grievance</u>

1. The Arbitrator's Decision On Arbitrability Is Entitled to Deference

Under Article 14 of the 1998 National Agreement the Postal Service's responsibility

11

concerning safety and health of its employees include:

### Section 1. Responsibilities

It is the responsibility of management to provide safe working conditions in all present and future installations and to develop a safe working place. The Union will cooperate to develop a safe working force. The Union will cooperate with and assist management to live up to this responsibility . . .

### Section 2. Cooperation

The Employer and the union insist on the observance of safe rules and safe procedures by employees and insist on correction of unsafe conditions. Mechanization, vehicles and vehicle equipment and the workplace must be maintained in a safe and sanitary condition, including adequate occupational health and environmental condition . . .

See Exhibit 1. Arbitrator Butler determined that the APWU grievance was based on a contract violation concerning health and safety. Id. at 8. This Award clearly draws its essence from Articles 12, 14, and 15 of the National Agreement. Arbitrator Butler made a contractual interpretation that the grievance is based on a safety and health issue in violation of Article 14 the National Agreement. He then concluded that Article 12.1.A. of the National Agreement does not preclude the APWU from raising in an Article 15 grievance, the question whether the Postal Service violated the Article 14 of the National Agreement. As the question of Mr. Ford's termination was ancillary to the issue of violations of the safety and health provisions, the APWU has a right to seek remedy for the violation of the requirements of Article 14. This is a perfectly plausible interpretation of the collective bargaining agreement. As the Butler Award draws its essence from the language of the National Agreement, it must be enforced.

In Major League Baseball Players Assoc. v. Garvey, the Supreme Court reversed the Ninth Circuit when it substituted its view of the facts for that of the arbitrator. 532 U.S.

12

504, 510 (2001). The Court held, "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." When an arbitrator resolve disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award." Id. at 509, quoting, Misco, 484 U.S. at 36, 39. Arbitrator Butler made a contractual interpretation that the Ford grievance was arbitrable based on the APWU's claim that the Postal Service had violated the safety and health rights of Mr. Ford under Article 14 the National Agreement. That finding is entitled to deference. As the award draws its essence from the National Agreement, there is no basis for the Court to vacate the Butler Award.

2. **No Prior Judicial Decision Collaterally Estopps The APWU from Seeking to Enforce the Butler Award.**

The Postal Service alleges in its Complaint (¶ 17, at p. 5) that the APWU is collaterally estopped from opposing its motion to vacate the Butler Award by the decision of the United States Court of Appeals for the Fourth Circuit in United States Postal Service v. American Postal Workers Union, AFL-CIO, 204 F.3d 523 (4th Cir. 2000), and other legal precedent.[2] This is incorrect for several reasons.

---

[2] The doctrine of issue preclusion forecloses "relitigation of both issues of law and issue of fact if those issues were conclusively determined in a prior action." United States v. Stauffer Chemical Co., 464 U.S. 165, 170-171, 104 S Ct. 575, 578, 78 L. Ed. 2d 388 (1984); New York Shipping Asso. v. Federal Maritime Com., 854 F.2d 1338, 1360 (D.C. Cir.1988). "An issue of law is "conclusively predetermined" if, in a prior action between the parties, it has been "actually litigated and determined by a valid and final judgment, and the determination is essential to [that judgment." New York Shipping Asso., 854 F.2d at 1360, citing Hastings v. Judicial Conference of the U.S., 829 F.2d 91, 98 ( D.C. Cir. 1987)(quoting Restatement (Second) of Judgments § 27 (1982)).

13

a.  First, we observe that Arbitrator Butler's finding that this case concerns an Article 14 safety and health grievance distinguishes this case from the Fourth Circuit case, and from every other court case involving these parties of which we are aware. In those cases, the contract violations asserted by the Union would not have occurred if there had been no discharge of the employee involved. In the Fourth Circuit case, for example, the Union challenged the discharge of a probationary employee on the ground that the Employer had violated its own contractually enforceable procedures for discharging probationary employees. In contrast, the gravamen of the safety and health violation at issue in this case is not the removal of Mr. Ford, it is the fact that Mr. Ford was required to drive a vehicle that the Employer knew was unsafe. This violation occurred before Mr. Ford's discharge and is independent of that discharge. Certainly, the Union is seeking the reinstatement of Mr. Ford as a remedy for the safety and health violation, but Mr. Ford's removal was at most a consequence of the violation, it was not itself a safety and health violation.[3]

Thus, the grievance that Arbitrator Butler has held arbitrable and which he has ruled "should be scheduled for a hearing" on the merits, is not a removal grievance of the sort considered by the Fourth Circuit.

b.  In addition, the issue in this case is completely different than the issue presented in the Fourth Circuit case. The grievance the Fourth Circuit found not arbitrable

---

[3] If the Union prevails on the merits of the safety and health grievance, it must also persuade the Arbitrator that reinstatement of Mr. Ford is an appropriate remedy for that violation. The Arbitrator's findings and conclusions on the availability of that remedy in this case have not yet been made, notwithstanding the Employer's contentions in this Court.

14

was one in which the award determined that a notice given to a probationary employee during her probationary period was procedurally defective. The termination of the employee in that case occurred during her probationary period. Id. at 526. However, the arbitrator determined that because the termination was technically deficient, due to procedural errors that violated the language of a postal manual, the separation of the probationary employee violated the National Agreement. Id. The Fourth Circuit ruled that because notice of the termination occurred before the probationary period was over, the employee was barred under Article 12 from challenging the termination in the grievance and arbitration procedure and that the APWU could not rely on a procedural technicality to establish that the probationary employee's termination was defective under the National Agreement. Id. at 528.

In this case the issue has nothing to do with whether a notice given to an employee during his probationary period was defective due to procedural irregularities. The grievance alleges violations of the health and safety provisions of Article 14 of the National Agreement. See Exhibit 2, and Exhibit 4 at pp. 7-8. As the issues in the Fourth Circuit case and the instant case significantly differ, the doctrine of collateral estoppel is inapplicable.

IV. CONCLUSION

For the above stated reasons, the Complaint should be dismissed and the Court should enter summary judgment in favor of the APWU, enforcing the May 8, 2001 arbitration award entered by Arbitrator Fred D. Butler.

Dated: 8/30/07     Respectfully submitted,

15

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By: _____
Darryl J. Anderson (D.C. Bar No. 154567)
1300 L Street, Suite No. 1200, NW
Washington DC 20005
(202) 898-1707/ (202) 682-9276 (FAX)

Attorneys for American Postal Workers Union AFL-CIO