EXHIBIT F TO MEMORANDUM IN
SUPPORT OF THE POSTAL SERVICE'S
MOTION FOR SUMMARY JUDGMENT

THE ORDER AND MEMORANDUM OPINION
IN USPS v. APWU, 01-1704

06cv00793 RJL

FROM BETA                                              (MON) 3.26'07 16:11/ST. 16:09/NO. 4861391687 P 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES POSTAL SERVICE

Plaintiff/Counter-Defendant,

v.

AMERICAN POSTAL WORKERS UNION, AFL-CIO

Defendant/Counter-Plaintiff.

Civil Action No. 01-1704 (CKK)

### ORDER

For the reasons set forth in the accompanying Memorandum Opinion, it is, this 28th day of January, 2004, hereby

**ORDERED** that American Postal Workers Union's Motion to Dismiss and Motion for Summary Judgment are GRANTED IN PART AND DENIED-IN-PART; it is further

**ORDERED** that United States Postal Service's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART; it is further

**ORDERED** that Arbitrator Butler's Award at issue in this case is PARTIALLY VACATED, consistent with the accompanying Memorandum Opinion; and it is further

**ORDERED** that this case is DISMISSED.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES POSTAL SERVICE<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>AMERICAN POSTAL WORKERS UNION,<br>AFL-CIO<br><br>Defendant/Counter-Plaintiff. | Civil Action No. 01-1704 (CKK) |

**MEMORANDUM OPINION**
(January 28, 2004)

Presently before the Court are Plaintiff/Counter-Defendant United States Postal Service's ("Plaintiff" or "USPS") Motion for Summary Judgment and Defendant/Counter-Plaintiff American Postal Workers Union's ("Defendant" or "APWU") Motion to Dismiss and Motion for Summary Judgment. After reviewing the parties' briefing, submitted exhibits and relevant law, the Court shall grant USPS's Motion for Summary Judgment in part and deny it in part, and shall grant APWU's Motion to Dismiss and Motion for Summary Judgment in part and deny them in part.

**I: BACKGROUND**

The Court begins its discussion of the facts by noting that this Court strictly adheres to the text of Local Civil Rule 56.1 (identical to Local Civil Rule 7(h)). As such, in resolving the present summary judgment motions, this Court "assumes that facts identified by the moving part[ies] in the statement[s] of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 56.1. In this instance,

as the parties cross move for summary judgment, the Court looks to each party's statement to cull the relevant undisputed facts and to determine those facts that are conceded by the cross moving party. The Court also cites directly to the record, where appropriate, to provide additional information not covered in either of the parties' statements. Having set forth these preliminaries, the Court moves to a discussion of the material facts not genuinely in dispute.

USPS has a long-standing collective bargaining relationship with the APWU, a union representing Postal Service employees. USPS's Statement of Undisputed Facts ("USPS Stmt.") ¶ 1; APWU Statement of Material Facts ("APWU Stmt.") ¶ A. The relevant labor agreement in this case is the 1998-2000 collective bargaining agreement ("CBA"). USPS Stmt. ¶ 2; *see also* Compl. Ex. 1 ("CBA"). Mr. Edward Ford was hired by USPS on June 17, 2000. USPS Stmt. ¶ 14. The CBA provides that new employees are placed on a ninety day probationary period. CBA Art. 12.1.A. Mr. Ford's probationary period ran through September 16, 2000. USPS Stmt. ¶ 14. On September 8, 2000, Mr. Ford was assigned to the Los Angeles Plant Processing and Distribution Center to drive a postal vehicle around the facility and pick up trash. *Id.* ¶ 15. Mr. Ford, during the course of his duties, left his vehicle while its engine was still running. *Id.* While the vehicle was unattended, it rolled backwards, hitting the building and causing damage to an exit door and the back of the vehicle. *Id.* On September 13, 2000, Mr. Ford was provided a letter of termination, effective that day. *Id.* ¶ 16. The reason given for his termination was that he committed an unsafe act when he left the vehicle unattended with the engine still running. *Id.*

APWU filed a grievance in this matter. Marshall Decl. Ex. 4 (Step 2 Grievance Appeal Form). The union charged that Mr. Ford was asked to operate a vehicle that was unsafe in violation of the CBA, and then was fired when the vehicle malfunctioned. *Id.* The grievance

2

states the following:

> CONTENTIONS: This grievance evolves around [sic] Safety issue resulting in accident and termination of employee E. Ford. Termination issues to charging committing unsafe act while operating postal vehicle.
> Investigation Reveals: The grievant was instructed to operate a postal vehicle that was defective. The result was the vehicle jumped out of gear and struck the door on the South Side of the building.
> Union Position: The employee has done what was required. Management was at fault in not properly instructing and insuring that new employee was properly trained prior to giving him the responsibility of sole operation of a postal vehicle per the ELM-376.1 and ELM-376.2. Management has violated the provisions of Safety and Health in assigning the employee and then making him responsible for the result. This is [sic] action is punitive rather than corrective and not for just cause, not progressive and violates provisions of safety and health.
> Local Request: The Letter of Termination dated September 13, 2000 be expunged and that The [sic] employee to be reinstated immediately with a new period of probation. Further that he be made whole for any losses in connection with this action. Management to act responsibly and comply with the Provisions of the ELM and CBA.

*Id.* The USPS denied the grievance in a letter dated October 26, 2000. Marshall Decl. Ex. 5. In denying the grievance, the USPS stated that the "Union violated the National Agreement article 12, section 1, which states probationary employees shall not be permitted access to this grievance procedure in relation [to the circumstances of their dismissal], therefore this grievance is denied." *Id.*

The Union appealed the grievance to arbitration. Arbitrator Fred D. Butler was assigned to arbitrate the matter, and he issued his written decision – the subject of the pending lawsuit – on May 8, 2001. Marshall Decl. Ex. 8 (Butler Award). In the award, Arbitrator Butler noted that "the matter was grieved as a Health & Safety contract matter. However, it was referred to arbitration as a discipline matter. The Union objected to this at the hearing." *Id.* at 2-3. As a result, "the record was left open for seven days in order for the representatives to decide whether

3

to voluntarily submit this matter for [sic] second day of hearing as a contract issue. . . . The parties did not agree to hear this matter for a second day." *Id.* at 3. Even so, Arbitrator Butler viewed the grievance as one based on a contract violation. *Id.* at 8. The parties agreed to proceed only on the issue of whether or not the matter was arbitrable. *Id.* at 3. Arbitrator Butler found the grievance arbitrable. He noted that although Article 12.1.A bars probationary employees from availing themselves of the grievance procedure when they are terminated, he found that "Article 12.1.A has not been held to trump all other provisions of the CBA and/or Postal Service Regulations." *Id.* at 6-7. He noted that the Union claimed that but for the health and safety violation, Mr. Ford would have passed his probationary period. *Id.* at 7. Relying on other arbitration decisions that found that "Management is required to follow it's [sic] ELM procedures in terminating probationary employees" and that failure to do so is arbitrable, Arbitrator Butler determined that allegations that a failure to abide by the health and safety provisions of the CBA resulted in the discharge of a probationary employee is similarly arbitrable. *Id.* at 7-8. A contrary ruling, according to Arbitrator Butler, would grant Management unfettered discretion which would allow it to "make these kinds of decisions that would shock the level of consciousness of most and place Management's credibility at great risk." *Id.* at 8. He would not interpret Article 12.1.A in such a fashion, and stated his belief that "'responsible' Management" would not want the power such a reading of the provision would provide. *Id.* Therefore, he concluded that the CBA "does not preclude the question raised by the Union as to whether the Postal Service created a health and safety issue in violation of the CBA and other procedures and the impact if any that the violation had on the termination of Ford" from being grieved. *Id.* However, he only ruled on the issue of arbitrability; he held that

4

resolving the matter required a further hearing. *Id.*

The USPS appealed Arbitrator Butler's decision to this Court in an action filed on August 7, 2001. In its Complaint, the USPS asks the Court to declare that Arbitrator Butler "exceeded his authority by issuing his May 8, 2001, Award," vacate the May 8, 2001, award, and grant "such other and further relief as the Court deems just and proper." Compl. at 5.

## II: LEGAL STANDARD

Summary judgment is appropriate only if the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994); Fed. R. Civ. P. 56(c). In ruling upon a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayer v. United States Dep't of Treasury*, 956 F.2d 330, 333 (D.C. Cir. 1992). Similarly, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975); *Long v. Gaines*, 167 F. Supp. 2d 75, 85 (D.D.C. 2001). Each moving party discharges its burden to support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

5

### III: DISCUSSION

This action asks the Court to review an arbitrator's decision. There is a well-established line of precedent setting the parameters of a federal court's review of a labor arbitration decision, making it clear that this Court's authority to conduct such a review "is extremely limited." *Teamsters Local Union No. 61 v. United Parcel Serv.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (quoting *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C. Cir. 1991)). "The federal policy of settling labor disputes by arbitration" requires that courts refuse "to review the merits of an arbitration award." *United Steel Workers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). This is true, even when "the parties . . . allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509-10 (2001). This is "because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge . . . ." *Id.* at 37. However, an arbitrator's award is legitimate only if it "'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice.'" *Id.* at 36 (quoting *Enterprise Wheel*, 363 U.S. at 597). The Court's role then is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract." *Id.* at 37 (quoting *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 567-568, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960)). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* at 38.

The question before the Court is whether Arbitrator Butler's determination that the

APWU's grievance involving Mr. Ford's termination was arbitrable. The CBA provides that "[a]ny dispute as to arbitrability may be submitted to the arbitrator and be determined by such arbitrator. The arbitrator's determination shall be final and binding." CBA Article 15.5.A.9. Since the parties agreed to submit arbitrability questions to an arbitrator for resolution, the Court applies the same standard of review it would to "any other matter that parties have agreed to arbitrate." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also United States Postal Serv. v. American Postal Workers Union*, 204 F.3d 523, 527 n.1 (4th Cir. 2000). The main provision at issue is Article 12.1.A, which describes the USPS's rights with regard to probationary employees. The pertinent part of the provision provides that

> [t]he probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.

CBA Art. 12.1.A.

USPS argues that Arbitrator Butler exceeded the scope of his authority in this case. USPS Mem. in Supp. of its Cross-Mot. for Summ. J. and in Opp'n to APWU's Mot. for Summ. J. ("USPS Mem.") at 8. USPS argues that Arbitrator Butler essentially changed the terms of the parties' agreement by granting a probationary employee access to the grievance procedure when the CBA clearly bars such access. *Id.* at 9. It notes that the CBA makes clear that doing so is not permitted under the terms of the CBA. *Id.* at 8-9 (citing CBA Art. 15.5.A.6 ("All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator.")). The APWU argues that it brought the grievance at issue because USPS "forced Ford to operate

7

an unsafe vehicle, a violation of Article 14 not dependent on Ford's removal." APWU Am. Opp'n to USPS Cross-Mot. for Summ. J. ("APWU Opp'n") at 3-4. In other words, APWU claims that its grievance is not "related" to Mr. Ford's separation, but is instead a grievance related to a safety issue that manifested itself in the incident that led to Mr. Ford's separation. See Mem. of P. & A. in Supp. of APWU's Mot. to Dismiss & Cross-Mot. for Summ. J. ("APWU's Mem.") at 6 ("[T]his case involves a grievance concerning a violation that occurred *before* the discharge of Mr. Ford. The violation at issue is the failure of the Postal Service to correct serious safety defects in the motor vehicle used on postal premises and the assignment of the vehicle to Mr. Ford for the purpose of trash collection around the postal facility.") (emphasis in original).

Arbitrator Butler's holding is as follows: "Article 12.1A does not preclude the question raised by the Union as to whether the Postal Service created a health and safety issue in violation of the CBA and other procedures and the impact if any that the violation had on the termination of Ford is a subject for Arbitration." Marshall Decl. Ex. B at 8. The Court observes that Arbitrator Butler appears to have found that two separate, but related issues are arbitrable. The first is a question related solely to whether or not USPS violated the Health and Safety provisions of the CBA. The second is what role that violation played in the termination of Mr. Ford. The Court addresses each issue separately.

1. *The Arbitrability of Mr. Ford's Separation*

As noted *supra*, USPS argues that Arbitrator Butler exceeded his authority by granting a terminated probationary employee access to the grievance process. APWU responds that Arbitrator Butler viewed their grievance, correctly in APWU's opinion, as one "based on the

8

issue of alleged safety and health violations by the Postal Service under Article 14 of the National Agreement." APWU Mem. at 10. APWU states:

> If Arbitrator Butler sustains the Article 14 Safety and Health grievance, he will have available a number of possible remedies. He may for example, instruct the Postal Service to repair or stop using the unsafe vehicle, or mandate that the Postal Service act responsibly and comply with the provisions of the [sic] Article 14 to the National Agreement. Arbitrator Butler may also decide that an appropriate remedy would require the Postal Service to "reconsider any action taken against any employees who were innocent of any wrongdoing." (Butler Opinion at 8). Had Arbitrator Butler ruled that Mr. Ford is entitled to reinstatement with the Postal Service, then an argument could have been made by the Postal Service that the Butler Award in fact addresses the discharge of a probationary employee. However, the Butler Award did not specify any such remedy for the APWU concerning the violations of health and safety rights of Mr. Ford or other postal service employees under the collective bargaining agreement. The Arbitrator simply determined the grievance to be arbitrable under Article 14 of the National Agreement.

APWU Mem. at 11. APWU's view of the scope of the Butler Award is not congruent with the award's actual holding. As noted *supra*, Arbitrator Butler did find the Article 14 violation allegation to be arbitrable, but appears to have also determined that the impact that violation had on Mr. Ford was a separate arbitrable issue as well. APWU seems to acknowledge that this second determination raises issues under Article 12.1.A. *See id.* ("Had Arbitrator Butler ruled that Mr. Ford is entitled to reinstatement with the Postal Service, then an argument could have been made by the Postal Service that the Butler Award in fact addresses the discharge of a probationary employee.").

A review of the caselaw shows that the parties have litigated the parameters of Article 12.1.A in the past. *See generally United States Postal Serv. v. American Postal Workers Union*, 922 F.2d 256 (5th Cir. 1991) ("*USPS I*"); *American Postal Workers Union v. United States Postal Serv.*, 940 F.2d 704 (D.C. Cir. 1991) ("*APWU*"); *United States Postal Serv. v. American Postal*

9

*Workers Union*, 204 F.3d 523 (4th Cir. 2000) ("*USPS II*"). The Court finds these cases instructive. In *USPS I*, USPS had discharged a probationary employee while he was on compensable leave granted by the Federal Employees' Compensation Act ("FECA"). *USPS I*, 922 F.2d at 257. The APWU filed a grievance, arguing that the employee's firing violated FECA and postal regulations implementing FECA. *Id.* at 257-58. The arbitrator found the grievance arbitrable, and the USPS appealed the decision in a suit brought in federal court. The District Court vacated the award, and the Fifth Circuit affirmed. In affirming, the Fifth Circuit found "that even when . . . a probationary employee alleges that his termination violates [other articles] of the National Agreement, article 12 of that Agreement clearly denies probationary employees any right to resort to grievance and arbitration procedures." *Id.* at 259. The Fifth Circuit concluded that while probationary employees may have rights provided by other provisions of the CBA, they may not vindicate these rights through the grievance process due to Article 12.1.A. *Id.*

In *APWU*, four USPS employees and APWU union members "sustained work-related injuries or developed occupational illnesses shortly after they began working for" USPS. *APWU*, 940 F.2d at 705. After they filed claims under FECA, but within their 90-day probationary period, these employees were fired. *Id.* The employees filed grievances, contending that their separation violated Article 2 (barring discrimination on the basis of physical handicap) and Article 19 (providing that USPS employees are covered by FECA) of the CBA. *Id.* at 706. The arbitrator ruled that the grievance process was closed to these employees because they were separated during their probationary period. *Id.* The employees and APWU then sued in federal court, alleging that they were terminated because of their handicaps and in violation of FECA.

10

*Id.* The District Court granted summary judgment and the D.C. Circuit affirmed. *Id.* Although the *APWU* opinion focuses on the issue of whether USPS employees may vindicate their rights in federal court, the D.C. Circuit did find it appropriate to comment on Article 12.1.A. The Court of Appeals noted:

> Article 12 of the collective bargaining agreement gives the USPS the broad discretion to "separate from its employ any probationary employee at any time during the probationary period." This language unmistakably denies probationary employees the contractual protections against dismissal that employees enjoy after their first 90 days of service; it permits the USPS to dismiss "*any* probationary employee" regardless of its reason for doing so without breaching the collective bargaining agreement.

*APWU*, 940 F.2d at 707 (emphasis in original); *see also id.* (noting that the purpose of the provision is "to permit an employer to evaluate a new employee on a trial basis and terminate him for whatever reason it chooses during the trial period of employment.").

In *USPS II*, APWU filed a grievance on behalf of a probationary employee who was terminated, arguing that USPS "failed to comply with certain provisions of the Postal Service's Employee and Labor Relations Manual (ELM) in attempting to separate" the employee. *USPS II*, 204 F.3d at 526. APWU alleged that "the proper official did not initiate the separation and that the separation notice failed to include the requisite conclusions as to the inadequacies of performance or conduct." *Id.* (internal quotation marks and citations omitted). Arbitrator Christopher Miles found the grievance arbitrable, and USPS filed suit to vacate the Miles award. *Id.* The district court vacated the award, and the Fourth Circuit affirmed the decision. In affirming, the Fourth Circuit determined that

> [t]he arbitrator's decision that procedural attacks on the separation of a probationary employee are arbitrable contravenes the unambiguous language of Article 12.1.A. The terms of this provision are worth repeating: "The Employer shall have the right

11

> to separate from its employ any probationary employee at any time during the probationary period and these probationary employees *shall not be permitted access to the grievance procedure in relation thereto*" (emphasis added). This language is unqualified and admits of no exception. The provision makes no distinction whatsoever between procedural attacks on separations and substantive challenges. The sweeping phrase "in relation thereto" brings any separation-related grievance by a probationary employee within the ambit of the prohibition. In other words, so long as the matter involves probationary employees and the question of separation, no grievance may be brought. In fact, it is difficult to see how the parties could have been any clearer in prohibiting every kind of separation-related grievance by a probationary employee.

*Id.* at 528 (emphasis in original); *see also id.* ("The contract makes non-grievable the entire class of disputes having any 'relation' to separation, and the contract cannot be circumvented by attempting ... to subdivide that class.").

Providing the Court further guidance is National Arbitrator Shyam Das's September 10, 2001, decision interpreting Article 12.1.A in a proceeding held before the National Arbitration Panel. Hambalek Decl. Ex. 4 ("Das Award"). Both parties agree that his decision is binding on Arbitrator Butler. USPS Mem. at 15; APWU Opp'n at 2. In his decision, National Arbitrator Das referred favorably to the *USPS II* decision, and quoted the following from the opinion: "This language [from Article 12.1.A] is unqualified and admits of no exception. The provision makes no distinction whatsoever between procedural attacks on separations and substantive challenges. The sweeping phrase 'in relation thereto' brings any separation-related grievance by a probationary employee within the ambit of the prohibition." Das Award at 18 (quoting *USPS II*, 204 F.3d at 528). He concluded that "Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or separation on the grounds of alleged noncompliance with the procedures ... of the ELM." *Id.* at 22. He also concluded that a "dispute as to whether or not the Postal Service's action separating the employee occurred during his or her

probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A." *Id.*

A review of this precedent demonstrates that Arbitrator Butler exceeded his authority when he found "the impact if any that the [health and safety] violation had on the termination of Ford is a subject for Arbitration." Marshall Decl. Ex. 8 at 8. The CBA is clear that a probationary employee has no access to the grievance procedure during the probationary period. *See* Art. 12.1.A ("The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto."). To find that the impact of a CBA violation on a terminated probationary employee is arbitrable is a determination that does not find its essence in the CBA and consequently one that exceeds the arbitrator's authority. Accordingly, to the extent Arbitrator Butler's decision holds arbitrable any aspect of USPS's decision to terminate Mr. Ford as it relates to that termination, that part of the decision shall be vacated.

2.   *The Union's Article 14 Grievance*

USPS argues that the precedent explained above mandates that the second holding of Arbitrator Butler's award be vacated as well. It contends that

> [t]he APWU's grievance, couched as an Article 14, Safety and Health contact violation, is nothing more than a thinly-veiled attempt to circumvent the clear, unambiguous and well-recognized prohibition contained in Article 12.1.A. A cursory reading of the Step 2 grievance reveals that it is nothing more than a challenge of a probationary employee's separation.

USPS Mem. at 15-16; *see also supra* (quoting entire Step 2 Grievance Appeal Form). USPS also notes that Arbitrator Butler "recognized that the case had been referred to arbitration as a

13

discipline case; noted that the parties did not agree to go forward on a second day to argue a contract case; yet proceeded to decide the case as a contract case." *Id.* at 16. USPS contends that the contract/discipline distinction made by Arbitrator Butler "takes form over substance, and makes clear that what he is allowing is a back-door challenge of a probationary employee's grievance." *Id.*

The Court's review of the precedent, as noted *supra*, supports USPS's argument with regard to Arbitrator Butler's determination that the grievance, as it relates to the separation of Mr. Ford, is non-arbitrable. The Court's reading of the precedent does not lead to the same conclusion with regard to Arbitrator Butler's decision that APWU's Article 14 grievance is arbitrable.[1] The arbitrator in this case was presented with a grievance that can arguably be viewed as one objecting to a safety and health violation brought by the APWU on behalf of its members generally. Indeed, this is how APWU represents its grievance to the Court. APWU Mem. at 10-11. The Court agrees with USPS that many aspects of APWU's Step 2 Grievance form suggest that challenging Mr. Ford's suspension was the true motivation behind the filing of the grievance. *See* Marshall Decl. Ex. 4.[2] However, Arbitrator Butler determined that "from the reading of the grievance in this matter, the Union filed it's [sic] grievance based on a contract

---

[1] For this reason, the Court rejects USPS's argument that *USPS I* and *USPS II* collaterally estop APWU from arguing that the Butler award should be enforced. *See* USPS Mem. at 18-20.

[2] For example, the Step 2 Grievance Appeal Form refers to Mr. Ford as "the grievant." Marshall Decl. Ex. 4. Moreover, the Union comments that Mr. Ford's suspension "is punitive rather than corrective and not for just cause, not progressive and violates provisions of safety and health," which strongly suggests that the grievance is aimed at correcting an alleged wrong done to Mr. Ford as opposed to a general safety concern. *Id.* Finally, the APWU's request for relief asks that Mr. Ford be reinstated, in addition to management acting "responsibly and comply[ing] with the Provisions of the ELM and CBA." *Id.*

14

violation concerning Health and Safety." Marshall Decl. Ex. 8 at 8. While this reading may appear contrary to the Step 2 Grievance Appeal Form, and may even contradict other aspects of Arbitrator Butler's opinion, these are not matters for the Court to secondguess. As noted *supra*, this Court's authority is extremely limited, and does not extend to correcting errors of fact or erroneous interpretations of the CBA. *Misco*, 484 U.S. at 36. As long as Arbitrator Butler "is even *arguably* construing or applying the contract and acting within the scope of his authority," that this Court "is convinced he committed serious error does not suffice to overturn his decision." *Id.* at 38.

The Court finds that Arbitrator Butler's categorization of APWU's grievance as one pertaining to the CBA's Safety and Health provision is plausible. Furthermore, nothing in *USPS I*, *APWU*, *USPS II* or the Das Award, convinces the Court that as long as the grievance is considered as a challenge to the Safety and Health provision of the CBA that the grievance is non-arbitrable. All of these decisions are predicated on the situation that the separation of the employee is the condition-precedent to the filing of the grievance. Here, APWU argues, and Arbitrator Butler appears to have found, that a grievable allegation exists independent of Mr. Ford's termination. *See, e.g.*, Das Award at 21.[3] This Circuit has found that Article 12.1.A's purpose is "to permit an employer to evaluate a new employee on a trial basis and terminate him for whatever reason it chooses during the trial period of employment." *APWU*, 940 F.2d at 707. Permitting APWU to grieve violations of the CBA that have some bearing outside of the facts related to the actual separation of the probationary employee would not "read the probation

---

[3] To the extent the decisions are not limited to such a situation, the Court does not find their reasoning persuasive for the reasons set forth *infra*.

15

clause out of the" CBA, and is arguably congruent with the CBA. *Id.* Not passing judgment on the facts of this case, the Court notes that it would be anomalous to have a collective bargaining agreement where rights negotiated for employees could be grieved *unless* they were in *any* way connected to the separation of the probationary employee. For example, if a collective bargaining agreement provided that employees were only required to work an eight-hour day, and when management began requiring employees to work nine-hour days a probationary employee complained and was terminated, it would be a strange result if that separation barred the union from challenging the decision to force employees to work a nine-hour day. The Court recognizes USPS's concern that APWU is "seek[ing] to grieve through the back door the separation of a probationary employee." *USPS II*, 204 F.3d at 530. However, the parties agreed to submit matters regarding arbitrability to an arbitrator, and the Court does not find that Arbitrator Butler's characterization of the grievance is a decision which the Court can reverse, nor can it find that the grievance, as characterized by Arbitrator Butler, is clearly non-arbitrable under the terms of the CBA. *See Misco*, 484 U.S. at 36. Furthermore, the Court has already ruled that barred from arbitration is the issue of Mr. Ford's termination.

## IV: CONCLUSION

After reviewing the parties' briefing, the submitted exhibits, and the relevant law, the Court shall grant USPS's Motion for Summary Judgment in part and deny it in part. The Court shall also grant APWU's Motion to Dismiss and Motion for Summary Judgment in part and deny it in part. Arbitrator Butler's award is vacated to the extent it determines that any aspect of Mr. Ford's termination, as it relates to the termination, is arbitrable. An Order accompanies this

16

Memorandum Opinion.

Date: January 28, 2004

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge