UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— )
                                                                )
UNITED STATES POSTAL SERVICE                )
                                                                )
  Plaintiff and                                     )
  Counterclaim Defendant,                     )
                                                                )
  V.                                                 )  Civil Action No. 06-793 RJL
                                                                )
AMERICAN POSTAL WORKERS UNION         )
  AFL-CIO                                          )
                                                                )
  Defendant and                                  )
  Counterclaim Plaintiff                          )
———————————————————— )

APWU OPPOSITION TO POSTAL SERVICE
MOTION FOR SUMMARY JUDGMENT

For the reasons explained in our Memorandum in support of the APWU's Motion for Summary Judgment (hereinafter "APWU's Memorandum"), the Postal Service cannot challenge Arbitrator Loeb's authority to decide whether or not Ms. Daliessio was separated from the service during her probationary period. National-level Arbitrator Das has conclusively established that area arbitrators have authority to determine whether employees who challenge their separations from the service were separated during their probationary period. Arbitrator Das held (Bell Dec. Exh. 3, at 2, 23):

> A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A.

The Employer's arguments that Arbitrator Loeb did not perform this responsibility correctly in the case of Lorraine Daliessio do not provide a legal basis for overturning

that award, for the reasons we stated in APWU's Memorandum.  The Employer is seeking to have this Court substitute its judgment for Arbitrator Loeb's judgment on the merits of the Daliessio case.  But the Employer is contractually obligated to accept the Loeb Award.

I.    **The Employer's Factual Attacks on the Loeb Award are Erroneous and Immaterial**

In APWU's Memorandum, at 6-7, we summarize in bullet-point form the undisputed chronological facts germane to Arbitrator Loeb's decision.  To these factual statements, the Postal Service seeks to add one more - that Ms. Daliessio's supervisor told her, within her probationary period, that she was "terminated immediately".  We dispute that factual contention.  In addition, we rely in response on another fact that may or may not be in dispute: that postal supervisors have no authority to terminate probationary employees.   The pertinent chronology, with the Employer's additional, disputed, factual contention and our responsive factual point added in bold-faced type, is as follows (the undisputed facts as found by Arbitrator Loeb are summarized in the Loeb Award; Bell Dec. Exh. 2, at 2-3):

- Lorraine Daliessio was hired on November 22, 1997.

- During Daliessio's probationary period, her supervisor gave her an unsatisfactory rating, and checked a box on an evaluation form stating that he would not recommend her for retention or rehire.

- During Daliessio's probationary period, her supervisor told her to clean out her locker, turn in her ID and go home.

- **Supervisor Barnett told Daliessio on January 30, 1998, that she was being terminated immediately.** (See USPS Statement of Material Facts

¶¶ 13, 15)[1]

- **Postal supervisors do not have authority to terminate or separate probationary employees from the service; they can only make recommendations; terminations must be done by postal managers.** (See, e.g., Das Award, Bell Dec. Exh. 3, at 3, quoting the USPS Employee and Labor Relations Manual Section 365.325)

- On February 4, 1998, Daliessio's supervisor sent a letter to the Manager of Labor Relations asking that the manager initiate action to remove Daliessio from the employment roles effective January 30, 1998.

- Daliessio's 90-day probationary period ended February 19, 1998.

- The Manager of Labor Relations  failed to act on the supervisor's request until February 20, 1998, when he wrote a letter to Daliessio.

- Daliessio did not receive the Manager's letter until March 21, 1998.

### A.    The allegation that the supervisor told Daliessio that she was being terminated immediately is immaterial.

We understand the Employer's contention that the "undisputed facts" establish that Daliessio was "verbally terminated" during her probationary period, to refer to what Daliessio was told orally by her supervisor on January 30, 1998.  Some of what occurred that day is undisputed.  Daliessio was required to clean out her locker, turn in her badge, and go home.  We dispute that the supervisor told her that she was being "terminated immediately."  We do not accept the supervisor's self-serving post hoc recollection – more than nine years after the fact, on May 7, 2007, that she told

---

[1]  The USPS Statement of Material Facts is somewhat ambiguous on the point, although the implication is that the supervisor was communicating an immediate termination to Daliessio.  This is strengthened substantially in the USPS Memorandum where the Employer contends variously that the "undisputed facts" establish that Daliessio was terminated during her probationary period, and that there is "no dispute" that her supervisor told her that she was being terminated immediately.  USPS Memorandum at 28, 32.

Daliessio that she was being "terminated effective immediately."[2]

One reason we contest the factual assertion that Barnett told Daliessio that she was being terminated immediately is that it could not have been true. Postal supervisors do not have the authority to separate or "terminate" probationary employees immediately or in any other way, they can only make recommendations. They have to ask their managers to do that. The pertinent Employer manual provision states:

> Supervisors may recommend separation-disqualification, but such recommendations must be referred for decision to the official having authority to take the action.

USPS Employee and Labor Relations Manual, Section 365.325; quoted in the Das Award, at 3; Bell Dec. Exh. 3 at 3. Thus, even if the supervisor had told Ms. Daliessio that she was "terminated immediately," it was not true. Daliessio was not separated from the employment rolls until the Manager of Labor Relations, in this case the authorizing official, made his decision to separate her –  after the end of her probationary period.

Arbitrator Loeb, who had the advantage of seeing the witness and hearing their testimony summarized the situation as follows (Loeb Award, Bell Dec. Exh. 2 at 15):

> The record is clear that the Grievant was advised on January 30, 1998, that her work was unsatisfactory and that her supervisor would not recommend her retention. She memorialized those comments on Form 1750 by checking the box indicating that she would not recommend the Grievant be retained by the Service. The Grievant claimed that she never

---

[2]  Declaration of Vivian T. Barnett, USPS Memorandum Exh. B, ¶ 7. Supervisor Barnett also stated in her recent declaration that "I then clearly informed her that her employment with the Postal Service was terminated immediately." Id. What is undisputed is that Barnett, having already shown Daliessio a Form 1750 stating that she was not being recommended for retention after her probationary period, told Daliessio to clean out her locker, turn in her badge, and go home.

saw that section of the evaluation form ... but her claim is not credible... .. What matters is what the Postal Service did which is sent her home and told her not to come back to work.  Neither the recommendation nor the order not to return to work terminated the Grievant.  The supervisor, her manager and the Manager of Labor Relations all recognized that was the case by their actions.

But these factual quibbles are immaterial.  It was for Arbitrator Loeb to determine whether or not Ms. Daliessio was separated during her probationary period.[3]  The Employer has no right to ask this Court to second-guess that determination.

Furthermore, Arbitrator Das's National-level decision that the parties agree binds them both[4] (Bell Dec. Exh. 4, at 21-22), addresses the question of what it takes to "separate" an employee within the meaning of Article 12.1.A. Arbitrator Das states ( Das Award at 21): "**In all these cases, the individual on whose behalf the Union has filed a grievance has been removed from the rolls, that is separated by an action taken by the Postal Service**." [Emphasis added here.] The Employer does not contend, nor could it, that any oral statement by a supervisor could have the effect of removing an employee from the rolls.  Furthermore, the supervisor's oral statements to

---

[3]  Arbitrator Loeb's findings of fact are, of course, final and binding on the Employer. We also observe that Arbitrator Loeb makes no reference to any testimony by Supervisor Barnett that she used the words "terminated immediately" in sending Daliessio home.  In the passage quote above, Arbitrator Loeb dismisses Daliessio's claim that she had not seen the Form 1750 statement that she was not being recommended for retention as "not credible."  If Barnett had told Arbitrator Loeb that she had informed Daliessio that she was being "terminated immediately" Arbitrator Loeb would have remarked on that testimony.

[4]  The Employer's Memorandum is strangely equivocal on this point, stating only that "area arbitrators" are bound to follow National-level awards.  USPS Memorandum at 5. The USPS Statement of Material Facts more accurately acknowledges that National-level awards are "binding on the parties and on area arbitrations in disputes over the application of the National Agreement to particular circumstances and individuals." [Reference omitted.]

5

Daliessio, no matter what their content, would not have resulted in Daliessio's removal from the rolls.  If the Labor Relations Manager had not acted to remove Daliessio, she would not have been separated.  Given that Arbitrator Loeb's reading of the facts in the Daliessio case is entirely consistent with Arbitrator Das's definition of "separate," for purposes of Article 12.1.A.  Whatever else the Employer wants to say about Arbitrator Loeb's Award, on this key point he is unquestionably correct.  Supervisor Barnett did not separate Lorraine Daliessio from the Service.

The utter inappropriateness of the Employer's attack on Arbitrator Loeb's factual finding that the separation did not occur during Daliessio's probationary period is illustrated by reference to the facts involved in the Misco case decided by the Supreme Court.  In that case, the employer had discharged an employee for possession of marijuana on company premises.  The employee's job was to operate a "slitter-winder machine, which uses sharp blades to cut rolling pieces of paper.  The arbitrator found that this machine is hazardous and had caused numerous injuries in recent years." Misco, 484 U.S. at 32.  The evidence against the employee was that he had been found in the back seat of a car on the company parking lot while there was a lighted marijuana cigarette in the ash tray in the front seat of the car.  The employer also knew that the employee had been arrested one day earlier for possession of marijuana in his home by police executing a search warrant.[5]  Misco, 484 U.S. at  32-34.  In reversing a Court of Appeals decision that the arbitrator's award must be vacated, the Supreme Court

---

[5] The Misco arbitrator had refused to admit into evidence the fact that marijuana tailings had also been found in the employee's car on company property, because the employer had not relied on that evidence in discharging him.  Misco, 484 U.S. at 33-34.

observed (484 U.S. at 44-45):

> To conclude from the fact that marijuana was found in Cooper's car that Cooper had ever been or would be under the influence of marijuana while he was on the job and operating dangerous machinery is an exercise in factfinding about Cooper's use of drugs and his amenability to discipline, a task that exceeds the authority of a court asked to overturn an arbitration award. The parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them who had more opportunity to observe Cooper and to be familiar with the plant and its problems.

Likewise, in this case, the parties contractually agreed to be bound by the Award of Arbitrator Loeb. For this Court to first infer from the circumstances of this case that Daliessio was separated during her probationary period, and then to conclude that Arbitrator Loeb exceeded his authority when he reached the conclusion that she had not been terminated during her probationary period, would require "an exercise in factfinding that exceeds the authority of a court asked to overturn an arbitration award " Id.

### B. The allegation that the supervisor told Daliessio that she was being terminated immediately is false – but that is not an issue for this Court

In this legal context, we are very reluctant to explain the various ways in which the Postal Service has exaggerated or mistakenly stated the facts pertinent to the question of the timing of Ms. Daliessio's separation. We do this reluctantly because the Employer has no right to ask this Court to substitute its judgment of the facts for that of Arbitrator Loeb. The Employer's argument about the facts is presented as though we are in labor arbitration, and is conducted on a level more appropriate for labor arbitration. We find it awkward bordering on the ridiculous to place this Court in the role

of an arbitrator, making a decision binding only in one discharge case.[6] The only question before Arbitrator Loeb was whether the Employer separated Lorraine Daliessio during her probationary period, in which case it had a right to do so summarily, or instead failed to separate her during her probationary period, in which case the Employer was required to demonstrate that there was just cause for her discharge.

Even assuming for the sake of argument that Daliessio's supervisor used the words "terminated immediately" in speaking to her on January 30, 1998, that statement did not mean that Daliessio had been terminated immediately, because the supervisor had no authority to terminate her from her Postal Service employment.[7] Saying it was so could not make it so. Much less could those words "separate" Daliessio "from its employ" within the meaning of Article 12.1.A. Arbitrator Loeb found that "[t]he plain fact of the matter is that the Employer failed to terminate the Grievant, as that term is understood n Article 12 within her probationary period."[8]

The Employer's attempts to challenge Arbitrator Loeb's finding on this point are

---

[6] An example of the difficulty this presents for the Court is provided by the fact that supervisor Barnett has not been deposed. In the unlikely event the Court deems it material what Barnett said to Daliessio on January 30, 1998, we will take Barnett's deposition, of course. But that should not be necessary, because this should never have become a federal case. It is an arbitration case. Arbitration is intended to be a speedy and inexpensive way for the parties to resolve their disputes.

[7] Supervisors may recommend separation-disqualification, but such recommendations must be referred for decision to the official having authority to take the action. USPS Employee and Labor Relations Manual, Section 365.325; quoted in the Das Award, at 3; Bell Dec. Exh. 3 at 3.

[8] The term "terminate" is not used in Article 12.1.A. See Bell Dec. Exh. 1, at 2 (page 27 of the National Agreement).

ineffectual:

- The Employer relies on the fact that Supervisor Barnett has submitted a Declaration executed more than nine years after she sent Lorraine Daliessio home stating that she clearly informed Daliessio that she was being terminated immediately. However:

☐ Supervisor Barnett sent a letter to the Manager of Labor Relations dated five days after she had sent Daliessio home (**February 4, 1998**) (a letter concurred in by Barnett's manager) stating: "**I am requesting that action be initiated to remove PTF Mark-UP Clerk Lorraine G. Daliessio, SSN#...from the rolls of the United States Postal Service effective January 30, 1998.**" Waters Dec. Exh. 5, at 17 (Emphasis added here).

☐ There is no evidence that Barnett told Arbitrator Loeb that she had informed Daliessio that she was being "terminated immediately"; and absent evidence that Loeb even heard this testimony, Barnett's Declaration must be disregarded for that reason alone.

☐ If this testimony <u>was</u> submitted to Arbitrator Loeb, this Court is in no position to second-guess his decision about how much weight to assign it.

☐ In addition, this assertion is belied by the Employer's pre-arbitration brief. In that document, the Employer's arbitration advocate merely stated that, on the day Daliessio as sent home, she was told by her supervisor that she was "being terminated." Employer's Pre-Arbitration Brief; Waters Dec. Exh. 6, at 3 and 24.

☐ The phrase "being terminated" is consistent with an intention to inform Daliessio that the supervisor intended to request that a termination be initiated by the Manager of Labor Relations.

9

- The Employer asserts that Daliessio and the Union acknowledged that Daliessio was "verbally" told within her probationary period that she was "being terminated". E.g., USPS Memorandum in Support of its Motion, at 28.

☐ The Employer's reference to the Waters Dec. (USPS Memorandum at 28) is inapposite because Waters merely asserts that the Union's argument was that the separation was not in writing, and refers to the grievance papers that were exhibits at the arbitration hearing.  Waters Dec. ¶ 14, referring to Exh. 5 (the grievance papers) at 2-6.

☐ The Employer's reliance on the grievance papers (Memorandum at 28) is equally inapposite because those papers, executed by Employer and Union officials who were not present on January 30, 1998, merely recite that Daliessio was "verbally told" that she was "being terminated."  There is no "immediately" attached, and there is no suggestion, much less an admission, that the supervisor had the authority to terminate Daliessio.  Waters Dec. Exh. 5, at 2 (step 2 appeal dated March 15, 1998), and at 6 (Step 1 meeting form dated March 30, 1998).

☐ The Employer's reliance on the EEO papers filed by Daliessio is in the same vein.  In a paper dated April 20, 1999, an EEO "Counselor" recites that "[h]er last day in pay status was January 31, 1998."  Waters Dec. Exh. 8, at 12.  In an April 10, 1999 EEO complaint, Daliessio recites that her "date of termination" was 1-31-98.  Id. at 26.  And in an EEO form date-stamped as received by the Postal Service on February 20, 1998, there is the statement "On January 31, 1998, the following occurred: I WAS TERMINATED. (SEE ATTACHED LETTER)" but the referenced letter is not attached to the Waters Exhibit at that point. These vague references to the date by then stated by the Postal Service in its official, post

10

hoc, documents – presumably January 31 not January 30 – mean nothing about what actually happened on January 30, 1998. More significant is the February 8, 1998, narrative by Daliessio attached to her letter to the USPS EEO office dated May 29, 1999. Id. at 21-25. In that four and one-half page, single-spaced, letter written nearly contemporaneously with the events of January 30, 1998, Daliessio is complaining about harsh and unfair treatment by her supervisor; but there is no reference to being told that she had been "terminated" much less that she had been "terminated immediately."

We suppose that the Union now could now argue that the Postal Service has "admitted" that Daliessio was not terminated by her supervisor on January 30, 1998. Officials of the USPS have stated that her last "day in pay status" was January 31, 1998. This was clearly due to the post hoc action by the Manager of Labor Relations, action taken after the probationary period had expired. But these arguments are the stuff of labor arbitration. Either they were made to Area Arbitrator Loeb or they were not, but they have no place in this Court.

Courts are familiar with the oft-cited rule that a Court of Appeals will not reverse a trial court's findings of fact unless they are "clearly erroneous."[9] The standard used by courts in reviewing arbitration awards is much narrower – it is "among the narrowest

---

[9] "... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses... ." Fed.R.Civ.P. 52(a)

known to the law."[10]  "Because the parties have contracted to have disputes settled by

an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts

and of the meaning of the contract that they have agreed to accept.  Courts thus do not

sit to hear claims of factual or legal error by an arbitrator as an appellate court does in

reviewing decisions of lower courts."[11]


## II.    The Employer's Mis-characterization of the Arbitrator's Award is Also Immaterial

### A.  The Employer Mis-characterizes the Loeb Award

In an effort to cast the Loeb Award in the same mold as the Miles Award that was

vacated by the Court of Appeals for the Fourth Circuit,[12] the Employer repeatedly

accuses Arbitrator Loeb of enforcing procedural provisions of the Postal Service's

Employee and Labor Relations Manual (ELM).  USPS Memorandum at 1, 22, 29, 30,

32.  But, as in the case of the supervisor's belated contention that she terminated

Daliessio "immediately," saying it is so does not make it so.

Arbitrator Loeb expressly based his decision on Article 12 and not on the ELM.

Thus, he rejected the Union's reliance on the ELM:

> Regardless of how the Union chooses to characterize the nature of the grievance or how badly it feels that the Service transgressed the requirements in Section 365.327 of the ELM, the issue before the Arbitrator is not the process the Service employed when it terminated the

---

[10]  Union Pac. R.R. v. Sheehan, 439 U.S. 89, 91; 99 S.Ct. 399 (1978).

[11]  Paperworkers v. Misco, Inc., 484 U.S. 29, 37-38; 108 S.Ct. 364 (1987).

[12]  United States Postal Service v. American Postal Workers Union, AFL-CIO, 204 F.3d 523 (4th Cir. 2000).

> Grievant, but whether she was discharged during her probationary period. The answer is that she was not.

Loeb Award at 15; Bell Dec. Exh. 2, at 15.

> The plain fact of the matter is that the Employer failed to terminate the Grievant, as that term is understood in Article 12 within her probationary period.

Id. at 17.  Essentially, the Employer is contending that Arbitrator Loeb was enforcing the ELM when he found that Daliessio had not been terminated on January 30, 1998.  But that reading of the Award is self-serving, simplistic, and wrong.   Arbitrator Loeb found that "[n]either the recommendation nor the order not to return to work terminated the Grievant.   The supervisor, her manager and the Manager of Labor Relations all recognized that was the case by their actions."  Id. at 15.

### B.    The contention that the Loeb Award applies a provision of the ELM is immaterial

In one passage of his Award, Id. at 16, Arbitrator Loeb discusses two ELM provisions, sections 365.325 and 365.326, with the implication that he was taking from those provisions the fact that the termination of probationary employees must be "effected" during the probationary period, and that the separation must be  done in writing.  As to the first of these conditions, Arbitrator Das has held, and the parties agree, that Area Arbitrators have the authority to determine whether a separation occurred during the probationary period; so that point is not in dispute.  Arbitrator Loeb unquestionably had the authority to address that question.

As to the effect of a written notice of separation, the question must be asked: as compared to what?  Arbitrator Loeb found as fact that the supervisor and her manager knew, and acknowledged by their actions, that they had to ask the Manager of Labor

Relations to effectuate the separation; and they in fact made that request in their letter dated February 4, 1998.  Waters Dec. Exh. 5, at 17.  Thus, in looking to the ELM requirement of a written notice, Arbitrator Loeb was as much answering the question why the supervisor and manager knew they had not separated Daliessio from the service on January 30, 1998 – they could not do so under postal regulations – as he was addressing the question of how the separation was to be effectuated.  And this has nothing to do with the right of the Union to enforce the ELM under Article 19 of the National Agreement. It has to do with the authority of the supervisor to separate a probationary employee.  Supervisors do not have that authority; and it did not happen in this case.

Furthermore, we observe that there is a very good reason not to let supervisors terminate probationary employees.  Under 12.1.A, terminated probationary employees have no substantive or procedural due process rights.  When a supervisor sends a request to the Manager of Labor Relations requesting the separation of a probationary employee, that manager is required to exercise appropriate discretion in deciding whether to honor the request.  It is not difficult to imagine a supervisor who never would recommend a Muslim, or an African-American, or a homosexual, or a young person who rejected the supervisor's sexual advances, for continued employment.  Without the screening mechanism provided by the Manager of Labor Relations, the possibility of injustice would be very real.  Likewise, as the Daliessio EEO complaint illustrates, even though supervisors may recommend separation of probationary employees for little reason, they may not do so for an illegal reason.  Thus, the requirement that separations be done by the Manager of Labor Relations protects both employees and

14

the Employer.

## III.    THE EMPLOYER'S "COLLATERAL ESTOPPEL" ARGUMENT ADDS NOTHING TO ITS OTHER ARGUMENTS

The Employer's "collateral estoppel" argument depends almost entirely on its contention, refuted above, that there is no basis for Arbitrator Loeb's finding that Lorraine Daliessio was not separated during her probationary period.  The Employer also argues that Arbitrator Loeb's decision is an "arbitrability" decision holding that the Union's grievance in this case was arbitrable "where the Postal Service has allegedly failed to comply with certain procedures in separating the individual."    USPS Memorandum at 39. These arguments place the preclusion shoe on the wrong foot.

As explained in APWU's Memorandum in Support of its Motion for Summary Judgment, Arbitrator Das's decision conclusively held that a grievance contending that an employee's separation did not occur during the probationary period is arbitrable. Arbitrator Das held (Bell Dec. Exh. 4, at 2, 23):

> A dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitrable because that is a precondition to the applicability of Article 12.1.A

It is more than a form of collateral estoppel that binds the Employer to the Das decision. It is <u>stare</u> <u>decisis</u>.  Having failed to challenge the Das Award, which it had no basis for challenging in any event, the Employer cannot now claim that Arbitrator Loeb could not make a determination that Ms. Daliessio was not separated during her probationary period.  <u>See</u> USPS Statement of Material Facts ¶ 5 ("...national arbitration awards...are binding on the parties... .")

But, even apart from the binding effect of the Das award on the issue of

arbitrability, the Fourth Circuit's decision is inapplicable to this case.  In the case decided by Arbitrator Miles and reviewed by the Fourth Circuit, the Union challenged the employer's action not because it was untimely but because it did not satisfy the various procedural requirements of the Employee and Labor Relations Manual (ELM).  As the Fourth Circuit explained (204 F.3d 523, at 526), the Union had contended:

- that the proper official did not initiate the separation (ELM 365.325);

- that the separation notice failed to include the requisite conclusions as to the inadequacies of performance or conduct (ELM 365.326);

- that the employee received insufficient guidance and training; and

- that the employee was a victim of discrimination.

In his dissent from the Fourth Circuit majority's decision, Judge King essentially agreed with the Union's position, arguing that "separation not effected in accordance with these procedures during the probationary period must be effected as a 'removal' of a non-probationary employee."  204 F.3d at 532-33.

After the Fourth Circuit's decision in February 2000, the APWU initiated the National-level dispute that led to the Das Award in September 2001.  In that case, the APWU, and the National Association of Letter Carriers, AFL-CIO, which had intervened in the case, attempted to persuade Arbitrator Das to agree entirely with Judge King's dissent.  The Unions' position as summarized by the Employer in its post-hearing brief to Arbitrator Das was as follows:

> ...[T]he unions claim that if all the elements of ELM 365.32 are not satisfied, the probationary employee's separation has not been "effectuated," and the Postal Service is required to issue a removal notice, subject to the just cause provisions of Article 16 and grievance-arbitration procedure.

16

Second Bell Dec. Exh. 1, at 18.  The Employer's brief also argued:

> To allow probationary employees access to the grievance procedure to challenge alleged "procedural" violations of ELM at 365.32 would open the floodgates to grievances alleging violations of that and other ELM provisions. The unions identified five procedural issues they believe to be required by ELM 365.32; the parameters of each of these elements would have to be litigated.  In addition, the Elm contains provisions concerning probationary evaluations <u>See</u> <u>e.g</u>., ELM 376.  The Unions could alleged that such provisions contain procedural requirements that must be met in order to separate a probationary employee.

Second Bell Dec. Exh. 1, at 20.

Before Arbitrator Das, the Postal Service acknowledged that the Article 12.1.A condition that separation must occur during the 90-day probationary period rests on a contractual basis different from that of the requirements stated only in the ELM.  As the Employer's brief to Arbitrator Das explains (Second Bell Dec. Exh. 1, at 21.):

> Finally, the Unions allege that the Postal Service has "conceded" that notice of such employee's separation must be provided to a probationary employee within a 90-day period.  The unions pointed out that one of the four elements they argue is required to effectuate a separation is that "[t]he notice of separation must be given to the employee before the probationary or trial period," ELM 365.326.  The Unions do not understand how the Postal Service would distinguish the 90-day requirement from the other four elements contained in Elm 365.32.  (4/4/01) TR. at p. 28 (Catler).

> The distinction is an obvious one.  Article 12.1.A defines the probationary period for a new employee to be "ninety (90) calendar days."  The parties negotiated and agreed to the 90-day period, and it is an enforceable contract provision, unlike the remaining four elements which are contained in Elm 365.32, and are superseded by Article 12.1 .A. [Footnote omitted.][13]

It was in this context that Arbitrator Das explained (Das Award, Bell Dec. Exh. 4, at 21-

---

[13]  In a footnote, the Employer took the position that a separation notice does not have to be written, although "it is encouraged."

22:

> The one issue that legitimately can be raised in a case where the Postal Service claims that a grievance is barred by Article 12.1.A, is that the separation action did not occur during the probationary period.  The Postal Service acknowledges this, as it must, because Article 12.1.A has no application if the separation action does not occur during the probationary period.  That is a fundamentally different issue, however, from whether or not the separation action complied with all the particular requirements set forth in Section 365.32 of the ELM.  A challenge to the validity of the procedures followed in effecting a separation is barred by the broad prohibitory language of Article 12.1.A.  [Footnote omitted.]

Thus, the Employer acknowledged before Arbitrator Das that Area Arbitrators in individual cases would have jurisdiction to determine whether a disputed separation occurred during the employee's probationary period;   Arbitrator Das so held in his binding National-level award; and Arbitrator Loeb followed Arbitrator Das's guidance and applied Article 12.1.A in making his ruling.  This is entirely consistent with the Fourth Circuit's decision, which dealt with other procedural issues under the ELM.  But, even if the Das Award were not entirely consistent with the Fourth Circuit's decision, it would nevertheless be binding on the parties.  USPS Statement of Material Facts ¶ 5; see, APWU Memorandum in Support of Motion for Summary Judgment, at 14, 19-20.

Furthermore, it is well-established between these parties, in binding National-level arbitration, that the parties' arbitrators have the authority to resolve arbitrability disputes.  The leading case on this point is a National-level Award by Arbitrator Mittenthal.  Second Bell Dec. Exh. 2; Case Nos. H7T-3W-C 12454, et al.  In that case, the Union contended that the Employer's arbitrability defense was not arbitrable because it was just a merits-based defense.  Arbitrator Mittenthal held

> ... More importantly, Article 15, section 4A9 provides that "any dispute as to arbitrability may be submitted to the arbitrator and be determined by such arbitrator."

>    Arbitrability, in a real sense, is itself an "interpretive issue..." But even if it were
>    not, the arbitrability defense surely can be raised at the point at which the case is
>    actually heard before an arbitrator....
>
>    In any event, it seems clear that the Postal Service argument has little, if anything,
>    to do with the arbitrator's jurisdiction. It's claim, realistically viewed, is that I have
>    no choice but to accept management's interpretation of the Elm.... This is an
>    argument on the merits in scant disguise.

Mittenthal Award at 4-5.

Thus, even apart from the fact that the Das Award conclusively established that
Area Arbitrators have authority to determine whether the separations of an employee
occurred within the applicable probationary period, Arbitrator Loeb was acting within his
jurisdiction when he found that issue to arbitrable in this case, because the National
Agreement provides that arbitrability issues under the National Agreement are for the
arbitrators to decide. See Loeb Award at 15; Bell Dec. Exh. 2. As the Court held in
American Postal Workers Union, AFL-CIO v. National Postal Mailhandlers Union and
United States Postal Service, No. 1:05-CV-01290 (D.D.C. February 21, 2007),

>    The "scope of an arbitrator's authority is itself a question of contract interpretation
>    that the parties have delegated to the arbitrator." [citing W.R. Grace & Co. v. Local
>    Union 759, Int'l Union, 461 U.S. 757, at 765 (S.Ct. 1983)] See also Madison Hotel,
>    144 F.3d at 857. The arbitrator's conclusions regarding the scope of his authority
>    are thus entitled to judicial deference similar to that given to an arbitrator's
>    interpretation of a collective bargaining agreement. Id.[14]

And finally, even if the Das Award had not conclusively settled the arbitrability of
the issue in this case, and even if the National Agreement did not provide, as it does,

---

[14] We would add only that the Court understated the case. Where, as here, the parties
have agreed that the arbitrator has the authority to decide arbitrability, that decision on
arbitrability is every bit as binding as any other arbitrator's decision. First Options of
Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

19

that arbitrability disputes under the Agreement are for the arbitrator to decide, the Employer's arbitrability argument in this case involves the type of "gatekeeping" question that should be left for the arbitrator's determination.   See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, at 84-85 (2002)("[W]hether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for he arbitrators to decide.")(Emphasis original).

Arbitrator Loeb's decision unquestionably was within his authority.

## III.   CONCLUSION

We observe that in receiving the Loeb Award, the Employer received what it agreed to under the parties' contract.   The Employer complains that it is being deprived of its right to separate Lorraine Daliessio without recourse during her probationary period.   But that contention begs the question.   The parties' neutral arbitrator has determined that the Employer did not have a right to terminate Daliessio without recourse because it waited too long to do so.   Accordingly, Daliessio and the Union had a contractual right to insist on just cause and a fair hearing if she was to be terminated after her probationary period.   As the Supreme Court has consistently held in a series of cases spanning almost 50 years, the Employer has no right to ask the Court to substitute its judgment on this point for that of the arbitrator chosen by the parties to decide their dispute.   The Loeb Award is final and binding.

Dated May 24, 2007          Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By: _/s/: Darryl J. Anderson_____
          Darryl J. Anderson (D.C. Bar No. 154567)

20

1300 L Street, Suite No. 1200, NW
Washington DC 20005
(202) 898-1707/ (202)
(202) 682-9276 (FAX)
Danderson@odsalaw.com

Attorneys for American Postal Workers Union AFL-CIO

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                                )
UNITED STATES POSTAL SERVICE                )
                                                                )
        Plaintiff and                                      )
        Counterclaim Defendant,                    )
                                                                )
        V.                                                       )          Civil Action No. 06-793 RJL
                                                                )
AMERICAN POSTAL WORKERS UNION         )
        AFL-CIO                                             )
                                                                )
        Defendant and                                    )
        Counterclaim Plaintiff                         )
_____ )

**APWU's STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS AN ISSUE THAT MUST BE LITIGATED**

        In support of its Opposition to the motion for summary judgment filed by the

United States Postal Service (USPS or the Employer) in the above-captioned matter, the

American Postal Workers Union, AFL-CIO ("APWU) states the following material facts as

to which there is a genuine issue necessary to be litigated, in accordance with L. Cv. R.

7.1(h).

        1.  The Employer asserts that Lorraine Daliessio was "verbally terminated" by her

supervisor during her shift that began on January 30, 1998  (meaning that she was told

orally by her supervisor on that night  that she was being terminated immediately)  See

USPS Statement of Material Facts ¶¶ 13, 15, 16. The APWU will prove that Ms.

Daliessio's supervisor did not tell her on that night that she was being terminated

1

immediately, or even that she was being terminated.  As evidence of this fact, the APWU will rely on:

- The Employer's Employee and Labor Relations Manual (ELM), Section 365.325 provides that supervisors do not have the authority to separate or terminate probationary employees.  Supervisors must refer the question of separation to an official having authority to take the separation action. Quoted in the Das Award, Bell Dec. Exh. 3, at 3.

- Supervisor Barnett sent a letter to the Manager of Labor Relations on February 4, 1998, stating that "I am requesting that action be initiated to remove PTF Mark-Up Clerk Lorraine Daliessio, SSN#... from the rolls of the United States Postal Service effective January 30, 1998."  Waters Dec. Exh. 5, at 17.

- Lorraine Daliessio prepared a four and one-half long, single-spaced, statement about how her supervisor treated her during her probationary employment, which Daliessio filed in support of her EEO complaint against her supervisor the Postal Service.  Nowhere in that detailed narrative does she make reference to being told that she was terminated or terminated immediately.  Instead, she was informed that her supervisor would not recommend her for retention or rehire.  Waters Dec. Exh. 8. at 21-25.

- The Loeb Award, Bell Dec. Exh. 2, includes an extended discussion of the facts of the case, and of the parties' arguments, but it makes no reference to any contention by the Employer that Daliessio had been told that she was being terminated immediately.

2

- The Employer's written opening statement submitted to Arbitrator Loeb (Waters Dec. Exh. 6, at 3 and 24) does not claim that Daliessio was told that she was being terminated "immediately"; it merely asserts that she was told that she was being terminated.


Dated May 24, 2007                     Respectfully submitted,

O'DONNELL, SCHWARTZ & ANDERSON, P.C.

By:  /s/: Darryl J. Anderson
          Darryl J. Anderson (D.C. Bar No. 154567)
          1300 L Street, Suite No. 1200, NW
          Washington DC 20005
          (202) 898-1707/ (202)
          (202) 682-9276 (FAX)
          Danderson@odsalaw.com

Attorneys for American Postal Workers Union AFL-CIO

3