In the Matter of the Arbitration

between

UNITED STATES POSTAL SERVICE

and

AMERICAN POSTAL WORKERS UNION,
AFL-CIO

and

NATIONAL ASSOCIATION OF LETTER
CARRIERS, AFL-CIO

Arbitration Case No.
Q-98C-4A-C99251456

BEFORE ARBITRATOR DAS

## UNITED STATES POSTAL SERVICE'S POST-HEARING BRIEF

### I.   INTRODUCTION

This case is before the Arbitrator pursuant to a grievance filed by the

American Postal Workers Union, AFL-CIO ("APWU").  The National Association of

Letter Carriers, AFL-CIO ("NALC") participated in the hearing as an intervening

party.  A hearing on the merits was held on February 28 and April 4, 2001.

Opening statements were made by each of the three parties; exhibits were offered

and received; and testimony was given by United States Postal Service ("Postal

Service") witness Carol H. Booher.  The Postal Service's case in chief was

submitted mainly through attorney presentation, offered by the Postal Service's

advocate, Larissa Omelchenko Taran, with supporting testimony offered by Ms.

Booher.  Both the APWU and the NALC presented their case in chief entirely

EXHIBIT
**1**
Blumberg No. 5119

ATTACHMENT A

through attorney presentation, offered by the Unions' advocates, Susan L. Catler and Keith Secular, respectively.

## II. BACKGROUND

A. Grievance Q98C-4Q-C 99251456

By letter dated August 6, 1999, the APWU initiated a Step 4 Interpretive Dispute in accordance with Article 15.4.D of the National Agreement, stating that the parties have a dispute "as to the interpretation of Article 12, Section 1." Joint 1 at p. 11. Specifically, Article 12, Section 1 provides a ninety (90) calendar day probationary period for new employees. That section also provides that the Postal Service "has the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto." Article 12.1.A.

The APWU stated that the parties have no disagreement "that if a separation is effectuated during the employee probationary period, such employees do not have access to the grievance-arbitration procedure." Joint 1 at p. 12. However, it is the APWU's position that if the separation of an employee is not "effectuated " during the probationary period, access to the grievance procedure is permitted pursuant to Article 16 of the National Agreement. Joint 1 at p. 12.

2

The APWU further alleged that a probationary separation is "effectuated" only if the Postal Service has complied with all of the provisions contained in Section 365.32 of the Employee and Labor Relations Manual ("ELM"). These elements include written notification, within the probationary period, advising the employee why he or she is being terminated and the effective date of the action. ELM 365.325. Joint 2 at p. 3. In addition, the information in the notice must consist of the appointing official's conclusions as to the inadequacies of performance or conduct. Id. Finally, supervisors may recommend separation-disqualification, but such recommendations must be referred to the official having the authority to take the action. ELM 365.324. Id.

On March 9, 2000, the parties met to discuss the dispute. By letter dated March 24, 2000, and pursuant to Article 15.4.D, the APWU restated its position regarding the dispute Id. at 8. By letter dated March 31, 2000, the APWU appealed the dispute to arbitration. Id. at 7.

By letter dated August 28, 2000, the Postal Service provided the APWU with its understanding of the issue, which was defined by the Postal Service as "whether a probationary employee may utilize the grievance procedure to challenge his separation alleging a violation of Section 365 of the ELM." Id. at 5. The Postal Service explained that Article 12.1.A of the National Agreement is dispositive of the issue, and clearly denies a probationary employee access to the grievance procedure to challenge his/her separation. Id.

3

The language of Article 12.1.A is clear and unequivocal, and does not allow for an exception for challenges based on alleged failures to follow ELM 365.32. Id. The Postal Service explained that the parties negotiated the language of Article 12.1.A, and that if the parties had intended to create exceptions to the prohibition contained therein, they would have done so. Id. at 6. In fact, in past negotiations, the union unsuccessfully sought to amend Article 12 to provide probationary employees access to the grievance-arbitration procedure. Id. Notwithstanding these attempts, the language of Article 12.1.A, as well as that of ELM 365, has remained virtually unchanged for over 20 years. Id. In addition, Article 19 of the National Agreement provides that in the event of a conflict between the National Agreement and the ELM, the language contained in the National Agreement controls. Id.

The Postal Service noted that the Union's reading of the relevant language completely undermines the purpose of Article 12.1.A. The purpose of that provision is to provide the Postal Service with unfettered discretion to terminate a probationary employee without being required to defend its action in accordance with the detailed protections afforded to non-probationary employees. As a practical matter, if procedural challenges were not excluded by Article 12, every probationary separation could be challenged by the union. Id. This is precisely what the language of Article 12.1.A was intended to avoid. Id.

4

Finally, the Postal Service pointed out that the Union's arguments have been rejected in both national arbitration and by federal courts. In Case No. H1C-4C-C 27351, National Arbitrator Nicholas Zumas upheld the Postal Service's position in an arbitration in which the union argued that probationary employees could utilize the grievance-arbitration procedure to vindicate an alleged violation of Article 2, Non-Discrimination and Civil Rights. Id.

Most significantly, the Postal Service noted that the Fourth Circuit recently addressed the exact issue raised by the Union, and rejected the Union's procedural challenge argument in its entirety. Specifically, in United States Postal Service v. American Postal Workers Union, 204 F.3d 523, 528 (4th Cir. 2000), the Court held that Article 12.1.A "makes non-grievable the entire class of disputes having any 'relation' to [the] separation [of probationary employees. . . ." 204 F.3d at 528. Id. at 5.

By letter dated January 18, 2001, the parties scheduled the case for arbitration. Id. at 1.

B. District Court Cases

The majority of regional arbitration awards have supported the Postal Service's position regarding the non-arbitrability of issues concerning the separation of a probationary employee. Despite the dispositive decision of the Fourth Circuit,

USPS V. APWU, 204 F.3d 523 (4th Cir. 2000), several regional panel arbitrators

have found probationary employee separation grievances to be arbitrable.

Because of the significance of this issue, the Postal Service initiated actions in

federal district court to vacate a number of those awards.[1]  In each case, the Union

filed a counterclaim for enforcement.   A number of the suits have been stayed

pending the outcome of this proceeding.[2]

---

[1] Action to vacate January 13, 2000 Award of Arbitrator Morris E. Davis (Grievance Nos. F94C-1F-D99054306, F94C-1F-D99054307; and F94C-1F-D99054308) initiated in United States District Court for the District of Columbia on April 12, 2000 against APWU, Civil Action No. 1:00CV00794 (PLF); Action to vacate February 22, 2000 Award of Arbitrator James P. Martin (Grievance No. I90T-1I-C-95057449) initiated in United States District Court for the District of Columbia on May 23, 2000 against APWU, Civil Action No.1:00CV01164; Action to vacate March 5, 2000 Award of Arbitrator Robert F. Oberstein (Grievance No. E94C-4E-D 99046838) initiated in United States District Court for the District of Arizona on June 5, 2000 against APWU, Civil Action No. 001066PHX (SMM); Action to vacate June 23, 2000 Award of Arbitrator Joseph S. Cannavo (Grievance No. A98C-4AD 00054792) initiated in United States District Court for the District of Columbia on November 20, 2000 against APWU, Civil Action No. 1:00CVO 2800; Action to vacate October 2, 2000 Award of Arbitrator Kathleen M. Devine (Grievance No. A98N-4A-C 00055252) initiated in United States District Court for the District of Columbia on December 29, 2000 against NALC, Civil Action No. 1:00CV0 3109 (CKK).

[2] In USPS v. NALC, 1:00CV0 3109 (CKK), the parties jointly sought a stay on May 16, 2001; the stay was granted on May 17, 2001.  In USPS v. APWU, Civil Action No. 1:00CV00794 (PLF), the Union filed for a stay on October 12, 2000, and the stay was granted on November 15, 2001.  On May 17, 2001, the Union filed an unopposed motion to continue the stay; the motion was granted on May 21, 2001. Finally, on February 26, 2001, the parties filed a joint motion for a stay in USPS v. APWU, Civil Action No. 001066PHX (SMM); the stay was granted on February 27, 2001.  It is expected that the parties will jointly move to continue the stay.

## III. ARGUMENT

### A. Article 12.1.A Explicitly and Completely Bars Probationary Employees' Access to the Grievance-Arbitration Procedure

1. Language and Underlying Purpose of Article 12.1.A

The contractual language of Article 12.1.A is as clear and unequivocal as contract language can be. It expressly states that the Postal Service "shall have the right to separate from its employ any probationary employee at any time during the probationary period." Article 12.1.A. Moreover, as if that language were not clear enough, the language of the National Agreement continues that "these probationary employees shall not be permitted access to the grievance procedure in relation thereto." A more forcefully stated, unambiguous grant of right to an employer can hardly be imagined.

The probationary period is intended to be a trial period – an extension of the selection process – designed to determine if the initial decision to employ a person was appropriate. Tr. at p. 143 (Booher)[3]. In addition to allowing the Postal Service to thoroughly investigate criminal, military and prior employment files, it allows the Postal Service to evaluate an employee's on-the-job performance prior to making a permanent employment decision. Tr. at pp. 142-143 (Booher). The purpose of Article 12.1.A is to allow the Postal Service to make such evaluations, and if necessary, separate a probationary employee without becoming entangled

---

[3] The February 28, 2001, Transcript will be referred to as "Tr. at p.___," whereas the April 4, 2001 Transcript will be referred to as "(4/4/01) Tr. at p. ___."

in the complicated and time-consuming procedures afforded to permanent

employees by Articles 15 (Grievance-Arbitration Procedure) and 16 (Discipline

Procedure) of the National Agreement. See APWU v. USPS, 940 F. 2d. 704, 707

(DC Cir. 1991)(the purpose of the probationary period, which is to permit an

employer to evaluate a new employee on a trial basis and terminate him for

whatever reason it chooses during the trial period of employment, would be

undermined if probationary employees were allowed to enforce the just-cause

requirement of Article 16). This right is especially important in an organization as

large as the Postal Service, and becomes increasingly important as the Postal

Service moves away from the notion of a traditional personnel office, and towards

a system where the supervisor has increased autonomy and uses shared web-

based applications to process personnel actions directly. Tr. at p.184-185

(Booher).


2. Negotiations History


The current language of Article 12.1.A first appeared in the 1971 National

Agreement, the first to be negotiated by the parties after the passage of the Postal

Reorganization Act, 39 U.S.C. §101 et seq., ("PRA") (Tr. 41 (Catler); Tr. 114

(Taran).[4] Although the Unions resisted the inclusion of the prohibition, Postal

Service negotiators insisted that management have the unequivocal right to


8

dismiss an employee during his/her probationary period without having the decision challenged through the grievance-arbitration procedure. Tr. 114 (Taran). Prior to the PRA, the Post Office Manual, United States Postal Department ("Postal Manual"), contained the "operating instructions" for all functions of the organization, including personnel. Tr. 139-140 (Booher). Pursuant to the Postal Manual, the probationary period was set at one year. APWU Exhibit 2 (Postal Manual, Ch. II. Art. 25(a) (1955)). The Postal Manual continued in effect for several years after postal reorganization and collective bargaining began in 1971, until the first edition of the ELM was released in 1978. Tr. at p. 140 (Booher). The provisions of the Postal Manual with respect to probationary separations were in large part continued in ELM 365.32, despite the negotiated language of Article 12, because those provisions continue to apply to non-bargaining probationary employees.

During the 1971 negotiations, the Unions proposed a 30-day probationary period while the Postal Service proposed a six-month probationary period. Postal Service Exhibit 13 p.1-2; See also Postal Service Exhibit 6, p.11 and Postal Service Exhibit 7, p.1. Ultimately, the parties agreed to a 90-day probationary period. The Postal Service was adamant that the Employer's right to separate employees during their probationary period be an unencumbered one. Management needed this right so that it could expeditiously make decisions about

---

[4] Beginning with the first National Agreement and through the 1990 National Agreement, the APWU and the NALC bargained together as the Joint Bargaining Committee (JBC). Tr. 114 (Taran).

which probationary employees to retain without having to worry about going through the time consuming grievance-arbitration process. The quid pro quo for the substantially shortened probationary period was the employer's unencumbered right to separate probationary employees during the 90-day probationary period.

As the Fourth Circuit noted, if the Unions wished probationary employees to have access to the grievance procedure to challenge a separation, they could have bargained for such a right. Postal Service Exhibit 2 (204 F.3d at 530). The Unions' inability to achieve this right is demonstrated by the fact that the Unions have made proposals over the years to amend the language of Article 12.1.A to secure probationary employees access to the grievance procedure.[5]

---

[5]See Postal Service Exhibit 14 (1973 JBC proposal to amend Article 12.1.A to include, among other things, probationary employees' access to the grievance procedure in relation to separation, and separation for just cause during probationary period)[5]; Postal Service Exhibit 15 (1975 JBC proposal to amend Article 12.1.A to include, among other things, probationary employees' access to the grievance procedure in relation to separation, and separation or discipline of probationary employees for just cause only); Postal Service Exhibit 16 (1978 JBC proposal to amend Article 12.1.A to include, among other things, probationary employees' access to the grievance procedure for all grievable actions other than separation); Postal Service Exhibit 17 (1981 JBC proposal to amend Article 12.1.A to include, among other things, requiring just cause for probationary employees who have suffered compensable injuries or job-related illnesses and giving them access to the grievance-arbitration procedure); and Postal Service Exhibit 18 (1987 JBC proposal to amend Article 12.1.A to provide that a probationary discharge must meet certain standards, and access to the grievance-arbitration procedure in relation thereto).

The Unions were unsuccessful in negotiating the aforementioned, and Article 12.1.A has remained unchanged. The Unions cannot gain through arbitration what they could not gain through negotiation. In negotiating the National Agreement, the parties struck a bargain, and part of the bargain was that the probationary period was shortened from one year to 90 days. Another part of the bargain was that the Postal Service was given the discretion to discharge probationary employees without the prospect that such decisions will be subject to contractual review. The parties unambiguously agreed that a certain class of disputes is not subject to the grievance-arbitration procedure, and only the parties, by mutual agreement, may change that.

### B. Federal Courts and National and Regional Arbitrators Have Held That Article 12.1.A Bars Probationary Employees Access to the Grievance-Arbitration Procedure

Article 12.1.A expressly denies probationary postal employees *any* contractual right to contest their discharge. As noted above, this language was bargained for in order to permit the Postal Service an opportunity to evaluate a new employee on a trial basis and, if so decided, to separate such employees easily. Article 12.1.A does not differentiate between substantive and procedural challenges of a probationary employee's separation – both are precluded by the blanket prohibition contained in that provision.[6] Indeed, in a decision dated February 25,

---

[6] The Union attempts to distinguish between challenges of a probationary employee's removal based on procedural, rather than substantive, grounds. Tr. at p. 41-42 (Catler).

2000, the Fourth Circuit Court of Appeals specifically addressed the Article 12.1.A

prohibition and rejected the Union's back-door attempt to gain access for

probationary employees to the grievance arbitration procedure. Postal Service

Exhibit 2 (USPS v. APWU, 204 F.3d 523 (4th Cir. 2000)).


In the arbitration underlying that decision, a probationary employee was

terminated during her probationary period. The APWU grieved her termination,

claiming, among other things, that in separating her, the Postal Service failed to

comply with the provisions contained in ELM 365. Id. at p. 526. Specifically, the

Union claimed that the proper official did not initiate the separation (ELM 365.325)

and that the separation notice failed to include the requisite "conclusions as to the

inadequacies of performance or conduct " (ELM 365.26). Id.  As such, the Union

argued, the separation was not "effectuated", and if the Postal Service wanted to

separate her, it would have to follow the discharge procedures applicable to

permanent employees, which would include access to the grievance-arbitration

procedure. Id.


The Postal Service argued the same position it takes in this case -- that the matter

was not grievable by virtue of the language of Article 12.1.A because the dispute

related to the separation of a probationary employee.


Arbitrator Miles ruled that the grievance was arbitrable. Id. He asserted that the

termination of a probationary employee must be effectuated in accordance with

the ELM. He further stated that Article 19 incorporated the provisions of the ELM

related to wages, hours and working conditions, and that a violation of ELM

procedures was a violation of the National Agreement, and therefore subject to

arbitration under Article 15.  Id.

The Postal Service filed an action in the District Court for the Eastern District of

Virginia to vacate that award, and the court did so on summary judgment.  Id.

The district court concluded that Arbitrator Miles exceeded his authority, that the

decision altered the terms of Article 12.1.A, and thereby violated the prohibition

contained in Article 15.5.A(6) against an arbitrator altering the National

Agreement.  Id.

The APWU appealed, and the Fourth Circuit Court of Appeals affirmed the district

court's decision.  The court stated that the "arbitrator's decision that procedural

attacks on the separation of a probationary employee are arbitrable contravenes

the unambiguous language of Article 12.1.A."  Id. at p. 528.

> "This language is unqualified and admits of no exception.  The
> provision makes no distinction whatsoever between procedural
> attacks on separations and substantive challenges.  The sweeping
> phrase "in relation thereto" brings any separation-related grievance
> by a probationary employee within the ambit of the prohibition.  In
> other words, so long as the matter involves probationary employees
> and the question of separation, no grievance may be brought.
> In fact, it is difficult to see how the parties could have been any
> clearer in prohibiting every kind of separation-related grievance
> by a probationary employee.

Id. at  528.

The Court specifically rejected the APWU's Article 19 argument, pointing out that there is no language in the ELM or Article 19 that even suggests that ELM violations are grievable by probationary employees. Id. Even if there were, the language of Article 19 states that nothing in postal handbooks or manuals shall conflict with the National Agreement. Id. Therefore, the clear language of Article 12 must take precedence.

In sum, the Fourth Circuit recognized the Unions' argument for what it is -- "a back door" attempt to obtain access for probationary employees to the grievance arbitration procedure, and rejected that argument in its entirety.

In USPS v. APWU, 922 F 2d. 256, (5th Cir. 1991), the APWU sought to grieve the separation of a probationary employee on the ground that the Postal Service separated the employee due to a compensable work-related injury, in violation of the Federal Employees Compensation Act (FECA), and postal regulations implementing FECA. Postal Service Exhibit 3 (USPS v. APWU, 922 F.2d 256 (5th Cir. 1991)). Again, the APWU argued that despite the Article 12 prohibition, such alleged violations were grievable because Article 19 incorporated them into the National Agreement. Id. at 259. The arbitrator found the grievance to be arbitrable. Id. The district court vacated the award, and the Fifth Circuit affirmed on the grounds that the language of Article 12.1.A is clear and unequivocal, and that the Agreement denies the probationary employee "any right to resort to grievance and arbitration procedures." Id. "Article 12 does not permit the

arbitrator to ever reach the question of arbitrability when the dismissal at issue involves probationary employees." Id. at 260.

In APWU v. USPS, 940 F. 2d. 704 (D.C. Cir. 1991), the APWU unsuccessfully attempted to use Article 2, Non-Discrimination and Civil Rights, to gain access to the grievance-arbitration procedure for probationary employees. Postal Service Exhibit 4 (USPS v. APWU, 940 F.2d 704 D.C. Cir. 1991). Article 2.3 specifically states that grievances arising under that article may be filed at Step 2. Id. at 705. The DC Circuit rejected that attempt as well, concluding that although Article 2 of the National Agreement expressly allows the grievance and arbitration of disputes arising under that provision, probationary employees have no access because Article 12 denies them such access. Id. at 707. Article 12 "permits the USPS to dismiss any probationary employee regardless of its reason for doing so without breaching the collective bargaining agreement." Id. The Court further held that the purpose of the probationary period is to permit an employer to evaluate a new employee on a trial basis and terminate him for whatever reason it chooses during such period. Id. The Court held that purpose would be undermined if probationary employees were allowed to enforce the just-cause requirement of Article 16. Id.

In 1985, Arbitrator Nicholas Zumas issued the only national level arbitration award interpreting the Article 12.1.A prohibition. Postal Service Exhibit 5 (Award No. H1C-4C-C 27351/2 September 23, 1985). That case involved two employees who were discharged during their probationary period. They filed grievances alleging

15

discrimination, in violation of Article 2, and retaliation for filing workers'

compensation claims. Significantly, Article 2, which prohibits discrimination on the

basis of handicap, specifically provides that "[g]rievances arising under this Article

may be filed at step 2 of the grievance procedure. . ."


Arbitrator Zumas concluded the grievances were not arbitrable and dismissed

them. Postal Service Exhibit 6 at p. 15.  He stated that "Article 12.1.A, in clear,

unqualified, unrestricted, and all-encompassing language, denies probationary

employees access to the grievance-arbitration process if they are terminated <u>for</u>

<u>any reason</u> during the probationary period."  Postal Service Exhibit 6 at p. 11. In

order to enforce the contractual rights contained in Article 2, an employee must

successfully complete the probationary period.  As Arbitrator Zumas stated,

"[t]here is simply no contractual basis that would warrant a conclusion that the

Article 12.1A exception has application only to 'just cause" terminations."[7]  Postal

Service Exhibit 6 at p. 11.

---

[7]Arbitrator Zumas subsequently issued a regional arbitration award in Case No.
N1C-1E-D 27207, dated September 28, 1984. APWU Exhibit No. 10, in which
Article 12.1.A was discussed. The issue in that case was whether the Grievant
was notified of his termination prior to the expiration of his probationary period.
Although ELM 365.32 was referred to by Arbitrator Zumas, he did not conclusively
hold that all the elements of that section must be complied with in order to
effectuate a probationary separation. To the contrary, he stated that "[i]t is noted
that  there is no requirement that the probationary employee be notified in writing
of such termination; and oral terminations of probationary employees have been
upheld in several prior awards." APWU Exhibit 10 at p. 4. Although he did find
the grievance to be arbitrable, his conclusion was based on his finding that "the

Finally, a total of 126 regional arbitration awards were submitted by the APWU,

NALC and U. S. Postal Service (54, 22 and 50, respectively). Of the total, 92

cases were denied or rendered nonarbitrable, whereas only 34 were sustained. [8]

### C. The Unions Have Failed to Establish That ELM 365.32 Supercedes the Clear and Unequivocal Language of Article 12.1.A

The Unions have the burden of proof in this case, and they have failed to meet

that burden. The Unions rely on the same argument they unsuccessfully

advanced before the Fourth Circuit. Specifically, the Unions argue that ELM

365.32 contains the procedural requirements for "effectuating" the separation of a

probationary employee. Union counsel explained in detail how the language of

ELM 365.32 had its genesis in the Postal Manual[9], and was the foundation for the

language contained in ELM 365.32. Tr. 44-58 (Catler). As such, the parties'

definition of what the term "separation" means has been in effect since the first

---

Grievant was not notified, in writing or otherwise, of his separation prior to the end
of the probationary period. . . . " Id.

[8]The APWU argues that it was not until after the Fourth Circuit's decision that a
majority of arbitrators began ruling for the Postal Service. It is clear that most
arbitrators, before and after the court's vacature of the Miles decision, agreed with
the Fourth Circuit's reasoning. While the Union's argument has no relevance to
the issue at hand, a review of the APWU's exhibits contradicts the argument. In
fact, most of the arbitration awards which post-date the Fourth Circuit decision do
not even mention that decision.

[9] Section 717.32, entitled Separation-Disqualification (S-Disqualification),
contained essentially the same provisions that the current ELM 365 contains.

Postal Manual, dated 1959, was continued in ELM 365.32, which first appeared in 1978, and continues through today. Tr. 58 (Catler)[10].

The Unions further claim that Article 19 of the National Agreement, entitled Handbooks and Manuals[11], incorporates Postal Service handbooks and manuals, into the National Agreement. Tr. 58 (Catler). According to the Unions, ELM violations are therefore grievable because ELM violations are also violations of the National Agreement.

As such, the Unions claim that if all the elements of ELM 365.32 are not satisfied, the probationary employee's separation has not been "effectuated," and the Postal Service is required to issue a removal notice, subject to the just cause provisions of Article 16 and grievance-arbitration procedure.

This Article 19 argument is fundamentally flawed and blatantly ignores the plain meaning of the Article 12.1.A language. Even assuming, arguendo, that Article 19 incorporates the ELM into the National Agreement, as the Fourth Circuit stated,

> there is no language in either the ELM or in Article
> 19 that  even suggests ELM violations are grievable
> by probationary employees. Further, even if there

---

[10] The Postal Manual continued in effect for several years after Postal Reorganization and collective bargaining began, in 1971, until the first edition of the ELM was released in 1978. Tr. at p. 140 (Booher).

[11] Article 19 provides that "[t]hose parts of all handbooks, manuals and published regulations of the Postal Service, that directly relate to wages, hours or working conditions, as they apply to employees covered by this Agreement, shall contain nothing that conflicts with this Agreement. . . "

> were any hint in the ELM that probationary employees
> could grieve ELM violations, this hint would run
> smack into Article 12.  And Article 19 unequivocally
> states that Postal Service handbooks and manuals
> "shall contain nothing that conflicts with this Agreement."

Postal Service Exhibit 6 (204 F.3d at 528).

Therefore, the claim that the ELM somehow provides probationary employees with

the right to grieve the manner in which they are separated is directly contrary to

the clear, unequivocal language of Article 12.1.A, which expressly denies

probationary employees such access.

In addition, the Unions' argument that the alleged definition of "separation" has

been in existence since the first issue of the Postal Manual, and continues through

the current ELM ignores the parties' very significant negotiations history.[12] As

previously discussed, the blanket prohibition of Article 12.1.A was negotiated by

the parties at the same time that the parties negotiated a substantially shorter

probationary period.  The quid pro quo for the Postal Service's agreement to

shorten the probationary period was the Unions' agreement that the Postal

Service has the right to separate a probationary employee during the probationary

period without such employee having access to the grievance procedure in

relation to such separation.

---

[12] As explained by Carol Booher, the provisions of the Postal Manual were
incorporated wholesale into the ELM, and continued in the ELM, even after
bargaining began, because they apply to *non-bargaining* unit employees.

To allow probationary employees access to the grievance procedure to challenge alleged "procedural" violations of ELM 365.32 would open the floodgates to grievances alleging violations of that and other ELM provisions.  The Unions identified five procedural issues they believe to be required by ELM 365.32; the parameters of each of these elements would have to be litigated.  In addition, the ELM contains provisions concerning probationary evaluations.  See e.g., ELM 376.  The Unions could allege that such provisions contain procedural requirements that must be met in order to separate a probationary employee.

Apart from eviscerating the Postal Service's bargain, permitting probationary employees to challenge via the grievance-arbitration procedure the manner in which their separations were effectuated would effectively render the language of Article 12.1.A meaningless.  Realistically speaking, the Unions could grieve nearly every probationary separation by alleging a procedural violation.  As the Fourth Circuit noted, the Unions' distinction between procedural and substantive challenges is a "false dichotomy", and substantive challenges to probationary employees separations can often be formulated as procedural ones.  This unwarranted expansion of the Unions' right to pursue any probationary separation through the grievance procedure would defeat the original intent of the prohibition bargained for by the parties.

At the hearing, the Postal Service attempted to get clarification as to the scope of the Unions' grievance, and which ELM provisions the Unions believe might provide

probationary employees with access to the grievance-arbitration procedure.
(4/4/01) Tr. at p. 9-11. APWU counsel responded "if we come up with a third way
to go and attempt to vindicate the rights of probationary employees . . .your asking
these questions isn't going to foreclose us from making those arguments."
(4/4/01) Tr. at p. 14. (Catler). Clearly, the floodgates would be opened, and that
is not what the clear language of Article 12.1.A was intended to accomplish. To
the contrary – it was intended to expressly limit probationary employees access to
the grievance procedure.

Finally, the Unions allege that the Postal Service has "conceded" that notice of
such employee's separation must be provided to a probationary employee within a
90-day period. The Unions pointed out that one of the four elements they argue is
required to effectuate a separation is that "[t]he notice of separation must be given
to the employee before the probationary or trial period," ELM 365.326. The
Unions do not understand how the Postal Service would distinguish the 90-day
requirement from the other four elements contained in ELM 365.32. (4/4/01) Tr. at
p. 28 (Catler).

The distinction is an obvious one. Article 12.1.A defines the probationary period
for a new employee to be "ninety (90) calendar days." The parties negotiated and
agreed to the 90-day period, and it is an enforceable contract provision, unlike the

remaining four elements which are contained in ELM 365.32, and are superseded by Article 12.1.A.[13]

To uphold the Unions' position would open the floodgates to endless numbers of grievances concerning alleged procedural violations, and would undermine and render meaningless the language of Article 12.1.A.

## IV. CONCLUSION

For the foregoing reasons, the grievance should be denied.

Respectfully submitted,

Larissa Omelchenko Taran
Attorney
Employment and Labor Law
United States Postal Service
475 L'Enfant Plaza, S.W.
Washington, D.C. 20260-1150

---

[13] With regard to the issue of whether the separation notice must be written or may be oral, it is the Postal Service's position that although written notice is not required, it is encouraged. Written notice is preferable in a large organization for evidentiary reasons, and for record keeping purposes.