NATIONAL ARBITRATION PANEL

In the Matter of the Arbitration between )  GRIEVANTS: Employees
( from Tampa & Ft. Myers,
UNITED STATES POSTAL SERVICE            )  Fla., Macon, Ga., and
( Austin, Tex.
           -and-                        )
( CASE NOS.
AMERICAN POSTAL WORKERS UNION           )    H7T-3W-C  12454
(    H7T-3W-C  14652
)    H7T-3W-C  14653
     H7T-3W-C  14655
     H7T-3D-C  14884
     H7T-3S-C  18966
     H7T-3U-C  20347

BEFORE:              Richard Mittenthal, Arbitrator

APPEARANCES:

            For the Postal Service:   James Hellquist
                                      Labor Relations
                                      USPS Headquarters

            For the APWU:             Darryl J. Anderson
                                      Attorney (O'Donnell
                                          Schwartz & Anderson)

Place of Hearing:                     Washington, D.C.

Date of Hearing:                      July 2, 1992

Date of Post-Hearing Briefs:          August 28, 1992

AWARD:                   The Postal Service may
properly argue in this case that the grievances
are not arbitrable. APWU's effort to preclude the
arbitrator from hearing such an argument is
rejected.

Date of Award:    September 11, 1992

                                      /s/ Richard Mittenthal
                                      Richard Mittenthal
                                      Arbitrator

EXHIBIT
2
Blumberg No. 5119

ATTACHMENT A

## BACKGROUND

This case involves claims by several maintenance and motor vehicle employees that they should have been paid for time spent in travel status. The Postal Service insists that these grievances are not arbitrable. APWU insists that this Postal Service defense is itself not arbitrable. The parties seek a decision here only with respect to the latter point, the question of whether the Postal Service's arbitrability argument can properly be raised in this arbitration proceeding.

The Postal Service has a number of training facilities, the principal one being in Norman, Oklahoma. Because of the mechanization and automation programs introduced in recent years, many employees have been given considerable technical training. They are sent to Norman or some other training center for a period of one to nine weeks. The training sessions ordinarily run from Monday through Friday. This means that employees travel to the training center on a Sunday and travel home on a Friday or Saturday.

Over the years, many disputes have arisen as to whether employees are entitled to be paid for travel time. The Postal Service considers travel time to be compensable in some circumstances and not compensable in others. Its guidelines on this subject are found in subchapter 438 (Pay During Travel or Training) of the Employee & Labor Relations Manual (ELM). Specifically, Management pays employees for travel away from home overnight which "coincides with the employee's normal work hours at the home installation, whether on a scheduled or a non-scheduled day" (438.134). For example, if an employee with a regular schedule of 8:00 a.m. to 4:30 p.m., Monday through Friday, travels from 2:00 p.m. to 6:00 p.m. on any day of the week, Management considers two and one-half hours of such travel time (i.e., 2:00 p.m. to 4:30 p.m.) to be compensable. It does not pay for the travel time after 4:30 p.m., after his "normal work hours."

APWU disagrees. It relies on subchapter 440 (Fair Labor Standards Act Administration) of the ELM. It cites those portions of 440 that deal with "overtime pay" (444), that define "actual work" as "all time which management suffers or permits an employee to work" (444.21), and that expressly say "actual work...does include...travel time..." (444.21a). It urges that this language requires "travel time" to be counted as "actual work" for purposes of determining whether employees have worked more than 40 hours in a workweek. It believes that whenever this count results in a workweek in excess of 40 hours, the affected employee must be paid time and one-half for such excess hours.

-2-

The instant grievances raise this same question. They complain that employees who travel to or from a training facility outside of their "normal work hours" were improperly denied pay for such travel time. They were originally scheduled to be heard in regional arbitration. The Postal Service believed such grievances involved "an interpretive issue under the National Agreement." It withdrew the case from regional arbitration and referred it to Step 4 of the grievance procedure. These actions are permitted by Article 15, Section 4B5 of the National Agreement. The case was discussed in Step 4 but the Postal Service's position remained unchanged. The grievances were denied and APWU then appealed the dispute to national level arbitration.

There have been numerous regional arbitrations on this issue. Arbitrators have not been of one mind although a clear majority have ruled in APWU's favor. The majority have held that travel time outside "normal work hours" is compensable under the terms of 444.21a. There has been one prior national arbitration on this subject, Arbitrator Collins' award in Case No. H7C-NA-C 8 decided December 15, 1988. The parties, however, sharply disagree as to the significance of the Collins ruling for purposes of the present case.

The Postal Service asserts that the instant grievances are not arbitrable for the following reasons. First, it stresses that arbitral decisions are supposed to be "final and binding" according to Article 15, Section 4A6. It contends that the Collins award dealt with the very question raised by the present grievances and that the APWU argument here is an attempt to undo this "final and binding award." Second, it notes the APWU-NALC bargaining proposals in April 1987 and September 1990 which would require pay for travel time. It emphasizes that those proposals were rejected by Management and that APWU now seeks to obtain through arbitration what it was unable to obtain through collective bargaining. Third, it alleges that the compensable travel time provisions including 438.134 were placed in the ELM in September 1983 or earlier without any objection from APWU under Article 19 and that 438.134 plainly supports Management's position on the merits. It contends that the present grievances were filed in 1988, five years later, and should not be allowed to challenge the clear and unambiguous terms of 438.134. Fourth, it states that if the Postal Service is improperly compensating employees for travel time under FLSA, under subchapter 440 of the ELM, the proper forum for resolving the matter is the Department of Labor (DOL). It suggests that APWU take its protest to the DOL.

-3-

APWU attacks the Postal Service's right to raise the arbitrability defense. It maintains that this defense is itself not arbitrable. It believes that this position is supported by sound contractual and policy considerations and that the Postal Service's continuous, unwarranted assertion of arbitrability constitutes a kind of "bad faith" behavior which undermines the arbitration procedures of the National Agreement. It requests that this arbitrability defense be ignored and that this arbitration case proceed directly to an evaluation of the grievances on their merits.

## DISCUSSION AND FINDINGS

To begin with, APWU states that the Postal Service's arbitrability argument is a "new issue." It contends that this defense was raised for the first time at the arbitration hearing and had not been mentioned in the several steps of the grievance procedure. Its position, under these circumstances, is that Management should be considered to have waived any arbitrability claim.

This argument is not persuasive. Arbitrators do not possess unlimited authority. Our decisions, according to Article 15, Section 4A6, "shall be limited to the terms and provisions of this Agreement..." Should APWU pursue a grievance on the basis of something other than "the terms and provisions of this Agreement", the arbitrator would have no jurisdiction and could not make a ruling on the merits. The dispute would not be arbitrable. The Postal Service is free to raise this arbitrability defense at the arbitration hearing even though it had not raised the matter earlier. For this kind of defense goes to the very power of the arbitrator to act and cannot be waived through prior silence.[1]

Indeed, a claim that a dispute is not arbitrable would hardly be relevant before the dispute reached arbitration. It is an argument to be made at the arbitration step, no earlier. Therefore, the fact that the Postal Service did not mention arbitrability in Steps 1, 2, 3 or 4 has no real significance. This reality was acknowledged, to some extent at least, by the manner in which this case was scheduled for national level arbitration. The parties expressly agreed that their "scheduling letter does not constitute a waiver by either party of any issue of arbitrability...as it relates to the appeal and

---

[1] Procedural arbitrability (i.e., a timeliness claim), on the other hand, can be waived through silence. See, in this connection, Article 15, Section 3B.

-4-

certification requirements of Article 15..."[2] More importantly, Article 15, Section 4A9 provides that "any dispute as to arbitrability may be submitted to the arbitrator and be determined by such arbitrator."

* * *

Next, APWU states that this case was initially scheduled for regional arbitration and that the Postal Service withdrew it and referred it to Step 4. It believes that Management, by doing so, conceded that this case involved an "interpretive issue under the National Agreement." It urges that "interpretive issues" are, by definition, arbitrable under Article 15, Section 4D1. Its contention is that Management should be bound by its earlier view and should be precluded from now arguing that there is no "interpretive issue."

This argument is not convincing. True, the Postal Service asserted at an earlier stage in the processing of these grievances that the dispute raised an "interpretive issue under the National Agreement." It did so for the purpose of moving the dispute from regional arbitration to Step 4. Its action, however, did not surrender its right to argue in national arbitration that there is no "interpretive issue..."[3] Arbitrability, in a real sense, is itself an "interpretive issue..." But even if it were not, the arbitrability defense surely can be raised at the point at which the case is actually heard before an arbitrator. There is no reason for raising it any sooner. The dispute was scheduled but not heard before a regional arbitrator.

In any event, it seems clear that the Postal Service argument has little, if anything, to do with the arbitrator's jurisdiction. Its claim, realistically viewed, is that I have no choice but to accept Management's interpretation of the ELM. It cites arbitral history (i.e., the Collins award), collective bargaining history (i.e., the rejection of prior APWU-NALC bargaining proposals), and ELM history (i.e., APWU's

---

[2] Of course, APWU's contention here is based not on the "scheduling letter" but rather on the absence of any mention of arbitrability in the several steps of the grievance procedure.

[3] There are several Step 4 decisions in which the parties agreed that a request for travel time pay was "suitable for regional determination..." including "arbitration if necessary." But the willingness to arbitrate prior cases cannot preclude Management from raising the arbitrability defense in the present case.

-5-

failure to make an Article 19 protest in 1983 regarding the introduction of 438.134 in the ELM). This is an argument on the merits in scant disguise. However, the fact that the Postal Service's arbitrability claim is weak or misguided is no grounds for denying the Postal Service the right to make this claim. Nowhere in Article 15 is there any requirement that the arbitrator consider only those arguments that are sound and sensible. Nor is there any real proof that the arbitrability defense was asserted here in "bad faith." The "scheduling letter", signed by the parties, permits the Postal Service to challenge the arbitrator's jurisdiction in this case. That is exactly what the Postal Service did.

\* \* \*

APWU also states that a ruling here that this case is not arbitrable would deny APWU its right under Article 15 to arbitrate grievances alleging a violation of the National Agreement. It believes that such a ruling would be beyond my authority as arbitrator.

This argument ignores the limited nature of the question posed by the parties. They have asked, at this point at least, only for a ruling as to whether the Postal Service may raise an arbitrability claim in defending itself against these travel time grievances. APWU's argument rests on the assumption that I will grant this claim, that I will find the grievances not arbitrable. It should be apparent from what I have already said in this opinion that such a finding is highly unlikely. Thus, APWU's position is speculative in the extreme as well as premature.

But even if I were to accept the Postal Service's arbitrability defense, that would not undermine APWU's rights under Article 15. For I would, in such circumstances, simply be holding that the grievances did not involve "interpretive issues under this [National] Agreement" or that the grievances sought a decision not "limited to the terms and provisions of this Agreement." Article 15, Section 1 defines a "grievance" in the broadest possible manner. A "grievance" need "not [be] limited to..." the express language of the Agreement. Not all grievances, however, are proper subjects for arbitration. They must concern "interpretive issues" or the "terms and provisions" of the Agreement in order to be deemed arbitrable.

The fact that a grievance is held to be not arbitrable, assuming this decision is correct, in no way diminishes APWU's rights under Article 15.[4]

\* \* \*

Finally, APWU states that the Postal Service's arbitrability claim is a sham, nothing more than a mere assertion that the grievances have no merit. It urges that this specious defense, used not just here but in other arbitrations as well, demonstrates a "bad faith" attempt to undermine the arbitration procedures. It therefore asks that the arbitrability defense be disregarded in this case.

Over the years, the Postal Service has often asserted the arbitrability defense in national level arbitrations. This defense has not often met with success. But the futility of many such claims does not, by itself, demonstrate "bad faith." Arbitrability is a subtle issue. It ordinarily cannot be understood without some appreciation of the nature of the underlying contractual dispute. Hence, the line between arbitrability and the merits is sometimes blurred and Management will assert the former even though the case really involves only the latter. I am not convinced that Management is attempting to undermine the arbitration procedures by invoking the arbitrability defense.

\* \* \*

For these reasons, APWU's attempt to prevent the Postal Service's arbitrability claim from being heard in this case must be rejected.[5] When this arbitration resumes, the parties should be prepared to argue in one hearing both the Postal Service's arbitrability defense and the merits of the dispute.

---

[4] What APWU seems to be saying is that the "interpretive issue" here, the alleged violation of the ELM and hence Article 19, is so obvious that I could not possibly find otherwise. But that argument, like the Postal Service's arbitrability defense, is intimately tied to the merits of the dispute and can hardly be dealt with at this stage of the arbitration.

[5] Much of APWU's post-hearing brief (pages 28-36) concerns the claim that the Postal Service's arbitrability defense is not persuasive under the circumstances of this case. At the arbitration hearing, however, its claim was that the Postal Service should not be allowed to raise the arbitrability defense for the reasons already set forth in this opinion. It is only the latter claim which is before me at this time.

-7-

## AWARD

The Postal Service may properly argue in this case that the grievances are not arbitrable. APWU's effort to preclude the arbitrator from hearing such an argument is rejected.

_Richard Mittenthal_, Arbitrator

-8-