UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
FEB 2 9 2008
NANCY MAYER WHITTINGTON, CLERK
U S DISTRICT COURT

| | |
|---|---|
| UNITED STATES POSTAL SERVICE, | ) |
| | ) |
| Plaintiff and Counterclaim Defendant, | ) Civil Case No. 06-0793 (RJL) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN POSTAL WORKERS UNION AFL-CIO, | ) |
| | ) |
| Defendant and Counterclaim Plaintiff. | ) |

MEMORANDUM OPINION
(February 27, 2008) [#21, #22]

The United States Postal Service ("USPS" or "plaintiff") brought this action against the American Postal Workers Union AFL-CIO ("APWU" or "defendant") pursuant to 39 U.S.C. §1208(b) seeking to vacate an arbitration award rendered by Arbitrator Lawrence R. Loeb ("Loeb Award" or the "Award") on the grounds that the Award violated the parties' collective bargaining agreement and exceeded the arbitrator's authority. On October 11, 2006, the Court denied APWU's motion to dismiss. The APWU subsequently counterclaimed for enforcement of the Award. Now before the Court are the parties' cross-motions for summary judgment. After consideration of the parties' pleadings, the relevant law and the entire record herein, the Court GRANTS plaintiff's motion and DENIES defendant's motion.

## BACKGROUND

For many years, USPS and APWU, a union representing Postal Service employees, have entered into a series of collective bargaining agreements concerning the terms and conditions of employment for certain USPS employees. (Stmt. of Material Facts Not in Dispute of the APWU ("APWU Stmt.") ¶ 1; U.S. Postal Serv.'s Stmt. of Material Facts as to Which There Is no Genuine Issue ("USPS Stmt.") ¶ 1.) The relevant collective bargaining agreement in this case is the 1994-1998 National Agreement ("National Agreement"). (APWU Stmt. ¶ 2; USPS Stmt. ¶ 2.)

The events underlying the present case concern Lorraine Daliessio's ("Daliessio") separation from the USPS. Daliessio was hired on November 20, 1997 as a Part-Time Flexible Computer Forwarding Clerk in the Philadelphia, Pennsylvania post office. (APWU Stmt. ¶ 6; USPS Stmt. ¶ 11.) Pursuant to the National Agreement, she was required to serve a ninety-day probationary period, which ended on February 19, 1998. (APWU Stmt. ¶ 6; USPS Stmt. ¶ 11.) Daliessio encountered some difficulties during her probationary period. On January 30, 1998, Daliessio received an unsatisfactory evaluation and met with her supervisor, Vivian Barnett ("Barnett"), to review her evaluation. (USPS Stmt. ¶ 13; *see* APWU Stmt. ¶ 6.) At this time, Daliessio was informed that Barnett would not recommend Daliessio for retention, and indicated such on her evaluation form. *In re U.S. Postal Serv. v. Am. Postal Workers Union*, No. C94C-4C-D 98076813 (2006) (Loeb, Arb.) ("Loeb Award") at 2, attached as Ex. 7 to Ex. A of USPS Mem. Barnett then instructed Daliessio to clean out her locker, turn in her identification badge, and go home. (APWU Stmt. ¶ 6.) However, Daliessio refused to

2

sign the evaluation form confirming that she had been informed of Barnett's recommendation. Loeb Award at 2. Nevertheless, there is no question that Daliessio understood that she was being asked to leave,[1] and did not subsequently return to her duty (*see* USPS Stmt. ¶ 6).

On February 4, 1998, Barnett sent a letter to the labor relations official "requesting an action to be initiated to remove Daliessio . . . from the rolls of the United States Postal Service effective January 30, 1998." (Compl. ¶ 11; APWU Stmt. ¶ 3.) The labor relations official, for unknown reasons, however, did not take any further action until February 20, 1998 – one day after Daliessio's probationary period ended – when USPS sent a certified letter to Daliessio confirming her termination. (Compl. ¶ 11; APWU Stmt. ¶ 7.)

Following the receipt of this letter, the APWU initiated a grievance pursuant to the National Agreement, challenging Daliessio's termination and seeking reinstatement and back pay. (Compl. ¶ 12-13.) On the grievance form, the APWU contended that "Management violated several provisions of the Postal Regulation (Employee Labor Relations Manual) pertaining to Probationary Employee Procedures including but not limited to evaluation, training and termination; also they are in violation of several

---

[1] APWU attempts to argue that "Ms. Daliessio's supervisor did not tell her on [January 30] that she was being terminated immediately, or even that she was being terminated." (APWU Stmt. ¶ 1.) Throughout the grievance procedure, however, APWU has consistently argued that she was verbally informed that she was being terminated. (Ex. 5 to Ex. A ("USPS Ex.5.A") at 2, 6, attached to Mem. of the U.S. Postal Serv. in Supp. of Its Mot. for Summ. J.) Furthermore, as Arbitrator Loeb acknowledged, a February 8, 1998 EEO form completed by Daliessio stated that she was not recommended for rehire. Loeb Award at 2. Thus, there is no dispute that Daliessio understood on January 30, 1998, that she was being fired. *See id.* at 15 ("The record is clear that the Grievant was advised on January 30, 1998 that her work was unsatisfactory and that her supervisor would not recommend her for retention.").

provisions of the Local and National Contracts." (USPS Ex. 5.A at 2.) In addition to citing various regulations with which USPS did not comply, APWU argued she became a permanent employee entitled to access to the grievance procedure "since [the] grievant wasn't given an official [termination] letter" during her probationary period. (*Id.* at 3.) USPS denied the grievance, in part, on the grounds that Article 12.1.A of the National Agreement bars probationary employees from accessing the grievance procedure. (USPS Ex. 5.A at 5.)

APWU appealed the denial of her grievance to arbitration. Arbitrator Lawrence R. Loeb was assigned to arbitrate the matter, and he issued a written decision, which is the subject of this lawsuit, on January 28, 2006. In that opinion, Arbitrator Loeb, in essence, permitted a challenge to whether the employee was properly terminated within her probationary period, pursuant to the provisions set forth in the Employee and Labor Relations Manual ("ELM"). *In re U.S. Postal Serv. v. Am. Postal Workers Union*, No. C94C-4C-D 98076813 (2006) (Loeb, Arb.) ("Loeb Award") at 17, attached as Ex. 7 to Ex. A of USPS Mem. Because USPS failed to provide written notice to Daliessio during her probationary period, Arbitrator Loeb concluded that her termination was ineffective and she became a permanent employee entitled to the grievance procedures. *Id.* He ordered Daliessio reinstated with back pay and no loss of seniority. *Id.*

USPS now seeks to have the Loeb Award vacated on the grounds that Loeb's decision violates the mandates of the National Agreement. The APWU, in turn, seeks confirmation of the Loeb Award. For the following reasons, the Court vacates Arbitrator Loeb's decision.

4

**DISCUSSION**

I. **Legal Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party, *Biodiversity Conservation Alliance v. U.S. Bureau of Land Mgmt.*, 404 F.Supp.2d 212, 216 (D.D.C. 2005) (citing *Flynn v. Dick Corp.*, 384 F.Supp.2d 189, 192-93 (D.D.C. 2005)). Here, the parties agree to all material facts, and base their competing claims for summary judgment on their disparate interpretation of the applicable law.

II. **Analysis**

The USPS has filed this suit to overturn an existing arbitration award. Arbitration, of course, is the preferred means for resolving labor disputes. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581-82 (1960); *see also* 29 U.S.C. § 173(d). Accordingly, the standard of review for judicial review of arbitration awards "'is extremely limited.'" *Teamsters Local Union No. 61 v. United Parcel Serv., Inc.*, 272 F.3d 600, 604 (D.C. Cir. 2001) (quoting *Kanuth v. Prescott, Ball & Turben, Inc.*, 949 F.2d 1175, 1178 (D.C. Cir. 1991)). Courts should uphold an arbitration award if it "draws its essence" from the underlying collective bargaining agreement. *See United*

*Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). Indeed, courts afford a presumption of validity to arbitration awards and should not overturn an arbitration decision if the arbitrator is "arguably construing or applying the contract and acting within the scope of his authority." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

Despite this limited judicial review, however, courts may have to vacate an arbitration award when "the arbitrator's words manifest an infidelity" to his obligation to comply with the terms of the collective bargaining agreement, *Enterprise Wheel*, 363 U.S. at 597, or constitute "manifest disregard of [the] law," *Am. Postal Workers Union AFL-CIO v. U.S. Postal Serv.*, 682 F.2d 1280, 1284 (9th Cir. 1982). *See also* 9 U.S.C. § 10 (The Federal Arbitration Act provides grounds for vacating awards based on fraud, bias or misconduct, procedural unfairness, or that the arbitrator exceeded his authority). In such circumstances, courts will step in to ensure arbitrators base their awards on the parties' contracts and not the arbitrators' "own brand of industrial justice." *Enterprise Wheel*, 363 U.S. at 597; *cf.* Collective Bargaining Agreement (Nov. 21, 1994 – Nov. 20, 1998) ("NA"), Art. 15, § A.6, attached as Ex. 1 to Ex. A of APWU Mem. (the arbitrator's decision "shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator").

The essence of the dispute here is whether APWU's grievance challenging Daliessio's "termination" was arbitrable. USPS argues that this Court should vacate the Loeb Award because the arbitrator manifestly disregarded the National Agreement and

exceeded his authority by allowing a probationary employee access to the grievance procedure to challenge the propriety of the method by which Daliessio was separated from USPS. (*See* Mem. of the U.S. Postal Serv. in Supp. of Its Mot. for Summ. J. ("USPS Mem.") at 26.) USPS maintains, in essence, that Article 12, on its face and as interpreted by the Fourth Circuit and a National-level arbitration award, clearly prohibits a probationary employee, like Daliessio, from accessing the grievance process for any reason related to separation. (*See id.* at 29-30, 33-35.) I agree. APWU's argument is too clever by half and inconsistent with the purpose of Article 12. How so?

> Article 12, Section 1.A ("Article 12.1.A") provides, in relevant part:
>
> The probationary period for a new employee shall be ninety (90) calendar days. The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.

NA, Art. 12, § 1(A). After ninety days, a probationary employee automatically becomes a permanent employee. Unlike probationary employees, permanent employees can only be terminated for cause. *Id.* Art. 16. The National Agreement has a grievance procedure (which includes arbitration) available to permanent employees, through which an employee can, *inter alia*, challenge a termination. (Compl. ¶ 7.) Nothing in the National Agreement, however, provides how USPS "separates" a probationary employee, even though the ELM contains provisions providing for procedures to separate probationary employees.

The issue before Arbitrator Loeb was not novel! The parties have litigated the meaning of Article 12.1.A in federal court[2] and in national-level arbitrations. Indeed, the APWU recently brought a case in the Fourth Circuit, challenging whether the employee was actually separated during her probationary period even though her separation did not conform to the requirements of ELM Section 365.32. *See U.S. Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523, 528 (4th Cir. 2000) ("*USPS I*"). The Fourth Circuit held that the National Agreement clearly "prohibit[s] every kind of separation-related grievance by a probationary employee" and that whether the USPS effected a separation in accordance with the ELM "is plainly a separation-related matter" that is *not* grievable.[3] The Fourth Circuit concluded that Article 12.1.A prohibits filing a grievance "[s]o long as the matter involves probationary employees and the question of separation." *Id.* at 528. In terms of deciding when an employee can gain access to the grievance procedure, the Fourth Circuit stated that "[o]nce the probationary period has expired without *any action* to separate the employee, Article 12 no longer denies the employee access to the grievance procedure." *Id.* (emphasis added). If, however, "a probationary employee doubts whether an apparently effective separation notice was actually meant to separate him, he can go to his supervisor or a higher authority in the Postal Service." *Id.* at 531.

---

[2] *See U.S. Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523 (4th Cir. 2000); *U.S. Postal Serv. v. Am. Postal Workers Union*, 922 F.2d 256 (5th Cir. 1991); *U.S. Postal Serv. v. Am. Postal Workers Union*, 940 F.2d 704 (D.C. Cir. 1991); *U.S. Postal Serv. v. Am. Postal Workers Union*, No. 01-1704 (D.D.C. Jan. 28, 2004); *U.S. Postal Serv. v. Am. Postal Workers Union* 755 F. Supp. 1076, 1077-78 (D.D.C. 1989).

[3] Probationary employees are not bereft of all rights in relation to a termination, however. A probationary employee may bring an action "under any appropriate federal civil rights, labor, or civil service law" to argue that the USPS did not follow the termination procedure required by the ELM, but "the one remedy he surely does not have is the remedy plainly denied by the National Agreement – access to the grievance procedure." *USPS I*, 204 F.3d at 530-31.

Subsequently, this same issue regarding Article 12.1.A was put before Arbitrator Shyam Das in September 2001 ("Das Award") in a National-level arbitration,[4] which both parties agree "continues to bind the parties and lower-level arbitrators in the application of the National Agreement." (APWU Stmt. ¶ 14; USPS Mem. 3.) Like the Fourth Circuit, Arbitrator Das held that "Article 12.1.A denies a probationary employee access to the grievance procedure to challenge his or her separation on the grounds of alleged noncompliance with the procedures in Section 365.32 of the ELM." *In re U.S. Postal Serv. v. Am. Postal Workers Union*, No. Q98C-4Q 99251456 (2001) (Das, Arb.) ("Das Award") at 23, attached as Ex. 6 to Ex. A of USPS Mem. In addition, Arbitrator Das held that "[a] dispute as to whether or not the Postal Service's action separating the employee occurred during his or her probationary period is arbitratable because that is a precondition to the applicability of Article 12.1.A." *Id.* at 23. Thus, whether the separation action occurred during the probationary period is arbitrable, but whether that separation complied with the requirements of Section 365.32 is not. *See id.* at 21-22.

Arbitrator Loeb, for reasons unclear to this Court, failed to appreciate the rulings by the Fourth Circuit and Arbitrator Das. His decision, simply stated, exceeded the authority granted by the National Agreement. Because the Das Award, and the Fourth Circuit's decision, expressly disallows probationary employees access to grievance

---

[4] There are two types of arbitrations under the National Agreement. First, there is a "regular" or "regional" arbitration, which is binding on the parties to the dispute, but not binding on later arbitrations. (NA, Art. 15, § 2, Step 3(d); *id.* § 15.5.B.) Second, there is a national arbitration. These arbitrations definitively resolve disputes about the interpretation of the CBA. (*Id.* § 15.2 Step 3(d); *id.* § 15.5.D.) A national-level arbitration award is binding on all the parties in all subsequent arbitrations and establishes the meaning of the parties' contract. (APWU Stmt. ¶ 11; USPS Stmt. ¶ 5.)

9

procedures for challenges to a separation based on non-compliance with ELM Section 365.32, Loeb's reliance on those procedures to determine that Daliessio was not terminated within the probationary period is misplaced. In fact, it runs directly counter to Article 12.1.A as interpreted by the Das Award. This flawed analysis constitutes the type of manifest disregard of the National Agreement that requires this Court to vacate the Loeb Award.[5]

## CONCLUSION

For the foregoing reasons, the Court GRANTS USPS's Motion for Summary Judgment and DENIES APWU's Motion for Summary Judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[5] Arbitrator Loeb inexplicably attempts to distinguish the Fourth Circuit's decision from the present case by stating that the facts in the Fourth Circuit "did not involve the issue of when the employee was terminated, but rather whether he was the victim of disparate treatment and whether he had been properly trained." Loeb Award at 16. Even a cursory reading of the Fourth Circuit's decision demonstrates the court based its decision on the issue of whether the employee was terminated within the probationary period. In fact the court explicitly stated that "the APWU argued that the Postal Service's attempt to separate [the employee] during her probationary period was not effective" and she should be treated as a permanent employee. *U.S. Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523, 526 (4th Cir. 2000). The court then goes on to state, as an aside, that the "APWU contested [the employee's] separation on other grounds as well, alleging that she received insufficient guidance and training and was a victim of discrimination." *Id.* Thus, Loeb fails to provide any reasoned basis for distinguishing the Fourth Circuit opinion. Indeed, Arbitrator Loeb relies heavily on the *dissent* of the Fourth Circuit opinion in his analysis. Doing so clearly does not constitute a factual application of either the contractual provisions or their interpretation. Finally, USPS also requests this Court to find that the Fourth Circuit's decision estopps APWU from litigating this issue. Because this Court finds that Arbitrator Loeb exceeded his authority and that his Award must be vacated, it need not address the issue of collateral estoppel.